1   EDWARD R. REINES (Bar No. 135960)
    edward.reines@weil.com
2   DEREK C. WALTER (Bar No. 246322)
    derek.walter@weil.com
3   WEIL, GOTSHAL & MANGES LLP
    Silicon Valley Office
4   201 Redwood Shores Parkway
    Redwood Shores, CA 94065
5   Telephone: (650) 802-3000
    Facsimile: (650) 802-3100
6

7   Attorneys for Plaintiffs
8   ILLUMINA, INC. and ILLUMINA CAMBRIDGE LTD.

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12

13  ILLUMINA, INC.                          Case No.   16-CV-2788
    ILLUMINA CAMBRIDGE LTD.,
14                                          COMPLAINT FOR PATENT
                    Plaintiffs,             INFRINGEMENT
15
           vs.                              JURY TRIAL DEMANDED
16
    QIAGEN, N.V.
17  QIAGEN GmbH
    QIAGEN Gaithersburg, Inc.
18  QIAGEN Sciences, LLC
    QIAGEN Inc. (USA)
19  QIAGEN Redwood City, Inc.
    Intelligent Bio-Systems, Inc.,
20
                    Defendants.
21

22

23

24

25

26

27

28

1    Plaintiffs Illumina, Inc. and Illumina Cambridge Ltd. (collectively "Illumina") for their

2    complaint against Defendants QIAGEN N.V., QIAGEN GmbH, QIAGEN Gaithersburg, Inc.,

3    QIAGEN Sciences, LLC, QIAGEN Inc. (USA), QIAGEN Redwood City, Inc., and Intelligent

4    Bio-Systems, Inc. (collectively "Defendants" or "Qiagen"), allege as follows:

5                                              **INTRODUCTION**

6        1.    Illumina is a leading supplier of DNA sequencing instruments. Illumina brings this

7    action to halt Qiagen's infringement of U.S. Pat. No. 7,566,537 ("the '537 patent").    Qiagen

8    recently introduced its infringing GeneReader DNA sequencer in direct competition with Illumina.

9    In an attempt to clear a path for its products, Qiagen challenged the validity of Illumina's '537

10   Patent in an *inter partes* review proceeding, but failed.   The Patent Trial and Appeal Board

11   rejected Qiagen's invalidity challenge. *Intelligent Bio-Systems, Inc. V. Illumina Cambridge LTD.*,

12   IPR2013-00517 (PTAB, February 11, 2015) (Paper 87).   Likewise, the Federal Circuit rejected

13   Qiagen's appeal. *Intelligent Bio-Systems, Inc. V. Illumina Cambridge LTD.*, No. 2015-1693 (Fed.

14   Cir. May 9, 2016).   Illumina's rights are protected by 28 U.S.C. §§ 1331 and the Patent Laws of

15   the United States, 35 U.S.C. § 1, et seq.

16       2.    Illumina brings this action in the Northern District of California for the following

17   reasons.  First, Defendant QIAGEN N.V. introduced the GeneReader and has promoted it in this

18   District.   Other Defendants are based in California and have substantial presence in this District.

19   On the other hand, QIAGEN N.V. has denied personal jurisdiction in the District of Delaware as

20   part of a separate litigation involving Illumina and the patent-in-suit here.   In that suit, Illumina

21   asserted the '537 patent against QIAGEN N.V. and a Qiagen subsidiary named defendant

22   Intelligent Bio-Systems (IBS).   After QIAGEN N.V. represented in its motion to dismiss that it

23   did not have adequate contacts with Delaware, Illumina agreed to voluntarily dismiss the suit

24   against QIAGEN N.V.  The two products at issue in the Delaware litigation are not at issue in this

25   case and have been abandoned.  The website for those two products has also been removed from

26   the internet.  To ensure that QIAGEN N.V. is included in the case without plausible jurisdictional

27

28

1  complaint and in a District with unquestionable connection to this dispute, Illumina brings suit

2  here.

3       3.     QIAGEN N.V. has had systematic and continuous contact with the Northern

4  District of California, especially with regard to its marketing and promotion of the GeneReader.

5  For instance, QIAGEN N.V. CEO Peer Schatz traveled to San Francisco, California, to promote

6  the GeneReader in January 2016 at the J.P. Morgan Annual Healthcare Conference.  Qiagen N.V.

7  also recently partnered with 10X Genomics, Inc.—a company based in Pleasanton, California—to

8  promote and market the GeneReader.  The attached news article and press release documents this.

9  *See* Ex. 1 (Genome Web article); Ex. 2 (10X Genomics PR).  Moreover, several QIAGEN N.V.

10 employees who are involved with developing, promoting, and marketing the GeneReader purport

11 to reside in the Northern District of California.

12      4.     As a result of Qiagen's infringement and the well-documented threat of its

13 continued infringement, Illumina faces a substantial risk of irreparable harm.

14 **PARTIES**

15      5.     Plaintiff Illumina, Inc. is a Delaware corporation with its principal place of

16 business at 5200 Illumina Way, San Diego, California, 92122.  Plaintiff Illumina Cambridge Ltd.

17 is a foreign corporation with its principal place of business located at Chesterford Research Park,

18 Liitle Chesterford, Nr Saffron Walden, Essex CB10 1XL, United Kingdom.

19      6.     Plaintiff Illumina Cambridge Ltd., a wholly-owned subsidiary of Illumina, Inc., is

20 the owner by assignment of all right, title and interest in and to the '537 patent.  Illumina Inc. is

21 the exclusive licensee of the '537 patent with the right to sue to enforce its exclusivity.

22      7.     Illumina is a leading developer, manufacturer, and marketer of life science tools

23 and integrated systems for large-scale analysis of genetic variation and function. Through its

24 sequencing and array-based solutions, Illumina has revolutionized DNA analysis. Most recently,

25 Illumina achieved a significant milestone in medical progress through the launch of sequencing

26 technology capable of pushing the cost of sequencing the human genome down to $1000.

27

28

8.      Defendant QIAGEN N.V. is a Dutch company with its principal place of business in Venlo, Netherlands.  QIAGEN N.V. is the ultimate parent of a number of Qiagen subsidiaries here in the United States.  On information and belief, QIAGEN N.V. has, both directly and through its subsidiaries, marketed and helped sell Qiagen-branded products, including the Qiagen GeneReader, in the United States, including in Northern District of California.  QIAGEN N.V.'s contacts with the Northern District of California are more fully documented in the allegations in paragraphs 28 through 34 below and described throughout this document.

9.      Defendant QIAGEN GmbH is a German corporation and a wholly-owned subsidiary of QIAGEN, N.V.  On information and belief, QIAGEN GmbH has systematic and continuous contact in the United States, including in the Northern District of California.  The following facts and other facts contained this complaint demonstrate that this Court has personal jurisdiction over QIAGEN GmbH.  On information and belief:

    a.   QIAGEN GmbH is named as the "legal manufacturer" of the GeneReader in the GeneReader user manual.  Ex. 3 (GR Manual) at 57.

    b.   QIAGEN GmbH manufactures the nucleotides related to the GeneReader.

    c.   QIAGEN GmbH publishes the user manuals for the GeneReader and the GeneReader reagent kits, including the GeneRead Sequencing Q Kit Handbook. Ex. 4 (GeneRead Sequencing Q Kit (1) Handbook).

    d.   According to prior court filings by QIAGEN N.V., QIAGEN GmbH "manufacture[s] and distribute[s] a wide variety of [Qiagen] products relating to sample and assay technologies."  Ex. 5 (*Troll Busters LLC v. Roche Diag.* Case No. 3:11-cv-00056 (S.D. Cal. May 9, 2011) [Doc. 111-2 at 2-3]).

    e.   According to the same court filings, QIAGEN GmbH "also develops the printed materials for the products from its offices in Germany" and controls the Qiagen website that markets, offers to sell, and sells Qiagen products worldwide. *Id*.  This website includes offers to sell the Qiagen GeneReader.

f.   QIAGEN GmbH employs individuals whose primary responsibility is product management related to the GeneReader.  For example, Mr. Andreas Schäfer is QIAGEN GmbH Vice President, Program Management, Molecular Diagnostics. His LinkedIn page states that he is responsible "and accountable for QIAGEN's key business initiative in Next Generation Sequencing: The GeneReader Sample-to-Insight system…."  Ex. 6 (Schäfer LinkedIn Page).

g.   QIAGEN GmbH employs individuals that reside in California, specifically in support of their NGS technologies.  For example, Mr. Colin Baron's title is Senior Director, Head of Product Management, NGS Life Sciences.  Mr. Baron's LinkedIn page represents that his job title with Qiagen is linked to "Dusseldorf Area, Germany," which is a city less than 20 kilometers outside of Hilden, Germany, which is the business location for QIAGEN GmbH.  The same LinkedIn page states that Mr. Baron resides in Pleasanton, California, which is located in the Northern District.  Ex. 7 (Baron LinkedIn Page).  Notably, Mr. Baron worked on Illumina sequencing products prior to becoming employed with Qiagen.  *Id.*

10.   Defendant QIAGEN Gaithersburg, Inc. is a Delaware corporation and a wholly-owned subsidiary of QIAGEN North American Holdings Inc., which is a subsidiary of parent QIAGEN N.V.   On information and belief, QIAGEN Gaithersburg Inc.'s principal place of business is Germantown, Maryland.   The following facts support jurisdiction over QIAGEN Gaithersburg, Inc.  On information and belief:

a.   QIAGEN Gaithersburg, Inc. has systematic and continuous contact with the Northern District of California on its own and/or through its wholly-owned subsidiaries QIAGEN Sciences, LLC, QIAGEN Inc., and QIAGEN Redwood City, Inc.

b.   QIAGEN Gaithersburg, Inc. has a role in the research and development, manufacturing, and marketing of Qiagen products, including the GeneReader and consumables related to the GeneReader, in the United States.

c.      Several senior-level Qiagen employees involved with product manufacturing, sales and marketing purport to live in and around QIAGEN Gaithersburg, Inc facilities. *See*, *e.g.* Ex. 51 (Senior Marketing Specialist LinkedIn).   For example, Chief Commercial Officer Manuel O. Mendez purports to reside in Raleigh-Durham, North Carolina area.  Ex. 23 (Mendez LinkedIn Page).

11.    Defendant QIAGEN Sciences, LLC is a Delaware corporation and wholly-owned subsidiary of QIAGEN Gaithersburg, Inc. with its principal place of business in Germantown, Maryland.  The following facts support jurisdiction over QIAGEN Sciences, LLC:

a.      As identified on the Qiagen website, QIAGEN Sciences, LLC is a "Division" of QIAGEN N.V., *see* Ex. 8 (Screenshot), demonstrating a close relationship between the two.

b.      On information and belief, QIAGEN Sciences, LLC operates as QIAGEN N.V.'s United States arm for research related to and manufacturing of Qiagen products and services.

c.      On information and belief, QIAGEN Sciences, LLC plays a role in manufacturing GeneReader products.

d.      Several senior-level Qiagen employees involved with product manufacturing, sales and marketing purport to live in and around QIAGEN Sciences, LLC facilities. *See*, *e.g.* Ex. 51 (Senior Marketing Specialist LinkedIn).   For example, Chief Commercial Officer Manuel O. Mendez purports to reside in Raleigh-Durham, North Carolina area.  Ex. 23 (Mendez LinkedIn Page).

12.    Defendant QIAGEN Inc. (USA) ("QIAGEN Inc.") is a wholly-owned subsidiary of QIAGEN Gaithersburg, Inc.  QIAGEN Inc. is a Delaware corporation with its principal place of business at 27220 Tumberry Lane, Valencia, California 91355.   The following facts support jurisdiction over QIAGEN Inc.:

a.      QIAGEN Inc. is the only U.S. subsidiary listed on the website under "Global Contacts."  Ex. 9 (Screenshot).

b.   The main Qiagen website lists the Valencia, California address as the only address for QIAGEN Inc.  *Id*.

c.   QIAGEN N.V. has referred to QIAGEN Inc. as a "California corporation" in prior court filings.  Ex. 10 (*Troll Busters LLC v. Roche Diag.* Case No. 3:11-cv-00056 (S.D. Cal. May 9, 2011) [Doc. 111-1 at 11]).

d.   On information and belief, QIAGEN Inc. receives customer orders of the GeneReader.  *See* Ex. 11 (Orders Page from GR Website).

e.   On information and belief, QIAGEN Inc. has at least some manufacturing operations.  See. Ex. 12 (Hall LinkedIn Page, listing that he is responsible for "managing ***Manufacturing Operations*** in the Germantown, Gaithersburg and ***Valencia, CA Sites***." ).

f.   On information and belief, QIAGEN Inc. provides technical support, and in doing so likely distributes technical literature, for Qiagen products, including the GeneReader.  *See* Ex. 13 (Shetty LinkedIn Page).

13.   Defendant QIAGEN Redwood City, Inc. is a Delaware corporation and wholly-owned subsidiary of QIAGEN GmbH with its principal place of business at 1700 Seaport Blvd, 3rd Floor, Redwood City, California 94063.   The following facts support jurisdiction over QIAGEN Redwood City, Inc.  On information and belief:

a.   QIAGEN Redwood City was formerly Ingenuity Systems ("Ingenuity"), a company that specialized in development of bioinformatics software for use on medical devices like sequencers.

b.   QIAGEN Redwood City is involved with the development, manufacturing, and supply of the bioinformatics software that is sold as part of or in conjunction with the GeneReader system. *See* Ex. 14 (Becquet LinkedIn Page).

c.   QIAGEN Redwood City employees, formerly Ingenuity employees, are involved in GeneReader product management.  Mr. Rupert Yip, Director Product Management, stated that he participated in the "QIAGEN post merger integration team ***with a***

*focus on GeneReader NGS platform*." Ex. 15 (Yip LinkedIn Page).  He also purports to be a member "of GeneReader Core Team leading the platform's development and go to market strategy." *Id*.

d.   QIAGEN Redwood City employees are heavily involved in launching the GeneReader.  For example, Mr. Kumar Bala, Associate Director at QIAGEN, Molecular Diagnostics-NextGen Sequencing, resides and/or works in and around Hercules, California, which is located closest to Qiagen Redwood City in the Northern District of California.  *See* Ex. 16 (Bala LinkedIn Page).  Per Mr. Bala's LinkedIn page, he was integrally involved in coordinating "the launch of the GeneReader NGS system" and he "executed product development and commercial launch activities" related to the GeneReader.  *Id.*.  He also "[c]reated the 2016 Marketing Plan including the go-to-market and pricing strategies." *Id.*  Mr. Bala also states that he led "the team in developing the training plan and organizing the training for the technical sales team" and was the person who created "the demand generation strategy, marketing collaterals, e-Marketing tools and social media strategy" related to GeneReader.  *Id*.

e.   QIAGEN Redwood City, through the aforementioned activities, plays some role in disseminating promotional and marketing documents and/or technical literature related to the GeneReader especially through its support for the GeneReader's bioinformatics platform.

14.   Defendant Intelligent Bio-Systems, Inc. ("IBS") is a Delaware corporation and wholly-owned subsidiary of Qiagen North America Holdings, Inc., with its principal place of business at 34 Bear Hill Road, Waltham, Massachusetts 02451.  The following facts support jurisdiction over IBS.  On information and belief:

a.   IBS is involved with the development of Qiagen sequencing products, including the GeneReader.

b.  IBS owns the GeneReader trademark.  Ex. 17 (Excerpt, "GeneReader Trademark File History).

c.  Qiagen employees purportedly residing in Waltham, Massachusetts, the site of its IBS subsidiary, work on the GeneReader:

i.  QIAGEN Scientist Visalakshi Meyyappan, who previously worked for IBS and since June 2013 has worked for QIAGEN, represented on his LinkedIn page that he played "an integral role in the launch of the Qiagen GeneReader 1.0."  Ex. 18 (Meyyappan LinkedIn Page).  Mr. Meyyapan states on the same page that he lives and works in the Greater Boston Area. *Id.*

ii.  QIAGEN Senior Scientist Agus Darwanto stated on his LinkedIn profile that he has "[e]xperience preparing and writing document for NGS product launch (GeneReader)," and he has worked on various aspects of development, design and validation of the GeneReader platform at QIAGEN in Waltham, Massachusetts since July 2014.  Ex. 19 (Darwanto LinkedIn Page).

iii.  Several other employees that work on NGS research and development for QIAGEN represent that they work out of Waltham, Massachusetts, where IBS is located.  *See, e.g.* Ex. 20 (Zhou LinkedIn Page).

15.  As alleged throughout this complaint, the defendants listed in paragraphs 8 through 14 are alter egos and/or agents of QIAGEN N.V. and/or each other, and in performing the acts below, were therefore acting within the course and scope of agency and with permission and consent of all co-defendants.

16.  Each and all of the defendants named in paragraphs 8 through 14 had and have actual or constructive knowledge of the events, transactions, and occurrences alleged herein, and either knew or should have known of the conduct of their co-defendants and cooperated in, benefited from and/or ratified such conduct.

1

2

3                                **JURISDICTION AND VENUE**

4          17.     This action arises under the Patent Laws of the United States of America, 35 U.S.C.

5   § 1 et seq.  This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §

6   1338(a) because this is a civil action arising under the Patent Act.

7          18.     This Court has general and/or specific jurisdiction over each and every Defendant

8   as follows.

9          19.     This Court has general jurisdiction over QIAGEN Inc., which is a Delaware

10  corporation with its principal place of business in Valencia, California.

11         20.     This Court has general jurisdiction over QIAGEN Redwood City, Inc., which is a

12  Delaware corporation with its principal place of business in Redwood City, California.

13         21.     This Court has specific jurisdiction over QIAGEN N.V., QIAGEN GmbH, Qiagen

14  Gaithersburg, Qiagen Sciences LLC, and Intelligent Bio-Systems, Inc. for the reasons listed in

15  paragraphs 8 through 14 above and the General Allegations section below and throughout this

16  complaint.

17         22.     Alternatively, this Court has general and/or specific jurisdiction over all named

18  defendants, because pursuant to the facts below, the named defendants are alter-egos of one

19  another and/or agents of QIAGEN N.V. and, as such, have conducted and continue to conduct

20  substantial business in this District, have committed and continue to commit acts of patent

21  infringement in this District, and/or have harmed and continue to harm Plaintiffs in this District

22  by, among other things, using, selling, offering for sale and/or importing infringing products and

23  services in this District.  These defendants have purposefully availed themselves of the benefits of

24  California's laws and of the privilege of conducting business in California by directing into

25  California Qiagen products that embody the patent-in-suit, including but not limited to the Qiagen

26  GeneReader.  On information and belief, the named Qiagen entities are continuing to import into,

27  market within, and sell within California and elsewhere the GeneReader.   As a result of

28

1    Defendants' intentional conduct directed towards California, Plaintiffs have suffered injury in

2    California and elsewhere in the United States.

3        23.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because a

4    substantial part of the events giving rise to Illumina's claim occurred in this District and

5    Defendants, having previously marketed and selling the accused products within the District, are

6    subject to personal jurisdiction in this District.

7                              **INTRA-DISTRICT ASSIGNMENT**

8        24.    Pursuant to Civil Local Rules 3-5(b) and 3-2(c), because this action is an

9    intellectual property action, it is properly assigned to any of the divisions in this District.

10                                   **BACKGROUND**

11   **Qiagen N.V. Denied Personal Jurisdiction In The District Of Delaware.**

12       25.    As noted above, QIAGEN N.V. is the parent corporation to several holdings

13   companies and subsidiaries across the United States. On April 11, 2012, Intelligent Bio-Systems

14   (IBS), an indirect subsidiary of QIAGEN N.V., sued Illumina in the District of Delaware.

15   *Trustees of Columbia Univ. v. Illumina, Inc.*, Case No. 1:12-cv-376-GMS (D. Del. April 11, 2012)

16   [D.I. 5].   IBS asserted five patents, relevant claims of three of which have already been

17   invalidated.  *Intelligent Bio-Systems, Inc. V. Illumina Cambridge LTD.*, IPR2013-00517 (PTAB,

18   February 11, 2015) (Paper 87).   Illumina counterclaimed against IBS and QIAGEN N.V.,

19   asserting the '537 Patent, among others.  *Trustees of Columbia Univ.*, Case No. 1:12-cv-376-GMS

20   at [D.I. 24].

21       26.    In the Delaware litigation, Illumina identified two IBS products, the MAX-Seq and

22   the MINI-20 DNA Sequencers, neither of which are identified by this complaint.  *Id.*  In moving

23   to dismiss Illumina's counterclaims for lack of personal jurisdiction, QIAGEN N.V. represented

24   that both those products were marketed, manufactured, distributed, shipped, sold, and offered to

25   sell by IBS—not QIAGEN N.V.  *Id.* [D.I. 45].   QIAGEN N.V. also represented that QIAGEN

26   N.V. did "not control IBS's day-to-day operations."  *Id.*   QIAGEN N.V. also represented that it

27   had minimal contacts with Delaware including very few customer visits and few emails.   It cannot

28

make those same allegations regarding California.   Indeed, as alleged in this complaint, Qiagen

N.V. and its representatives have extensive contacts with California, using it as a base for much of

its operations.   Reciting these representations, and given QIAGEN N.V.'s steadfast denial of

personal jurisdiction in Delaware, Illumina voluntarily dismissed its counterclaims against

QIAGEN N.V. on December 3, 2012, leaving IBS as the only named defendant. *Id.* [D.I. 57].

Anticipating the potential for a similar denial in this case, Illumina brings this case in this Court.

27.     Fact discovery had started but was essentially halted when, on April 1, 2013, the

District of Delaware stayed the action with minor exception pending the resolution of several *inter*

*partes* review proceedings, including the IPR described below. *Id.* [D.I. 89].

**Qiagen N.V.'s Contacts**

28.     On information and belief, foreign parent QIAGEN N.V. has continuous and

systematic contact with the United States that gives rise to its infringement.  On information and

belief:

    a.   QIAGEN N.V. is associated with numerous press releases regarding the

         GeneReader, including those announcing the launch of the GeneReader and that the

         GeneReader won an international design award in April 2016.  *See*, *e.g.* Ex. 52

         (Press Release Re Red Dot Award).

    b.   QIAGEN N.V. plays a role in distributing GeneReader User Manual(s), reagent kit

         manuals, technical handbooks, product detail sheets, and technical specification

         sheets, all of which are available on the general Qiagen website.

    c.   Mr. Peer Schatz, QIAGEN N.V. Chief Executive Officer, represents that he works

         in and around the Washington, D.C. Metro Area, i.e. ***within the United States***, on

         his LinkedIn page.  Ex. 21 (Schatz LinkedIn Page).  Mr. Schatz has been in several

         videos promoting the GeneReader and was present at the launch of the GeneReader

         in Austin, Texas. Ex. 22 (Screenshot).

    d.   Manuel O. Mendez is a Chief Commercial Officer/ Corporate Senior Vice

         President Global Commercial at Qiagen.  Ex. 23 (Mendez LinkedIn Page).   His

LinkedIn page does not reference a particular entity but does state that he resides in Raleigh-Durham, North Carolina, i.e. **within the United States**. *Id*.

29. On information and belief, Qiagen N.V. has continuous and systematic contact with California that gives rise to its infringement liability. Specifically, QIAGEN N.V. continuously and systematically conducts business in California by way of marketing, promoting, and selling the accused product in this case, the GeneReader.

30. On information and belief, the promotion and marketing done by QIAGEN N.V. gave rise to a sale, installation, and use of a GeneReader to a laboratory called DiaCarta, Inc. in Richmond, California.

31. On information and belief, QIAGEN N.V. has partnered with 10X Genomics, Inc., a company based in Pleasanton, California, to promote the GeneReader. The attached press release documents that this "co-marketing and co-development collaboration" is aimed at the "co-promotion and co-development" of integrated sequencing technologies, with a specific focus on "investigating the implementation of 10X Genomics' GemCode technology with QIAGEN's *proprietary GeneReader NGS System.*" Ex. 24 (02/09/16 Business Wire Article).

32. On information and belief, QIAGEN N.V. CEO Peer Schatz traveled to the Northern District of California, specifically San Francisco, to market and promote the GeneReader in January 2016. The slides below demonstrate the content of his presentation focused on the GeneReader and the attached press release confirms that the presentation took place in San Francisco:




Ex. 45 (10x Genomics Slides); *see also* Ex. 1 (Genome Web article).

33.     On information and belief, individuals on the team that launched the GeneReader—a conglomerate of employees at various Qiagen entities—reside and work in the Northern District of California.   For example, on information and belief, Associate Director for Molecular Diagnostics-NextGen Sequencing Mr. Kumar Bala was a member of the launch team and was present at the AMP Conference soft launch.  Ex. 16 (Bala LinkedIn Page); *see also* Ex. 25 (Photo from Launch).  Mr. Bala's LinkedIn page reflects that he resides in Hercules, California, a city located in the Northern District of California.   Ex. 16 (Bala LinkedIn Page).   No other employment location is listed on Mr. Bala's LinkedIn page.  *Id*.

### **All Defendants Have Committed Acts Of Infringement Within California.**

34.     QIAGEN N.V. and its named defendant subsidiaries have continuous and systematic contact with California specifically related to the GeneReader, the product accused in this case, in the Northern District of California.  The following is a an exemplary list of various employees associated with "Qiagen"—the amorphous label used by many of Qiagen's employees—that are involved with development and marketing of the GeneReader and also purport to be employed in the Northern District of California:

      a.     On information and belief, Qiagen Senior Vice President and Executive Management Committee member Dr. Laura Furmanski resides in California.  Ex. 53 (Furmanski LinkedIn Page).

b.    Senior Vice President Brad Crutchfield also resides in the San Francisco Bay Area, California.  Ex. 54 (Crutchfield LinkedIn Page).

c.    Ms. Yi Kong, Director of Commercial Management and Head of Outbound Marketing for Qiagen's Oncology Franchise, states on her LinkedIn page that she resides in and, under her job description, works in the San Francisco Bay Area.  Ex. 26 (Kong LinkedIn Page).   Ms. Kong posted on her LinkedIn page an announcement about the launch of the GeneReader entitled "Just Launched: The GeneReader NGS System."  *Id*.  The relevant portions from Ms.Kong's LinkedIn page appears below.



*Id*.

d.    According to an article about the launch of the GeneReader, Ms. Kong also attended the GeneReader launch and held herself out as a Director of Marketing at the Qiagen booth.  Ms. Kong confirmed to journalists at the booth that, for the

GeneReader, "the target customers are medium to low-throughput labs new to sequencing." Ex. 27 (11/06/15 DeciBio article).

e.   Mr. Rupert Yip, based in Redwood City, California, holds the title "Director VA Product Line" at Ingenuity Systems. Ex. 15 (Yip LinkedIn Page). As he reflects on his LinkedIn Page, Ingenuity was acquired by Qiagen, and he is therefore a Qiagen employee. Mr. Yip states that he participated "in the QIAGEN post merger integration team **with a focus on the GeneReader NGS platform**" and was a member of the "GeneReader Core Team leading the platform's development and go to market strategy":



*Id.*

f.   To provide another example, Ms. Xi Hau Decker is a Director for Product Management, Next Generation Sequencing at QIAGEN. Ex. 28 (Decker LinkedIn Page). Mr. Decker also represents that she is based out of the San Francisco Bay Area. *Id.*

**Qiagen N.V. And Its Named Defendant Subsidiaries Are Alter Egos**

35.   In the event the named defendant subsidiaries and sub-subsidiaries fail to establish independent personal jurisdiction, or even if they do, the named defendant subsidiaries are alter egos of QIAGEN N.V. The named defendant subsidiaries and QIAGEN N.V. share a unified interest and ownership and to treat them as separate entities would promote injustice.

36.     On information and belief, the following facts, in addition to those contained in the rest of this complaint, demonstrate that the Qiagen subsidiaries and QIAGEN N.V. share a unified interest and ownership:

a.     On information and belief, QIAGEN N.V. and its subsidiaries share a single Executive Committee, comprised of CEO Mr. Peer M. Schatz, Chief Financial Officer Mr. Roland Sackers, and several Senior Vice Presidents, including Mr. Thierry Bernard, Mr. Brad Crutchfield, Dr. Laura Furmanski, Mr. Douglas Liu, Mr. Manual O. Mendez, and Dr. Thomas Schweins.   Ex. 49 (Qiagen Executive Committee screenshot).   According to the Qiagen website, "the members of the Executive Committee *share* powers and responsibilities for the management of the Company, the deployment of its strategy and policies, and the achievement of its objectives and results." *Id*.   These individuals are also associated with various Qiagen subsidiaries.   For example, on information and belief, Mr. Liu is a managing director of QIAGEN GmbH.   Ex. 50 at 5 (German Trade Register excerpt).

b.     QIAGEN N.V. and its subsidiaries share numerous key officers.

i.     For example, on information and belief, Mr. Schatz is the CEO of QIAGEN N.V. and an officer to various Qiagen subsidiaries, including at least QIAGEN Gaithersburg, Inc., QIAGEN Redwood City, Inc., and Intelligent Bio-Systems, Inc. *See* Exs. 29, 46, 47 (State of Delaware Annual Franchise Tax Reports).

ii.     On information and belief, Dr. Thomas Theuringer is also a director at QIAGEN GmbH and at least one Qiagen U.S. subsidiary.   The "Media Contact" page of the shared Qiagen website lists Dr. Thomas Theuringer as "Director, Public Relations" next to a German phone number and lists him with the same title under the sub-heading "U.S. Media Contact" with a U.S. telephone number.   Ex. 30 (Screenshot).

iii.    On information and belief, Dr. Hans Peter Fatscher is an officer of QIAGEN Inc. and QIAGEN GmbH.  According to other court filings by Qiagen entities, Dr. Fatscher "a senior executive officer of Qiagen Inc [] in charge of the *daily affairs* of Qiagen Inc.," which is a U.S. subsidiary, but Dr. Fatscher resides in Germany.  *See* Ex. 5 (*Troll Busters LLC v. Roche Diagnostics GmbH et al.*, Case No. 3:11-cv-00056 (S.D. Cal. May 9, 2011) [Doc. 111-2 at 1]).[1]; *see also* Ex. 31 (Fatscher LinkedIn Page).

c.    QIAGEN N.V. and each of its subsidiary locations share facially identical websites (available in different languages).  The only facial distinction is that, depending on the location a user selects, the URL shows "/us" (for United States) or "/nl" (for Netherlands) at the end of the web address.  The first hit that results from searching "Qiagen" on Google.com directs the user to this single, unified website.  On the website itself, the organization refers generally to the entity "QIAGEN" without any indication as to any particular entity.  On information and belief, none of the named U.S. subsidiaries has its own separate website.

d.    QIAGEN N.V. leases real estate for operations of its U.S. subsidiaries.  As stated in its 2015 Securities and Exchange Committee ("SEC") 20-F filing, QIAGEN N.V. leases facilities in at least Maryland, Massachusetts, and two sites in California. Ex. 32 (Excerpt, QIAGEN N.V. 2015 20-F SEC filing).

e.    QIAGEN N.V. and its subsidiaries share legal counsel.  *See*, *e.g. Oxford Immunotec Ltd. v. Qiagen N.V. et al*, Case No. 1:15-cv-13124-NMG [Docket Rpt.] (D. Mass. Aug. 10, 2015).  For example, Dr. Jürgen M. Schneider oversaw the IBS IPR proceedings for Qiagen and attended some oral arguments in person.  He has also interfaced with Illumina as part of the Delaware litigation.

f.    Qiagen N.V. controls hiring of personnel within its U.S. subsidiaries.  The shared Qiagen web site hosts job postings for all of their various subsidiary locations.  An

---

[1] Emphasis added unless otherwise noted.

image of this job posting portal is attached hereto as Exhibit 33 (Qiagen Job Portal).   The first three hits that result from searching for "Apply and Qiagen Sciences LLC" on Google.com direct a user to the "Careers" page of the single, amorphous Qiagen website.

37.   On information and belief, the following facts, in addition to the facts contained in the rest of this complaint, demonstrate that the Qiagen subsidiaries and QIAGEN N.V. share a unified interest and ownership, specifically with respect to the Qiagen GeneReader:

g.   QIAGEN N.V. and its subsidiaries named as defendants all participate in the marketing and sales of the Qiagen GeneReader.  For example, a November 4, 2015 press release announcing "the start of commercialization activities" for the GeneReader is attributed to QIAGEN N.V.  This press release is attached hereto as Exhibit 34 (Qiagen GeneReader Press Release).   The press release also names QIAGEN N.V. in a section appearing at the end that is entitled "About QIAGEN." Contact information within the press release lists two corporate directors from QIAGEN N.V., Director for Public Relations Dr. Thomas Theuringer and Vice President Corporate Communications and Investor Relations Mr. John Gilardi.

h.   QIAGEN N.V. subsidiaries named as defendants also participate in the marketing and sales of the GeneReader.  For example, on information and belief, a Qiagen subsidiary in the United States sold a Qiagen GeneReader to a customer located in the Northern District of California.  As another example, on information and belief, QIAGEN GmbH controls and operates the QIAGEN N.V. website, from which the GeneReader is marketed.  *See* Ex. 35 (Screenshot).  On information and belief, the promotional materials related to the GeneReader originate from QIAGEN GmbH, which, per previous court filings by QIAGEN N.V., produces marketing and promotional materials for all Qiagen products.

i.   QIAGEN N.V. and its subsidiaries named as defendants jointly launched the GeneReader in November 2015. For instance, QIAGEN N.V. CEO Peer M. Schatz

promoted and presented the GeneReader at the Association for Medical Pathology (AMP) conference in Austin, Texas, in November 2015. A still clip from the video, showing Mr. Schatz, is attached as Exhibit 36 (Screenshot). Other individuals involved with promoting the GeneReader at the 2015 conference include QIAGEN N.V. Chief Medical Officer Dr. Tadd Lazarus, who on information and belief, works at a Qiagen subsidiary in California, Qiagen Senior Global Product Manager Mr. Salim Essakali, who on information and belief, works at a Qiagen subsidiary in Germany, and Senior VP Head of QIAGEN Molecular Diagnostics Mr. Thierry Bernard, who on information and belief works at a Qiagen subsidiary in Massachusetts. Documentation supporting these facts is attached as Exhibit 37 (Screenshot).

j. QIAGEN N.V. and its subsidiaries jointly market the product through promotional videos. In another video from November 2015, QIAGEN N.V. Senior Director Head of Marketing Mr. Marc Meienberger introduces the Qiagen Genereader Assistant App, a mobile device application to support the Genereader. A still from that video is attached as Exhibit 38 (Screenshot). Dr. Tadd Lazarus, who again, on information and belief works out of a Qiagen facility in California, promoted the advances behind the Qiagen GeneReader in another video. A still from that video is attached as Exhibit 39 (Screenshot). By such promotion, Qiagen has held out the GeneReader as being marketed, offered for sale, and sold by both QIAGEN N.V. and its various subsidiaries, including those named as defendants here.

38. On information and belief, the following facts, in addition to the facts contained in the rest of this complaint, demonstrate that characterizing the defendant subsidiaries and QIAGEN N.V. as separate entities would promote injustice:

a. On information and belief, QIAGEN N.V. has set up several holdings companies, including for instance QIAGEN US Financial Holdings (Luxembourg) and QIAGEN North American Holdings Inc., in an attempt to distance the corporate

relationship between QIAGEN N.V. and its U.S. subsidiaries and shelter lawsuits against the foreign parent and/or the U.S. subsidiaries.   To bar a plaintiff from pursuing claims against one or the other would condone this and promote injustice.

b.   QIAGEN N.V. claims it is a "holding company" with no products of its own, yet QIAGEN N.V. is heavily involved with marketing and promotion of the Qiagen GeneReader NGS System. It would promote injustice to ignore the reality that Qiagen N.V. controls and markets the accused products.

### The Named Qiagen Subsidiaries Are At Least Agents Of QIAGEN N.V.

39.   The named defendant subsidiaries are also agents of QIAGEN N.V., because they function as QIAGEN N.V.'s representatives in that they perform services that are sufficiently important to QIAGEN N.V. that, if QIAGEN N.V. did not have a representative to perform them, QIAGEN N.V.'s own officials would undertake to perform substantially similar services.

40.   On information and belief, the following facts, in addition to those contained in the rest of this complaint, support the legal conclusion that the named defendant subsidiaries are agents of QIAGEN N.V.:

a.   In the event QIAGEN N.V. and its subsidiaries are not alter egos of one another, and even if they are, U.S. subsidiaries help market Qiagen products to third persons in the United States.   If QIAGEN N.V. did not have the assistance of the named subsidiaries, QIAGEN N.V. would itself have to perform substantially similar services to successfully sell products in the United States.

b.   In the event QIAGEN N.V. and its subsidiaries are not alter egos of one another, or even if they are, U.S. subsidiaries sell Qiagen products to third persons in the United States.   If QIAGEN N.V. did not have the assistance of the named subsidiaries, QIAGEN N.V. would itself have to perform substantially similar services in order to sell products in the United States.

c.  U.S. subsidiaries house facilities for software development, manufacturing, distribution and research operations in conjunction with QIAGEN N.V.  Ex. 32 (Excerpt, QIAGEN N.V. 2015 20-F SEC filing).

d.  U.S. subsidiaries process customer orders and invoices. *See* Ex. 10 (*Troll Busters LLC v. Roche Diagnostics GmbH et al.*, Case No. 3:11-cv-00056 (S.D. Cal. May 9, 2011) [Doc. 111-1 at 11]).

e.  U.S. subsidiaries, including but not limited to those in Maryland, manufacture products. *Id.*

f.  U.S. subsidiaries carry out development and commercialization of the GeneReader NGS System. Ex. 32 (Excerpt, QIAGEN N.V. 2015 20-F SEC filing) at 38 (describing various leased facilities within the United States as "for GeneReader NGS system development," "Bioinformatics," and "Customer Care, Sales and Marketing services.").

**The GeneReader System Infringes The '537 patent**

41.  On July 28, 2009, the United States Patent and Trademark Office duly and legally issued the '537 patent, entitled "Labelled Nucleotides."  The named inventors of the '537 patent are Shankar Balasubramanian, Collin Barnes, Xioaohai Liu, John Milton, Harold Swerdlow, and Xioalin Wu.  By operation of law and as a result of written assignment agreements, Illumina, specifically plaintiff Illumina Cambridge Ltd., obtained the entire right, title, and interest to and in the '537 patent.  The '537 patent is attached hereto as Exhibit 40 (U.S. Patent No. 7,566,537).

42.  On information and belief, in and around November 2015, Defendants announced a commercial DNA sequencing instrument, the Qiagen GeneReader system.  The technology underlying the GeneReader is summarized in the GeneReader product brochure, the GeneReader "Product Details" section on Qiagen's website, and the GeneReader user manual, which are all publically accessible on Qiagen's website.  A copy of the brochure is attached as Exhibit 41, relevant screenshots of the website itself are attached as Exhibit 42, and the user manual is attached as Exhibit 3.  Patent publications filed in 2015 also provide details about the technology

1 and underlying chemistry behind the GeneReader.  A copy of one of Qiagen's relevant patent

2 filings is attached as Exhibit 43 (U.S. Patent Application No. 20150284788A1).

3      43.     The brochure summarizes that the GeneReader relies on a particular Sequencing-

4 By-Synthesis (SBS) technology, which "involves a 3 step process: extend, measure, and cleave."

5 ("the GeneReader SBS method").  Ex. 41 (GeneReader Brochure) at 8.  The GeneReader webpage

6 "Product Details" section and the user manual provide greater detail.   Under the heading

7 "Principle," both of these publications confirm that the GeneReader uses sequencing-by-synthesis

8 and further detail the sequencing method carried out by the GeneReader:

9
10
11
12
13
14
15
16
> The GeneReader sequencing chemistry consists of a unique terminator-dNTP ***sequencing-by-synthesis paradigm*** that ensures highly accurate and cost-effective NGS runs . . . To read out the sequence of each of the beads, the array of fragments is first subjected to reagents containing uniquely engineered DNA bases that include a removable fluorescent dye and an end cap. These bases attach themselves to the end of the growing strand of DNA in accordance with the base on the complementary strand. The array is scanned by a high-resolution electronic camera and the fluorescent output of each of the four dye colors at each array position is measured and recorded. The color indicates which base (A, C, G or T) was incorporated onto the DNA fragment from the previous step. Finally, the array is exposed to cleavage chemistry to break off the fluorescent dye and end cap that will then allow additional bases to be added. This cycle is then repeated on the GeneReader.

17     Ex. 44 (GeneReader Website); Ex. 3 (GeneReader user manual) at 20.

18
19
20
21
     44.     The description of the GeneReader technology in Qiagen's 2015 patent publication confirms that the GeneReader utilizes this method of labeling nucleotides as part of the sequencing-by-synthesis process:

22
23
24
25
26
27
28
> "sequencing templates are first clonally amplified on a solid surface (such as beads) to generate hundreds of thousands of identical copies for each individual sequencing template…, denaturized to generate single-stranded sequencing templates, hybridized with sequencing primer, and then immobilized on the flow cell. The immobilized sequencing templates are then subjected to a nucleotide incorporation reaction in a reaction mix that includes modified nucleotides with a cleavable 3′ blocking group that enables the incorporation and ***specific fluorescent labels that enables detection of only one specific nucleotide onto each sequencing template in each cycle***; a thermostable polymerase that works with such modified nucleotides, and suitable reaction buffer."

1    Ex. 43 ¶ [0011].

2    45.    To demonstrate how Qiagen infringes at least claims 1-6 and 8 of the '537 patent

3    with the GeneReader, attached as Exhibit 48 is a preliminary and exemplary claim chart.  This

4    chart is not intended to limit Plaintiffs' right to modify this chart or any other claim chart or allege

5    that other activities of Qiagen infringe the identified claims or any other claims of the '537 patent

6    or any other patents.  Exhibit 48 is hereby incorporated by reference in its entirety.  Each claim

7    element in Exhibit 48 that is mapped to Qiagen's GeneReader product shall be considered an

8    allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to

9    each allegation is required.

10    46.    On information and belief, Defendants have and continue to  directly infringe

11    pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, at least claims 1-6

12    and 8 the '537 patent by using the GeneReader within the United States.  Defendants have used

13    the GeneReader in the United States as part of the launch of the GeneReader, specifically in

14    connection with research, development, and testing activities related to the product.  Defendants

15    also use the GeneReader in the United States whenever they install a GeneReader at a United

16    States facility.

17    47.    On information and belief, Defendants have and continue to induce infringement

18    by their customers pursuant to 35 U.S.C. § 271 (b).   Defendants' customers directly infringe at

19    least claims 1-6 and 8 of the '537 patent when they use the GeneReader.  Defendants actively

20    induce infringement by controlling sales of the GeneReader itself, by providing materials or

21    apparatus that comprise the GeneReader system, including for example the sample preparation

22    device GeneRead QIACube, and by providing GeneReader promotional and marketing materials,

23    the GeneReader User Manual, other technical literature, and bioinformatics software platforms.

24    48.    On information and belief, Defendants have and continue to contribute to

25    infringement by their customers pursuant to 35 U.S.C. § 271 (c).  Defendants' customers directly

26    infringe at least claims 1-6 and 8 of the '537 patent when they use the GeneReader.  Defendants

27    contribute to infringement by offering to sell, selling within the United States, or importing into

28

the United States materials and apparatus for use with in practicing claims 1-6 and 8 of the '537 patent, including for example the GeneReader itself, GeneReader reagent kits, and the GeneReader QiaCube.

## COUNT I

### Infringement of U.S. Patent No. 7,566,537

49.     Illumina re-alleges and incorporates by this reference the allegations contained in paragraphs 1 through 48 above as relevant to this count.

50.     On information and belief, Defendants' customers have and continue to directly infringe, literally or by equivalence, claims 1-6 and 8 the '537 patent by practicing one or more claims of the '537 patent by using the Qiagen GeneReader product.  The following specific allegations detail the acts of direct, induced and contributory infringement by each named defendant.

**QIAGEN N.V.'s Infringement of the '537 patent.**

51.     QIAGEN N.V. has had knowledge of the '537 patent since at least December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s sub-subsidiary IBS, Inc. in patent litigation in the United States District Court for the District of Delaware.

52.     QIAGEN N.V. was subsequently a real party in interest in an unsuccessful attempt to invalidate the '537 patent in *inter partes* review.

Direct Infringement By QIAGEN N.V.

53.     On information and belief, QIAGEN N.V. has directly infringed and continues to directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using the GeneReader within the United States.  Specifically, on information and belief, QIAGEN N.V. has used the GeneReader in the United States in connection with research, development, and testing activities related to the launch of the GeneReader.  On information and belief, QIAGEN N.V. also uses the GeneReader in the United States as part of QIAGEN N.V.'s role in installing GeneReaders at locations in the United States.

Induced Infringement by QIAGEN N.V.

54.     On information and belief, QIAGEN N.V. is liable for their induced infringement of the '537 patent pursuant to 35 U.S.C. § 271 (b).   Specifically, QIAGEN N.V. has actively, knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims 1-6 and 8 of the '537 patent through a range of activities related to the NGS GeneReader System, as detailed in paragraphs 55 through 60.

55.     First, on information and belief, QIAGEN N.V. has induced infringement by controlling the design, manufacture and sale of the GeneReader with the knowledge and specific intent that customers will use the GeneReader to infringe by performing the claimed method of labeling a nucleic acid molecule.   For example, on information and belief, QIAGEN N.V. has controlled the design, manufacture, and sale of the GeneReader such that the GeneReader is sold with pre-programmed software protocols that control operation of the GeneReader so that customers are given the sole option of operating the GeneReader in a manner that infringes.

56.     Second, on information and belief, QIAGEN N.V. has induced infringement by controlling the design, manufacture and sale and/or selling materials or apparatus to be used with the NGS GeneReader System, including for example the GeneRead QIACube, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.   For example, on information and belief, QIAGEN N.V. CEO Peer Schatz traveled to the Northern District of California to promote the GeneReader, and during his presentation used a slide to promote the various GeneReader-specific apparatus such as the GeneRead QIACube.  *See supra* ¶¶ 8, 28-34.

57.     Third, on information and belief, QIAGEN N.V. has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  *See supra* ¶¶ 8, 28-34.

58.     Fourth, on information and belief, QIAGEN N.V. has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN N.V. is responsible for several press releases related to the GeneReader, including one related to the launch and one announcing that the GeneReader had won a product design award.  *See supra* ¶¶ 8, 28-34.   Additionally, on information and belief, QIAGEN N.V. executives traveled from Europe to the United States for the launch of the GeneReader.  *See supra* ¶¶ 8, 28-34.  As another example, on information and belief, QIAGEN N.V. is responsible for proactively marketing the GeneReader through, for instance, a website specifically devoted to the GeneReader.  This website references the brand without reference to a specific Qiagen entity: the GeneReader NGS System is "brought to you by a name that's synonymous with expertise and service: ***QIAGEN.*** Together we can deliver on the promise of NGS and create value for your clinical research lab."  *See supra* ¶¶ 8, 28-34, 36.

59.     Fifth, on information and belief, QIAGEN N.V. has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶¶ 8, 28-34.

60.     Finally, on information and belief, QIAGEN N.V. has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product.  For example, on information and belief, QIAGEN N.V. is responsible for the GeneReader User Manual(s), the various reagent kit manuals, technical handbooks, product detail sheets, and technical specification sheets, all of which are available on the Qiagen website.  *See supra* ¶¶ 8, 28-34.  On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner.

For example, the GeneReader reagent kit handbooks state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes.  By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN N.V. induces infringement.

61.     On information and belief, QIAGEN N.V. acted with knowledge that the induced acts constitute infringement.  On information and belief, QIAGEN N.V. acted with knowledge of or willful blindness with regards to its customers' underlying infringement.  On information and belief, employees of QIAGEN N.V. know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and belief, employees of QIAGEN N.V. know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

Contributory Infringement By QIAGEN N.V.

62.     On information and belief, QIAGEN N.V. is liable for contributory infringement of the '537 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and belief, QIAGEN N.V. has contributed to, or has threatened to contribute to, the infringement by its customers of the '537 patent by, without authority, selling and offering to sell within the United States materials and apparatuses for practicing the claimed invention of the '537 patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶¶ 8, 28-34.  The aforementioned products, which are at least in part supplied and/or supported by QIAGEN N.V., constitute a material part of the claimed invention of the '537 patent.   The allegations in paragraph 63 also support this allegation of contributory infringement.

63.     On information and belief, QIAGEN N.V. knows that the GeneReader, materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute material parts of the inventions of the '537 patent and that they are not a staple article or

commodity of commerce suitable for substantial noninfringing use.  As documented above, the GeneReader is a specialized sequencing instrument that carries out a specific method for sequencing DNA using specific labeled nucleotides.   As such, neither the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, or the GeneReader reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN N.V. knows that the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce suitable for substantial non-infringing use because these products have no use apart from infringing the '537 patent.

## Other Aspects Of Infringement By QIAGEN N.V.

64.    On information and belief, QIAGEN N.V.'s infringement has been willful and deliberate since, at least, December 21, 2012, the date on which QIAGEN N.V. subsidiary IBS was served with a complaint alleging infringement of the '537 patent.

65.    On information and belief, QIAGEN N.V. acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and the objectively-defined risk was known or so obvious that it should have been known to QIAGEN N.V.  On information and belief, QIAGEN N.V. has demonstrated knowledge of or willful blindness towards its infringement because QIAGEN N.V. employees know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.   Also on information and belief, employees of QIAGEN N.V. know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

66.    On information and belief, QIAGEN N.V. also lacks an objectively reasonable defense to its infringement.  On information and belief, QIAGEN N.V. is aware that the PTAB and Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen subsidiary IBS. On information and belief, QIAGEN N.V. is aware that the PTAB rejected IBS'

1  invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit

2  on May 9, 2016.

3       67.     QIAGEN N.V.'s infringement of the '537 patent has injured Illumina in its

4  business and property rights.  Illumina is entitled to recovery of monetary damages for such

5  injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

6       68.     QIAGEN N.V.'s infringement of the '537 patent has caused irreparable harm to

7  Illumina and will continue to cause such harm unless and until their infringing activities are

8  enjoined by this Court.

9

10

11

12       **QIAGEN GmbH's Infringement of the '537 patent**

13       69.     QIAGEN GmbH has had knowledge of the '537 patent since at least December 21,

14  2012, the date Illumina asserted the '537 patent against Qiagen subsidiary IBS in patent litigation

15  in the United States District Court for the District of Delaware.

16       70.     QIAGEN GmbH is in privy with IBS, which unsuccessfully attempted to invalidate

17  the '537 patent in *inter partes* review.

18       Direct Infringement By QIAGEN GmbH

19       71.     On information and belief, QIAGEN GmbH has directly infringed and continues to

20  directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of

21  equivalents, by using the GeneReader within the United States.  Specifically, on information and

22  belief, QIAGEN GmbH has used the GeneReader in the United States in connection with research,

23  development, and testing activities related to the launch of the GeneReader.  On information and

24  belief, QIAGEN GmbH also uses the GeneReader in the United States as part of QIAGEN

25  GmbH's role in installing GeneReaders at locations in the United States.

26       Induced Infringement By QIAGEN GmbH

27

28

72.     On information and belief, QIAGEN GmbH is liable for their induced infringement of the '537 patent pursuant to 35 U.S.C. § 271 (b).  Specifically, QIAGEN GmbH has actively, knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims 1-6 and 8 of the '537 patent through a range of activities, detailed in paragraphs 73 through 78, related to the GeneReader.

73.     First, on information and belief, QIAGEN GmbH has induced infringement by controlling the design, manufacture and sale of the GeneReader with the knowledge and specific intent that customers will use the GeneReader to infringe by performing the claimed method of labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN GmbH is the "legal manufacturer" of the GeneReader.  *See supra* ¶ 9.  On information and belief, QIAGEN GmbH controls the website on which GeneReader is marketed and sold.  *See id*.

74.     Second, on information and belief, QIAGEN GmbH has induced infringement by controlling the design, manufacture and sale and/or selling materials or apparatus to be used with the NGS GeneReader System, including for example the GeneRead QIACube, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.   For example, on information and belief, QIAGEN GmbH is the "legal manufacturer" of the GeneReader.  *See supra* ¶ 9.  On information and belief, QIAGEN GmbH controls the website on which GeneReader is marketed and sold.  *See id*.

75.     Third, on information and belief, QIAGEN GmbH has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN GmbH is the "legal manufacturer" of the GeneReader.  *See supra* ¶ 9.  On information and belief, QIAGEN GmbH controls the website on which GeneReader is marketed and sold.  *See id*.

76.     Fourth, on information and belief, QIAGEN GmbH has induced infringement by its customers by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  On information and belief, QIAGEN GmbH controls the website that hosts all of Qiagen's GeneReader promotional and marketing materials.  *See supra* ¶ 9.

77.     Fifth, on information and belief, QIAGEN GmbH has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN GmbH has created distribution channels for the GeneReader through its control of the website on which these Qiagen products are sold.  *See supra* ¶ 9.

78.     Finally, on information and belief, QIAGEN GmbH has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product.  For example, on information and belief, QIAGEN GmbH controls the website that hosts *inter alia* the GeneReader User Manual(s), the various reagent kit manuals, technical handbooks, product detail sheets, and technical specification sheets.  *See supra* ¶ 9.  On information and belief, QIAGEN GmbH publishes the user manuals and handbooks for the GeneReader and GeneReader reagent kits.  *See supra id.*  On information and belief, these materials direct customers to use the GeneReader and GeneReader reagent kits in an infringing manner.  For example, the handbooks to the GeneReader reagent kits state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes.  By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN GmbH induces infringement.

79.     On information and belief, QIAGEN GmbH acted with knowledge that the induced acts constitute infringement.  On information and belief, QIAGEN GmbH acted with knowledge of or willful blindness with regards to its customers' underlying infringement.  On information and belief, employees of QIAGEN GmbH know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and belief, employees of QIAGEN GmbH know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

Contributory Infringement By QIAGEN GmbH

80.     On information and belief, QIAGEN GmbH is liable for contributory infringement of the '537 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and belief, QIAGEN GmbH has contributed to, or has threatened to contribute to, the infringement by its customers of the '537 patent by, without authority, selling and offering to sell within the United States materials and apparatuses for practicing the claimed invention of the '537 patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶ 9.  The aforementioned products, which are at least in part supplied and/or supported by QIAGEN GmbH, constitute a material part of the claimed invention of the '537 patent.  The allegations in paragraph 81 also are hereby incorporated by reference and further elaborate on this contributory infringement allegation.

81.     On information and belief, QIAGEN GmbH knows that the GeneReader, materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute material parts of the inventions of the '537 patent and that they are not a staple article or commodity of commerce suitable for substantial noninfringing use.  As documented above, the GeneReader is a specialized sequencing instrument that carries out a specific method for sequencing DNA using specific labeled nucleotides.  As such, neither the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, or the GeneReader reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN

GmbH knows that the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce suitable for substantial non-infringing use because these products have no use apart from infringing the '537 patent.

Other Aspects Of Infringement By QIAGEN GmbH

82.     On information and belief, QIAGEN GmbH's infringement has been willful and deliberate since, at least, December 21, 2012, the date on which a Qiagen subsidiary was served with a complaint alleging infringement of the '537 patent.

83.     On information and belief, QIAGEN GmbH acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and the objectively-defined risk was known or so obvious that it should have been known to QIAGEN GmbH.  On information and belief, QIAGEN GmbH has demonstrated knowledge of or willful blindness towards its infringement because QIAGEN GmbH employees know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits. Also on information and belief, employees of QIAGEN GmbH know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

84.     On information and belief, QIAGEN GmbH also lacks an objectively reasonable defense to its infringement.  On information and belief, QIAGEN GmbH is aware that the PTAB and Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen subsidiary IBS. On information and belief, QIAGEN GmbH is aware that the PTAB rejected IBS' invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit on May 9, 2016.

85.     QIAGEN GmbH's infringement of the '537 patent has injured Illumina in its business and property rights. Illumina is entitled to recovery of monetary damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

86.     QIAGEN GmbH's infringement of the '537 patent has caused irreparable harm to Illumina and will continue to cause such harm unless and until their infringing activities are enjoined by this Court.

### QIAGEN Gaithersburg, Inc.'s Infringement of the '537 patent

87.     QIAGEN Gaithersburg, Inc. ("QIAGEN Gaithersburg") has had knowledge of the '537 patent since at least December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s U.S. sub-subsidiary IBS in patent litigation in the United States District Court for the District of Delaware.

88.     QIAGEN Gaithersburg is in privy with IBS, which unsuccessfully attempted to invalidate the '537 patent in *inter partes* review.

Direct Infringement By QIAGEN Gaithersburg

89.     On information and belief, QIAGEN Gaithersburg has directly infringed and continues to directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using the GeneReader within the United States.  Specifically, on information and belief, QIAGEN Gaithersburg has used the GeneReader in the United States in connection with research, development, and testing activities related to the launch of the GeneReader.  *See supra* ¶ 10.  On information and belief, QIAGEN Gaithersburg also uses the GeneReader in the United States as part of QIAGEN Gaithersburg's role in installing GeneReaders at locations in the United States.

Induced Infringement By QIAGEN Gaithersburg

90.     On information and belief, QIAGEN Gaithersburg is liable for their induced infringement of the '537 patent pursuant to 35 U.S.C. § 271 (b).  Specifically, QIAGEN Gaithersburg, Inc. has actively, knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims 1-6 and 8 of the '537 patent through a range of activities, detailed in paragraphs 91 through 96, related to the GeneReader.

91.     First, on information and belief, QIAGEN Gaithersburg has induced infringement by controlling the design, manufacture and sale of the GeneReader with the knowledge and

specific intent that customers will use the GeneReader to infringe by performing the claimed method of labeling a nucleic acid molecule. On information and belief, QIAGEN Gaithersburg is responsible for substantial sales and marketing of Qiagen products, including the GeneReader. *See supra* ¶ 10. Upon information and belief, several senior-level Qiagen employees involved in sales and marketing purport to reside in and around the QIAGEN Gaithersburg facilities. *See id.*

92.     Second, on information and belief, QIAGEN Gaithersburg has induced infringement by controlling the design, manufacture and sale and/or selling materials or apparatus to be used with the NGS GeneReader System, including for example the GeneRead QIACube, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule. On information and belief, QIAGEN Gaithersburg is responsible for at least some sales of Qiagen products. *See supra* ¶ 10. On information and belief, several senior-level Qiagen employees involved in sales and marketing purport to reside in and around the QIAGEN Gaithersburg facilities. *See id.*

93.     Third, on information and belief, QIAGEN Gaithersburg has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule. *See supra* ¶ 10.

94.     Fourth, on information and belief, QIAGEN Gaithersburg has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule. *See supra* ¶ 10.

95.     Fifth, on information and belief, QIAGEN Gaithersburg has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and

specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule. *See supra* ¶ 10.

96.    Finally, on information and belief, QIAGEN Gaithersburg, through its sales and marketing arms, has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product. *See supra* ¶ 10.   On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner.  For example, the GeneReader reagent kit handbooks state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes.  By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN Gaithersburg induces infringement.

97.    On information and belief, QIAGEN Gaithersburg acted with knowledge that the induced acts constitute infringement.  On information and belief, QIAGEN Gaithersburg acted with knowledge of or willful blindness with regards to its customers' underlying infringement.  On information and belief, employees of QIAGEN Gaithersburg know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits. Also on information and belief, employees of QIAGEN Gaithersburg know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

Contributory Infringement by QIAGEN Gaithersburg

98.    On information and belief, QIAGEN Gaithersburg is liable for contributory infringement of the '537 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and belief, QIAGEN Gaithersburg has contributed to, or has threatened to contribute to, the infringement by its customers of the '537 patent by, without authority, selling and offering to sell within the United States materials and apparatuses for practicing the claimed invention of the '537 patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent

1  kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing

2  Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶ 10.  The aforementioned

3  products, which are at least in part supplied and/or supported by QIAGEN Gaithersburg, constitute

4  a material part of the claimed invention of the '537 patent.  The allegations in paragraph 99 also

5  support this allegation of contributory infringement.

6         99.    On information and belief, QIAGEN Gaithersburg knows that the GeneReader,

7  materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits,

8  constitute material parts of the inventions of the '537 patent and that they are not a staple article or

9  commodity of commerce suitable for substantial noninfringing use.  As documented above, the

10  GeneReader is a specialized sequencing instrument that carries out a specific method for

11  sequencing DNA using specific labeled nucleotides.  As such, neither the GeneReader, the

12  materials or apparatus specifically designed for use with the GeneReader, or the GeneReader

13  reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN

14  Gaithersburg knows that the GeneReader, the materials or apparatus specifically designed for use

15  with the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of

16  commerce suitable for substantial non-infringing use because these products have no use apart

17  from infringing the '537 patent.

18         Other Aspects Of Infringement By QIAGEN Gaithersburg

19         100.    On information and belief, QIAGEN Gaithersburg's infringement has been willful

20  and deliberate since at least December 21, 2012, the date on which a Qiagen subsidiary was served

21  with a complaint alleging infringement of the '537 patent.

22         101.    On information and belief, QIAGEN Gaithersburg acted despite an objectively high

23  likelihood that its actions constituted infringement of a valid patent and the objectively-defined

24  risk was known or so obvious that it should have been known to QIAGEN Gaithersburg.  On

25  information and belief, QIAGEN Gaithersburg has demonstrated knowledge of or willful

26  blindness towards its infringement because QIAGEN Gaithersburg employees know of or are

27  willfully blind with regards to the structure of the nucleotides used in the GeneReader and

28

GeneReader reagent kits.  Also on information and belief, employees of QIAGEN Gaithersburg know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

102.   On information and belief, QIAGEN Gaithersburg also lacks an objectively reasonable defense to its infringement.  On information and belief, QIAGEN Gaithersburg is aware that the PTAB and Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen subsidiary IBS.  On information and belief, QIAGEN Gaithersburg is aware that the PTAB rejected IBS' invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit on May 9, 2016.

103.   QIAGEN Gaithersburg's infringement of the '537 patent has injured Illumina in its business and property rights. Illumina is entitled to recovery of monetary damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

104.   QIAGEN Gaithersburg's infringement of the '537 patent has caused irreparable harm to Illumina and will continue to cause such harm unless and until their infringing activities are enjoined by this Court.

### QIAGEN Sciences, LLC's Infringement of the '537 patent

105.   QIAGEN Sciences LLC ("QIAGEN Sciences") has had knowledge of the '537 patent since at least December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s sub-subsidiary IBS in patent litigation in the United States District Court for the District of Delaware.

106.   QIAGEN Sciences is in privy with IBS, which unsuccessfully attempted to invalidate the '537 patent in *inter partes* review.

Direct Infringement By QIAGEN Sciences

107.   On information and belief, QIAGEN Sciences has directly infringed and continues to directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using the GeneReader within the United States.  Specifically, on information and belief, QIAGEN Sciences has used the GeneReader in the United States in connection with

research, development, and testing activities related to the launch of the GeneReader.   On information and belief, QIAGEN Sciences also uses the GeneReader in the United States as part of QIAGEN Sciences' role in installing GeneReaders at locations in the United States.

Induced Infringement by QIAGEN Sciences

108.   On information and belief, QIAGEN Sciences is liable for their induced infringement of the '537 patent pursuant to 35 U.S.C. § 271 (b).   Specifically, QIAGEN Sciences has actively, knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims 1-6 and 8 of the '537 patent through a range of activities, detailed in paragraphs 109 through 114, related to the GeneReader.

109.   First, on information and belief, QIAGEN Sciences has induced infringement by controlling the design, manufacture and sale of the GeneReader with the knowledge and specific intent that customers will use the GeneReader to infringe by performing the claimed method of labeling a nucleic acid molecule.   On information and belief, QIAGEN Sciences plays a role in sales and marketing of Qiagen products.   *See supra* ¶ 11.   On information and belief, several senior-level Qiagen employees involved in sales and marketing purport to reside in and around the QIAGEN Sciences facilities.   *See id*.

110.   Second, on information and belief, QIAGEN Sciences has induced infringement by controlling the design, manufacture and sale and/or selling materials or apparatus to be used with the NGS GeneReader System, including for example the GeneRead QIACube, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.   *See supra* ¶ 11.   On information and belief, QIAGEN Sciences is responsible for at least some sales of Qiagen products.   *See id*.

111.   Third, on information and belief, QIAGEN Sciencees has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that

customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  *See supra* ¶ 11.

112.    Fourth, on information and belief, QIAGEN Sciences has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶ 11.

113.    Fifth, on information and belief, QIAGEN Sciences has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶ 11.

114.    Finally, on information and belief, QIAGEN Sciences has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product.  *See supra* ¶ 11.  On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner.  For example, the GeneReader reagent kit manuals state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes.   By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN Sciences induces infringement.

115.    On information and belief, QIAGEN Sciences acted with knowledge that the induced acts constitute infringement.  On information and belief, QIAGEN Sciences. acted with knowledge of or willful blindness with regards to its customers' underlying infringement.  On information and belief, employees of QIAGEN Sciences know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.

1  Also on information and belief, employees of QIAGEN Sciences know of or are willfully blind

2  with regards to the method that the GeneReader uses to sequence DNA.

3      <u>Contributory Infringement by QIAGEN Sciences</u>

4      116.   On information and belief, QIAGEN Sciences is liable for contributory

5  infringement of the '537 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and

6  belief, QIAGEN Sciences has contributed to, or has threatened to contribute to, the infringement

7  by its customers of the '537 patent by, without authority, selling and offering to sell within the

8  United States materials and apparatuses for practicing the claimed invention of the '537 patent,

9  including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits

10  (which use specialized labeled nucleotides), including for example the GeneRead Sequencing

11  Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶ 11.  The aforementioned

12  products, which are at least in part supplied and/or supported by QIAGEN Sciences, constitute a

13  material part of the claimed invention of the '537 patent.  The allegations in Paragraph 117 also

14  support this allegation of contributory infringement.

15      117.   On information and belief, QIAGEN Sciences knows that the GeneReader,

16  materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits,

17  constitute material parts of the inventions of the '537 patent and that they are not a staple article or

18  commodity of commerce suitable for substantial noninfringing use.  As documented above, the

19  GeneReader is a specialized sequencing instrument that carries out a specific method for

20  sequencing DNA using specific labeled nucleotides.  As such, neither the GeneReader, the

21  materials or apparatus specifically designed for use with the GeneReader, or the GeneReader

22  reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN

23  Sciences knows that the GeneReader, the materials or apparatus specifically designed for use with

24  the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of

25  commerce suitable for substantial non-infringing use because these products have no use apart

26  from infringing the '537 patent.

27      <u>Other Aspects Of Infringement By QIAGEN Sciences</u>

28

118.   On information and belief, QIAGEN Sciences' infringement has been willful and deliberate since at least December 21, 2012, the date on which a Qiagen subsidiary was served with a complaint alleging infringement of the '537 patent.

119.   On information and belief, QIAGEN Sciences acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and the objectively-defined risk was known or so obvious that it should have been known to QIAGEN Sciences.   On information and belief, QIAGEN Sciences has demonstrated knowledge of or willful blindness towards its infringement because QIAGEN Sciences employees know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.   Also on information and belief, employees of QIAGEN Sciences know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

120.   On information and belief, QIAGEN Sciences also lacks an objectively reasonable defense to its infringement.   On information and belief, QIAGEN Sciences is aware that the PTAB and Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen subsidiary IBS.   On information and belief, QIAGEN Sciences is aware that the PTAB rejected IBS' invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit on May 9, 2016.

121.   QIAGEN Sciences' infringement of the '537 patent has injured Illumina in its business and property rights. Illumina is entitled to recovery of monetary damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

122.   QIAGEN Sciences' infringement of the '537 patent has caused irreparable harm to Illumina and will continue to cause such harm unless and until their infringing activities are enjoined by this Court.

**QIAGEN Inc.'s Infringement of the '537 patent**

123.   QIAGEN Inc. (USA) ("QIAGEN Inc.") has had knowledge of the '537 patent since at least December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s

1  sub-subsidiary IBS in patent litigation in the United States District Court for the District of

2  Delaware.

3      124.    QIAGEN Inc. is in privy with IBS, which unsuccessfully attempted to invalidate

4  the '537 patent in *inter partes* review.

5      Direct Infringement By QIAGEN Inc.

6      125.    On information and belief, QIAGEN Inc. has directly infringed and continues to

7  directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of

8  equivalents, by using the GeneReader within the United States.  Specifically, on information and

9  belief, QIAGEN Inc. has used the GeneReader in the United States in connection with research,

10 development, and testing activities related to the launch of the GeneReader.  On information and

11 belief, QIAGEN Inc. also uses the GeneReader in the United States as part of QIAGEN Inc.'s role

12 in installing GeneReaders at locations in the United States.

13     Induced Infringement By QIAGEN Inc.

14     126.    On information and belief, QIAGEN Inc. is liable for their induced infringement of

15 the '537 patent pursuant to 35 U.S.C. § 271 (b).  Specifically, QIAGEN Inc. has actively,

16 knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims

17 1-6 and 8 of the '537 patent through a range of activities, detailed in paragraphs 127 through 132,

18 related to the GeneReader.

19     127.    First, on information and belief, QIAGEN Inc. has induced infringement by

20 controlling the design, manufacture and sale of the GeneReader with the knowledge and specific

21 intent that customers will use the GeneReader to infringe by performing the claimed method of

22 labeling a nucleic acid molecule.  On information and belief, QIAGEN Inc. takes orders of the

23 GeneReader through the GeneReader website.  *See supra* ¶ 12.  On information and belief,

24 employees of Qiagen working in and around Valencia, California, the principal place of business

25 of QIAGEN Inc., provide customer support to customers that purchase Qiagen products.  *See id*.

26 For example, Mr. Kiran Shetty, Vice President of Technical Customer Support Americas, purports

27

28

to have overall "management responsibilities for Technical Service, Dispatch and Service Administration, Field Service" for North America.  *See id.*

128.    Second, on information and belief, QIAGEN Inc. has induced infringement by controlling the design, manufacture and sale and/or selling materials or apparatus to be used with the NGS GeneReader System, including for example the GeneRead QIACube, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN Inc. takes customer orders for products like the GeneRead QIACube through the GeneReader website.  *See supra* ¶ 12.  On information and belief, employees of Qiagen working in and around Valencia, California, the principal place of business of QIAGEN Inc., provide customer support to customers that purchase Qiagen products.  *See id.*  For example, Mr. Kiran Shetty, Vice President of Technical Customer Support Americas, purports to have overall "management responsibilities for Technical Service, Dispatch and Service Administration, Field Service" for North America.  *See id.*

129.    Third, on information and belief, QIAGEN Inc. has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  *See supra* ¶ 12.  On information and belief, QIAGEN Inc. takes orders of GeneReader reagent kits, including the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, through the GeneReader website.  *See id.*  On information and belief, employees of Qiagen working in and around Valencia, California, the principal place of business of QIAGEN Inc., provide customer support to customers that purchase Qiagen products.  *See id.* For example, Mr. Kiran Shetty, Vice President of Technical Customer Support Americas, purports to have overall "management responsibilities for Technical Service, Dispatch and Service Administration, Field Service" for North America.  *See id.*

130.    Fourth, on information and belief, QIAGEN Inc. has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶ 12.

131.    Fifth, on information and belief, QIAGEN Inc. has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶ 12.

132.    Finally, on information and belief, QIAGEN Inc. has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product. On information and belief, QIAGEN Inc. employees provide direct customer support, likely to include the distribution of technical materials, for the use of Qiagen products.  *See supra* ¶ 12.  On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner. For example, the GeneReader reagent kit manuals state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes.  By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN Inc. induces infringement.

133.    On information and belief, QIAGEN Inc. acted with knowledge that the induced acts constitute infringement.  On information and belief, QIAGEN Inc. acted with knowledge of or willful blindness with regards to its customers' underlying infringement.  On information and belief, employees of QIAGEN Inc. know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and

belief, employees of QIAGEN Inc. know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

Contributory Infringement by QIAGEN Inc.

134.    On information and belief, QIAGEN Inc. is liable for contributory infringement of the '537 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and belief, QIAGEN Inc. has contributed to, or has threatened to contribute to, the infringement by its customers of the '537 patent by, without authority, selling and offering to sell within the United States materials and apparatuses for practicing the claimed invention of the '537 patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶ 12.  The aforementioned products, which are at least in part supplied and/or supported by QIAGEN Inc., constitute a material part of the claimed invention of the '537 patent.  The allegations in Paragraph 135 also support this allegation of contributory infringement.

135.    On information and belief, QIAGEN Inc. knows that the GeneReader, materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute material parts of the inventions of the '537 patent and that they are not a staple article or commodity of commerce suitable for substantial noninfringing use.  As documented above, the GeneReader is a specialized sequencing instrument that carries out a specific method for sequencing DNA using specific labeled nucleotides.  As such, neither the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, or the GeneReader reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN Inc. knows that the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce suitable for substantial non-infringing use because these products have no use apart from infringing the '537 patent.

Other Aspects Of Infringement By QIAGEN Inc.

1     136.   On information and belief, QIAGEN Inc.'s infringement has been willful and

2    deliberate since at least December 21, 2012, the date on which a Qiagen subsidiary was served

3    with a complaint alleging infringement of the '537 patent.

4     137.   On information and belief, QIAGEN Inc. acted despite an objectively high

5    likelihood that its actions constituted infringement of a valid patent and the objectively-defined

6    risk was known or so obvious that it should have been known to QIAGEN Inc.  On information

7    and belief, QIAGEN Inc. has demonstrated knowledge of or willful blindness towards its

8    infringement because QIAGEN Inc. employees know of or are willfully blind with regards to the

9    structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on

10   information and belief, employees of QIAGEN Inc. know of or are willfully blind with regards to

11   the method that the GeneReader uses to sequence DNA.

12     138.   On information and belief, QIAGEN Inc. also lacks an objectively reasonable

13   defense to its infringement.  On information and belief, QIAGEN Inc. is aware that the PTAB and

14   Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen

15   subsidiary IBS.  On information and belief, QIAGEN Inc. is aware that the PTAB rejected IBS'

16   invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit

17   on May 9, 2016.

18     139.   QIAGEN Inc.'s infringement of the '537 patent has injured Illumina in its business

19   and property rights. Illumina is entitled to recovery of monetary damages for such injuries

20   pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

21     140.   QIAGEN Inc.'s infringement of the '537 patent has caused irreparable harm to

22   Illumina and will continue to cause such harm unless and until their infringing activities are

23   enjoined by this Court.

24    **QIAGEN Redwood City Inc.'s Infringement of the '537 patent**

25     141.   QIAGEN Redwood City Inc. ("QIAGEN Redwood City") has had knowledge of

26   the '537 patent since at least December 21, 2012, the date Illumina asserted the '537 patent against

27

28

1   QIAGEN N.V.'s sub-subsidiary IBS in patent litigation in the United States District Court for the

2   District of Delaware.

3       142.    QIAGEN Redwood City is in privy with IBS, which unsuccessfully attempted to

4   invalidate the '537 patent in *inter partes* review.

5       Direct Infringement By QIAGEN Redwood City

6       143.    On information and belief, QIAGEN Redwood City has directly infringed and

7   continues to directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the

8   doctrine of equivalents, by using the GeneReader within the United States.   Specifically, on

9   information and belief, QIAGEN Redwood City has used the GeneReader in the United States in

10  connection with research, development, and testing activities related to the launch of the

11  GeneReader.  On information and belief, QIAGEN Redwood City also uses the GeneReader in the

12  United States as part of QIAGEN Redwood City's role in installing GeneReaders at locations in

13  the United States.

14      Induced Infringement by QIAGEN Redwood City Inc.

15      144.    On information and belief, QIAGEN Redwood City is liable for their induced

16  infringement of the '537 patent pursuant to 35 U.S.C. § 271 (b).  Specifically, QIAGEN Redwood

17  City has actively, knowingly, and intentionally induced, or has threatened to induce, infringement

18  of at least claims 1-6 and 8 of the '537 patent through a range of activities, detailed in paragraphs

19  145 through 150, related to the GeneReader.

20      145.    First, on information and belief, QIAGEN Redwood City has induced infringement

21  by controlling the design, manufacture and sale of the GeneReader with the knowledge and

22  specific intent that customers will use the GeneReader to infringe by performing the claimed

23  method of labeling a nucleic acid molecule.  On information and belief, QIAGEN Redwood City

24  employees purport to be involved in product development around and launch of the GeneReader.

25  *See supra* ¶¶ 13, 34.  For example and as documented above, Mr. Rupert Yip, Director Product

26  Management at QIAGEN Redwood City, purports that he participated in the "QIAGEN post

27  merger [*sic*] integration team **with a focus on GeneReader NGS platform**."  *See supra* ¶ 13.  Mr.

28

1    Kip also purports to be a member "of GeneReader Core Team **leading the platform's**

2    **development and go to market strategy**." *Id*.  To provide another example, Mr. Kumar Bala,

3    whose title is Associate Director at QIAGEN, Molecular Diagnostics-NextGenSequencing, works

4    in Hercules, California, less than 50 miles from the QIAGEN Redwood City leased office space.

5    *See supra Id*.  Per Mr. Bala's LinkedIn page, he was integrally involved in coordinating "the

6    launch of the GeneReader NGS System." *Id*.  On information and belief, QIAGEN Redwood

7    City, through individuals like Mr. Yip and Mr. Bala, executed product development and

8    commercial launch activities related to the GeneReader.

9        146.   Second, on information and belief, QIAGEN Redwood City has induced

10   infringement by controlling the design, manufacture and sale and/or selling materials or apparatus

11   to be used with the NGS GeneReader System, including for example the GeneRead QIACube,

12   with the knowledge and specific intent that customers will use these products to infringe by

13   performing the claimed method of labeling a nucleic acid molecule.  On information and belief,

14   QIAGEN Redwood City employees purport to be heavily involved in product development and

15   launch of the GeneReader NGS **_platform_** or **_system_**, which includes the materials or apparatus to

16   be used with the GeneReader.  *See supra* ¶¶ 13, 34.  For example and as documented above, Mr.

17   Rupert Yip, Director Product Management at QIAGEN Redwood City, purported that he

18   participated in the "QIAGEN post merger [*sic*] integration team **with a focus on GeneReader**

19   **NGS _platform_**." *See supra* ¶ 13.  Mr. Kip also purports to be a member "of GeneReader Core

20   Team **leading the _platform_'s development and go to market strategy**." *Id*.  As another example,

21   on information and belief, Mr. Kumar Bala, whose title is Associate Director at QIAGEN,

22   Molecular Diagnostics-NextGenSequencing, works in Hercules, California, less than 50 miles

23   from the QIAGEN Redwood City leased office space, and was heavily involved in development of

24   the GeneReader system, i.e. the Genereader and the materials or apparatus to be used within the

25   system. *Id*.  Per Mr. Bala's LinkedIn page, he was integrally involved in coordinating "the launch

26   of the GeneReader NGS **_System_**." *Id*.  On information and belief, QIAGEN Redwood City,

27

28

through individuals like Mr. Yip and Mr. Bala, has controlled the design, manufacture and sale of manufacture and apparatus to be used with NGS GeneReader System.

147.    Third, on information and belief, QIAGEN Redwood City has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  On information and belief, QIAGEN Redwood City employees purport to be heavily involved in product development and launch of the GeneReader NGS **_platform_** or **_system_**, which would include reagent kits.  *See supra* ¶¶ 13, 34.  Mr. Rupert Yip, Director Product Management at QIAGEN Redwood City, stated that he participated in the "QIAGEN post merger [*sic*] integration team **_with a focus on GeneReader NGS platform_**."  *See supra* ¶ 13.  Mr. Kip also purports to be a member "of GeneReader Core Team **_leading the platform's development and go to market strategy_**."  *Id.*  On information and belief, QIAGEN Redwood City, through individuals like Mr. Yip, has been substantially involved in controlling the design, manufacture, and sale of various GeneReader reagent kits as part of its work on the NGS GeneReader System.

148.    Fourth, on information and belief, QIAGEN Redwood City has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶¶ 13, 34.

149.    Fifth, on information and belief, QIAGEN Redwood City has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶¶ 13, 34.

150.    Finally, on information and belief, QIAGEN Redwood City has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product. On information and belief, QIAGEN Redwood City is inextricably involved in distribution of other instructional materials, product manuals, and technical materials related to the GeneReader. *See supra* ¶¶ 13, 34. For example, Mr. Bala, who upon information and belief works at QIAGEN Redwood City, stated on his LinkedIn page that he "[l]ed the team in developing the training plan and organizing the training for the technical sales team." *See supra* ¶ 13. On information and belief, through individuals like Mr. Bala, QIAGEN Redwood City has induced infringement through distributing instructional materials, product manuals, and other technical materials. On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner. For example, the GeneReader reagent kit manuals state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes. By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN Redwood City induces infringement.

151.    On information and belief, QIAGEN Redwood City acted with knowledge that the induced acts constitute infringement. On information and belief, QIAGEN Redwood City acted with knowledge of or willful blindness with regards to its customers' underlying infringement. On information and belief, employees of QIAGEN Redwood City know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits. Also on information and belief, employees of QIAGEN Redwood City know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

Contributory Infringement by QIAGEN Redwood City

152.    On information and belief, QIAGEN Redwood City is liable for contributory infringement of the '537 patent pursuant to 35 U.S.C. § 271(c). Specifically, on information and

1   belief, QIAGEN Redwood City has contributed to, or has threatened to contribute to, the

2   infringement by its customers of the '537 patent by, without authority, selling and offering to sell

3   within the United States materials and apparatuses for practicing the claimed invention of the '537

4   patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent

5   kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing

6   Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶¶ 13, 34.  The aforementioned

7   products, which are at least in part supplied and/or supported by QIAGEN Redwood City,

8   constitute a material part of the claimed invention of the '537 patent.  The allegations in Paragraph

9   153 also support this allegation of contributory infringement.

10       153.    On information and belief, QIAGEN Redwood City knows that the GeneReader,

11   materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits,

12   constitute material parts of the inventions of the '537 patent and that they are not a staple article or

13   commodity of commerce suitable for substantial noninfringing use.  As documented above, the

14   GeneReader is a specialized sequencing instrument that carries out a specific method for

15   sequencing DNA using specific labeled nucleotides.   As such, neither the GeneReader, the

16   materials or apparatus specifically designed for use with the GeneReader, or the GeneReader

17   reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN

18   Redwood City knows that the GeneReader, the materials or apparatus specifically designed for use

19   with the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of

20   commerce suitable for substantial non-infringing use because these products have no use apart

21   from infringing the '537 patent.

22           Other Aspects Of Infringement By QIAGEN Redwood City

23       154.    On information and belief, QIAGEN Redwood City infringement has been willful

24   and deliberate since at least December 21, 2012, the date on which a Qiagen subsidiary was served

25   with a complaint alleging infringement of the '537 patent.

26       155.    On information and belief, QIAGEN Redwood City acted despite an objectively

27   high likelihood that its actions constituted infringement of a valid patent and the objectively-

28

1   defined risk was known or so obvious that it should have been known to QIAGEN Redwood City.

2   On information and belief, QIAGEN Redwood City has demonstrated knowledge of or willful

3   blindness towards its infringement because QIAGEN Redwood City employees know of or are

4   willfully blind with regards to the structure of the nucleotides used in the GeneReader and

5   GeneReader reagent kits.  Also on information and belief, QIAGEN Redwood City employees

6   know of or are willfully blind with regards to the method that the GeneReader uses to sequence

7   DNA.

8       156.    On information and belief, QIAGEN Redwood City also lacks an objectively

9   reasonable defense to its infringement.  On information and belief, QIAGEN Redwood City is

10   aware that the PTAB and Federal Circuit both rejected challenges to the validity of the '537 patent

11   put forth by Qiagen subsidiary IBS.  On information and belief, QIAGEN Redwood City is aware

12   that the PTAB rejected IBS' invalidity positions on February 11, 2015, and that rejection was

13   confirmed by the Federal Circuit on May 9, 2016.

14       157.    QIAGEN Redwood City's infringement of the '537 patent has injured Illumina in

15   its business and property rights. Illumina is entitled to recovery of monetary damages for such

16   injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

17       158.    QIAGEN Redwood City's infringement of the '537 patent has caused irreparable

18   harm to Illumina and will continue to cause such harm unless and until their infringing activities

19   are enjoined by this Court.

20       **Intelligent Bio-Systems, Inc.'s Infringement of the '537 patent**

21       159.    Intelligent Bio-Systems, Inc. (IBS) has had knowledge of the '537 patent since at

22   least December 21, 2012, the date Illumina asserted the '537 patent against IBS in a patent

23   litigation in the United States District Court for the District of Delaware.  IBS unsuccessfully

24   attempted to invalidate the '537 patent in *inter partes* review.

25       Direct Infringement by IBS

26       160.    On information and belief, IBS has directly infringed and continues to directly

27   infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of

28

1   equivalents, by using the GeneReader within the United States.  Specifically, on information and

2   belief, IBS has used the GeneReader in the United States in connection with research,

3   development, and testing activities related to the launch of the GeneReader.  On information and

4   belief, IBS also uses the GeneReader in the United States as part of IBS' role in installing

5   GeneReaders at locations in the United States.

6        Induced Infringement by IBS

7        161.    On information and belief, IBS is liable for their induced infringement of the '537

8   patent pursuant to 35 U.S.C. § 271 (b).  Specifically, IBS  has actively, knowingly, and

9   intentionally induced, or has threatened to induce, infringement of at least claims 1-6 and 8 of the

10  '537 patent through a range of activities, detailed in paragraphs 162 through 167, related to the

11  GeneReader.

12       162.    First, on information and belief, IBS has induced infringement by controlling the

13  design, manufacture and sale of the GeneReader with the knowledge and specific intent that

14  customers will use the GeneReader to infringe by performing the claimed method of labeling a

15  nucleic acid molecule.  On information and belief, IBS is substantially involved in research and

16  development of QIAGEN's next-generation sequencing products.  *See supra* ¶ 14.  On information

17  and belief, IBS owns trademark rights to the word mark "GeneReader." *Id*.  On information and

18  belief, employees of Qiagen located in Waltham, Massachusetts, IBS' principal place of business,

19  work on projects related to the GeneReader. *Id*.

20       163.    Second, on information and belief, IBS has induced infringement by controlling the

21  design, manufacture and sale and/or selling materials or apparatus to be used with the NGS

22  GeneReader System, including for example the GeneRead QIACube, with the knowledge and

23  specific intent that customers will use these products to infringe by performing the claimed

24  method of labeling a nucleic acid molecule.  On information and belief, IBS is substantially

25  involved in research and development of QIAGEN's next-generation sequencing products,

26  including materials and/or apparatus to be used with the GeneReader. *See supra* ¶ 14.

27

28

164.    Third, on information and belief, IBS has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  *See supra* ¶ 14.  On information and belief, IBS is substantially involved in research and development of QIAGEN's next-generation sequencing products including GeneReader reagent kits.  *Id*.  On information and belief, IBS owns trademark rights to the word mark "GeneReader," which is integrated into the product names for these reagent kits.  *Id*.

165.    Fourth, on information and belief, IBS has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  On information and belief, IBS employees, due to their role in research and development of the GeneReader, are substantially involved in promoting the GeneReader.  *See supra* ¶ 14.  Several integral members of the GeneReader launch purport to be living in and around Waltham, Massachusetts, IBS' principal place of business.  *Id*.

166.    Fifth, on information and belief, IBS has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.  On information and belief, IBS employees have been substantially involved with the launch of, i.e. the creation of distribution channels for, the GeneReader.  *See supra* ¶ 14.

167.    Finally, on information and belief, IBS has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product. On information and belief and due to IBS' substantial role in

research and development of Qiagen next-generation sequencing technologies, IBS is involved in the creation and/or distribution of other instructional materials, product manuals, and technical materials related to the GeneReader.  *See supra* ¶ 14.  On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner.  For example, the GeneReader reagent kit manuals state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes.  By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, IBS induces infringement.

168.   On information and belief, IBS acted with knowledge that the induced acts constitute infringement.   On information and belief, IBS acted with knowledge of or willful blindness with regards to its customers' underlying infringement.   On information and belief, employees of IBS know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and belief, employees of IBS know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

Contributory Infringement by IBS

169.   On information and belief, IBS is liable for contributory infringement of the '537 patent pursuant to 35 U.S.C. § 271(c).   Specifically, on information and belief, IBS has contributed to, or has threatened to contribute to, the infringement by its customers of the '537 patent by, without authority, selling and offering to sell within the United States materials and apparatuses for practicing the claimed invention of the '537 patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶ 14.  The aforementioned products, which are at least in part supplied and/or supported by IBS, constitute a material part of the claimed invention of the

1    '537 patent.   The allegations in Paragraph 170 also support this allegation of contributory

2    infringement.

3         170.   On information and belief, IBS knows that the GeneReader, materials and

4    apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute

5    material parts of the inventions of the '537 patent and that they are not a staple article or

6    commodity of commerce suitable for substantial noninfringing use.   As documented above, the

7    GeneReader is a specialized sequencing instrument that carries out a specific method for

8    sequencing DNA using specific labeled nucleotides.   As such, neither the GeneReader, the

9    materials or apparatus specifically designed for use with the GeneReader, or the GeneReader

10   reagent kits are a staple article of commerce suitable for substantial non-infringing use.   IBS

11   knows that the GeneReader, the materials or apparatus specifically designed for use with the

12   GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce

13   suitable for substantial non-infringing use because these products have no use apart from

14   infringing the '537 patent.

15

16

17

18        Other Aspects Of Infringement By IBS

19        171.   On information and belief, IBS' infringement has been willful and deliberate since

20   at least December 21, 2012, the date on which IBS was served with a complaint alleging

21   infringement of the '537 patent.

22        172.   On information and belief, IBS acted despite an objectively high likelihood that its

23   actions constituted infringement of a valid patent and the objectively-defined risk was known or so

24   obvious that it should have been known to IBS.   On information and belief, IBS has demonstrated

25   knowledge of or willful blindness towards its infringement because IBS employees know of or are

26   willfully blind with regards to the structure of the nucleotides used in the GeneReader and

27

28

GeneReader reagent kits.  Also on information and belief, IBS employees know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

173.    On information and belief, IBS also lacks an objectively reasonable defense to its infringement.  On information and belief, IBS is aware that the PTAB and Federal Circuit both rejected its challenges to the validity of the '537 patent that it put forth through IPR proceedings. On information and belief, IBS is aware that the PTAB rejected its invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit on May 9, 2016.

174.    IBS' infringement of the '537 patent has injured Illumina in its business and property rights. Illumina is entitled to recovery of monetary damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

175.    IBS' infringement of the '537 patent has caused irreparable harm to Illumina and will continue to cause such harm unless and until their infringing activities are enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Illumina prays for relief as follows:

A.    Judgment that Defendants have infringed the '537 patent;

B.    An order preliminarily and permanently enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from further infringement of the '537 patent;

C.    An award of damages pursuant to 35 U.S.C. § 284;

D.    A declaration that Defendants' infringement was willful and deliberate, and an increase to the award of damages of three times the amount found or assessed by the Court, in accordance with 35 U.S.C. § 284;

E.    An order for an accounting of damages from Defendants' infringement;

F.    An award to Illumina of their costs and reasonable expenses to the fullest extent permitted by law;

1    G.    A declaration that this case is exceptional pursuant to 35 U.S.C. § 285, and an

2  award of attorneys' fees and costs; and

3    H.    An award of such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Civil Local Rule 3-6(a), Illumina hereby demands a trial by jury on all issues so triable.

Dated:  May 24, 2016                               Respectfully Submitted,


                                                   WEIL, GOTSHAL & MANGES LLP
                                                   Edward R. Reines
                                                   Derek C. Walter


                                        By: _____/s/ Edward R. Reines_____
                                                   Edward R. Reines
                                                   Attorneys for Plaintiffs
                                                   ILLUMINA, INC.
                                                   ILLUMINA CAMBRIDGE LTD.