1

2

3

4

5

6                              IN THE UNITED STATES DISTRICT COURT

7

8                              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   ILLUMINA, INC., and ILLUMINA                        No. C 16-02788 WHA
     CAMBRIDGE LTD.,
11
                    Plaintiffs,
12
        v.
13
     QIAGEN NV, QIAGEN GmbH, QIAGEN                       **ORDER RE MOTION TO**
14   GAITHERSBURG, INC., QIAGEN                           **DISMISS AND MOTION TO**
     SCIENCES, LLC, QIAGEN INC. (USA),                   **TRANSFER OR, IN THE**
15   QIAGEN REDWOOD CITY, INC., and                      **ALTERNATIVE, STAY**
     INTELLIGENT BIO-SYSTEMS, INC.,
16
                    Defendants.
17   _____/

18

19                                        **INTRODUCTION**

20          In this patent infringement action, six of seven defendants move to transfer this action to

21   the District of Delaware, or in the alternative to stay the action.  The remaining defendant

22   moves to dismiss for lack of personal jurisdiction.  For the reasons stated below, the motion to

23   dismiss is HELD IN ABEYANCE pending jurisdictional discovery.  The motion to transfer or stay

24   is DENIED, reserving on a final determination until jurisdictional discovery is completed.

25                                         **STATEMENT**

26          Plaintiffs Illumina, Inc., and Illumina Cambridge Ltd. (collectively "Illumina"), supply

27   DNA sequencing equipment.  Illumina Cambridge, a wholly-owned subsidiary of Illumina, Inc.,

28   owns U.S. Patent No. 7,566,537.  Illumina, Inc., is the exclusive licensee of the '537 patent with

     the right to sue to enforce its exclusivity (Compl. ¶¶ 6–7).

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    In 2012, defendant Intelligent Bio-Systems, Inc., and non-party the Trustees of

2    Columbia University in the City of New York sued Illumina in the District of Delaware for

3    infringement of several patents relating to technology called "sequencing by synthesis."  In its

4    answer to the complaint in the Delaware action, Illumina asserted counterclaims against

5    Intelligent Bio-Systems for infringement of the '537 patent.  After Qiagen N.V., a defendant

6    herein, became the ultimate parent of Intelligent Bio-Systems, Illumina added it as a new party

7    in the Delaware action and asserted counterclaims against it.  Illumina's counterclaims against

8    both parties related to Intelligent Bio-Systems's use of a chemical group known as a "protecting

9    group" on a nucleotide during a DNA sequencing process in its MAX-Seq and MINI-20 DNA

10    sequencing equipment, each of which sold only one unit.  Qiagen N.V. moved to dismiss for

11    lack of personal jurisdiction in Delaware, and Illumina voluntarily dismissed all claims against

12    it without prejudice.  Illumina maintained its claims against Intelligent Bio-Systems.

13    In 2013, the Delaware action was stayed pursuant to a joint request pending *inter partes*

14    review of both sides' respective patents, although some fact discovery was allowed to go

15    forward.  In November 2015, Illumina sought discovery from Illumina Bio-Systems regarding

16    the development and marketing of a new DNA sequencing system called the GeneReader NGS

17    System, which had been announced and promoted by Qiagen N.V. and its subsidiaries (several

18    of which are named as defendants herein).  The complaint in Delaware did not assert claims

19    relating to the GeneReader.  Nevertheless, Intelligent Bio-Systems produced certain documents

20    regarding the GeneReader.  Nothing more came of it in the Delaware action.

21    In January 2016, Peer Schatz, the CEO of Qiagen N.V. (and of as each of its

22    subsidiaries) gave a presentation at the J.P. Morgan Healthcare Conference in San Francisco.

23    The schedule identified Schatz as a representative of Qiagen N.V. (Walter Decl., Exhs. B, D,

24    E).  His presentation included technical details of the GeneReader and included the following

25    statement:  "[W]e've created solutions that actually give you results that matter and that will

26    allow therapeutic or scientific decision-making" (*id.*, Exh. C at 5–6).

27    Qiagen N.V. did not itself sell or develop the GeneReader.  Instead, its direct and

28    indirect subsidiaries shared responsibilities (all named as defendants herein) as follows:  Qiagen

2

1  Inc. (USA) sold and marketed it, Qiagen Redwood City developed related software, Intelligent

2  Bio-Systems, Inc., led the technical development, Qiagen GmbH manufactured the reagents,

3  and Qiagen Sciences, LLC, shipped consumables for the product (*id.*, Exh. D).  An Executive

4  Committee made all final decisions "that ha[d] a material and/or global impact on QIAGEN's

5  employees, business and future" (*id.*, Exh. F at 2).  The signature block on the Executive

6  Committee's charter had no individual's name or actual signature, but it identified the document

7  as emanating from the "QIAGEN Chief Executive Officer" without identifying which Qiagen

8  entity is referenced (*id.* at 5).

9        Illumina commenced this action in the Northern District of California in May 2016

10  alleging that the GeneReader infringes the '537 patent and that each defendant's conduct with

11  regard to the product constituted direct or induced infringement of that patent.  Qiagen N.V.

12  moves to dismiss all claims against it for lack of personal jurisdiction, and the remaining

13  defendants move to transfer the action to the District of Delaware or to stay it here pending

14  resolution of claims against Qiagen N.V.  (Defendants do not specify the purpose of any stay,

15  but merely note that the case against Qiagen N.V. could be stayed here while the remaining

16  claims could be transferred to Delaware.)  After Qiagen N.V. moved to dismiss, it allowed

17  Illumina to take limited informal discovery, which consisted of several informal requests for

18  documents and responses to interrogatories.  Qiagen N.V. refused, however, to allow

19  depositions.  This order follows full briefing and oral argument.[1]

20                                      **ANALYSIS**

21        **1.    MOTION TO TRANSFER OR STAY.**

22        Defendants contend that this action should be transferred to the District of Delaware,

23  favoring the forum where Illumina filed its first counterclaims for infringement of the '537

24  against Intelligent Bio-Systems.  Neither side addresses whether the law of the Ninth Circuit or

25  the law of the Federal Circuit controls the question of deference to the jurisdiction of an earlier-

26  filed action.  Indeed, each side cites decisions from both circuits (as well as district court

27  decisions inconsistently applying either circuit's law).  Although there do not appear to be

28

_____

[1]  Illumina filed a motion for a preliminary injunction, scheduled for a hearing on August 25.

United States District Court

For the Northern District of California

1    substantial differences between the law of the Ninth Circuit or the law of the Federal Circuit on

2    this issue, this order notes that "[r]esolution of whether [a] second-filed action should proceed

3    presents a question sufficiently tied to patent law that the question is governed by [Federal

4    Circuit] law." *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir.

5    2013) (citing *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005)).[2]

6         "When two actions that sufficiently overlap are filed in different federal district courts,

7    one for infringement and the other for declaratory relief, the declaratory judgment action, if

8    filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement

9    action." *Ibid.* (citing *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012)).  This

10   deference to the jurisdiction of an earlier-filed action "exists to avoid conflicting decisions and

11   promote judicial efficiency.  But the rule is not absolute; exceptions may be made if justified by

12   considerations of judicial and litigant economy and the just and effective disposition of

13   disputes." *Ibid.* (citations omitted).

14        Our case does not involve a claim for declaratory relief that mirrors the claims pending

15   in the Delaware action or vice versa.  Illumina's claims herein involve a *new* product, developed

16   after Qiagen acquired Intelligent Bio-Systems — the only party in common with the Delaware

17   action — and an entirely new infringement claim, albeit one directed at the same "protecting

18   group" at issue in the Delaware action.  Indeed, Qiagen N.V. denied any relationship to the

19   claims already pending in Delaware when it asserted it could not be subject to personal

20   jurisdiction there.  The remaining Qiagen defendants also do not offer any nexus to the claims

21   pending in Delaware, they simply state they would concede to personal jurisdiction in

22   Delaware.

23        True, our case involves the same patent and the same claim as the Delaware action, but

24   there has been no decision on the merits there.  Such a decision is unlikely, inasmuch as

25   Illumina intends to dismiss its claims there (which involved only two sales, one of each of the

26   products at issue therein), but offered no explanation of why that dismissal has not yet occurred.

27

28        [2] Defendants' motion to transfer is solely based on deference to the "first-filed" action in Delaware. Defendants do *not* argue that convenience warrants a transfer under Section 1404(a) of Title 28 of the United States Code.

United States District Court
For the Northern District of California

1  Additionally, Illumina must have believed the use of the same protecting group in the

2  GeneReader constituted sufficient overlap with the claims pending in Delaware to justify

3  seeking discovery into the GeneReader there.  On the other hand, Illumina would have needed

4  to file a supplemental complaint in order to expand that case to reach the GeneReader device,

5  and a transfer would deny Illumina the traditional plaintiff's choice of forum.  (As stated, the

6  Delaware action involved Illumina's *counterclaims*.)

7        This order holds these circumstances do not require us to defer to the jurisdiction of the

8  earlier-filed Delaware action.  Accordingly, this order will not transfer the action on the basis of

9  the present record.  Nevertheless, jurisdictional discovery may reveal facts that warrant a

10  discretionary transfer, so this order reserves a final determination on the issue until after the

11  personal jurisdiction issue regarding Qiagen N.V. is resolved.

12        **2.   QIAGEN N.V. AND PERSONAL JURISDICTION.**

13        Qiagen N.V., a Dutch parent company of various entities around the world, including all

14  of the other defendants herein, contends it is not subject to personal jurisdiction in California.

15  Both sides agree that Federal Circuit law governs the issue of personal jurisdiction.  *See*

16  *Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1343 (Fed. Cir. 2006).

17  California's long-arm statute permits the exercise of jurisdiction to the extent consistent with

18  due process.  Cal. Code Civ. Proc. § 410.10.  Thus, the inquiry collapses to the Federal Circuit's

19  test for the exercise of specific personal jurisdiction:  "(1) whether the defendant purposefully

20  directed its activities at residents of the forum state, (2) whether the claim arises out of or relates

21  to the defendant's activities with the forum state, and (3) whether assertion of personal

22  jurisdiction is reasonable and fair."  *Celgard, LLC v. SK Innovation, Co.*, 792 F.3d 1373, 1377

23  (Fed. Cir. 2015).  For claims under federal law, a defendant that is not subject to personal

24  jurisdiction based on its contacts in any one state may nevertheless be subject to personal

25  jurisdiction by applying the same test to its contacts with the United States as a whole.  Rule

26  4(k)(2); *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009).[3]

27

28

[3] Illumina does not contend that Qiagen N.V. is subject to general jurisdiction in California.

**United States District Court**
For the Northern District of California

Illumina contends that Qiagen N.V. is subject to personal jurisdiction in California based on (i) C.E.O. Peer Schatz's presentation about the GeneReder at the J.P. Morgan Healthcare Conference on behalf of Qiagen N.V., (ii) Qiagen N.V.'s participation in the Executive Committee, and (iii) Qiagen N.V.'s maintenance of a website accessible in California.  Thus, Illumina alleges that by promoting the GeneReader in California, by controlling the subsidiaries producing it, and by promoting it on the Internet, Qiagen N.V. induced infringement of the '536 patent in California and can be subject to personal jurisdiction here.

Qiagen N.V. responds that Schatz's presentation at the J.P. Morgan conference targeted *investors*, not *customers*, and so cannot be the basis for a claim for infringement.  It further argues that the Executive Committee is not a committee of Qiagen N.V., but rather an independent governing body, and, in any case, the Executive Committee does not control the day-to-day operations of the several Qiagen entities.  Finally, Qiagen N.V. argues that Qiagen Inc., not Qiagen N.V., operates Qiagen.com.  Thus, Qiagen N.V. argues it had no contacts with California that related to the allegations herein.

Although Qiagen N.V.'s participation in the Executive Committee and Schatz's presentation on behalf of Qiagen N.V. at the J.P. Morgan conference occupied center stage in the portion of Illumina's complaint describing Qiagen N.V.'s conduct, Qiagen N.V. addressed those issues only briefly in its initial motion.  Instead, it waited for its reply brief to introduce evidence that the Executive Committee was an independent entity and that Schatz's presentation at the J.P. Morgan conference narrowly targeted *investors* rather than *customers*.

The day after Qiagen N.V. filed its reply, Illumina filed an objection identifying numerous factual issues raised by Qiagen N.V.'s reply evidence that could not be resolved through the limited discovery it had already conducted.  For example, a page on Qiagen.com stated "QIAGEN's Managing Board, which has two members, is accountable for the actions and decisions of the Executive Committee," but it is unclear which Qiagen entity is referenced or how that oversight is carried out in practice (Compl., Exh. 49).  Additionally, in the same reply declaration stating that the J.P. Morgan conference focused on investors, Qiagen N.V.'s

United States District Court

For the Northern District of California

1  declarant stated that hundreds of healthcare companies also attended that conference (Gilardi

2  Reply Decl. ¶ 4).  Moreover, Schatz's speech referred to the GeneReader's ability to "give you

3  results" regarding therapeutic decision-making, suggesting he intended to promote the product

4  to healthcare providers that might make such decisions as well as investors.

5       Illumina sought to take depositions of the declarants before the hearing on this motion.

6  Qiagen N.V. offered to arrange a meet and confer to discuss requests for further discovery,

7  although it had made clear throughout the earlier discovery that it did not believe depositions

8  would be proportionate or necessary.  Illumina never responded to Qiagen N.V.'s offer.

9       Qiagen N.V. contends that its reply declarations were not improper, inasmuch as

10  Illumina's theory that Qiagen N.V. controlled the Executive Committee or that the J.P. Morgan

11  conference targeted customers did not expressly appear in the complaint.  Additionally, the

12  parties stipulated that Qiagen N.V. could submit additional declarations in its reply, although

13  the stipulation offered no explanation of the scope of those declarations.

14       Whether or not Qiagen N.V.'s reply evidence is considered, there are too many factual

15  disputes to resolve without more thorough jurisdictional discovery, a problem that has been

16  compounded by Qiagen N.V.'s refusal to allow Illumina to take any depositions.  Qiagen N.V.'s

17  declarations do not resolve the enigmatic role of the Executive Committee, nor do they address

18  Schatz's specific statements regarding the therapeutic advantages the GeneReader would

19  provide *to members of the audience* at the J.P. Morgan conference.

20       Additionally, pursuant to Rule 4(k)(2), for a claim arising under federal law, "serving a

21  summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

22  (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

23  (B) exercising jurisdiction is consistent with the United States Constitution and laws."  The

24  Federal Circuit has held that courts may apply Rule 4(k)(2) without analyzing jurisdiction for

25  each of the fifty states if "the defendant contends [it] cannot be sued in the forum state and

26  refuses to identify any other where suit is possible . . . ."  *Touchcom*, 574 F.3d at 1415.

27       Neither side addressed Rule 4(k)(2) in the briefs on this motion.  Qiagen N.V. was

28  ordered to identify a state in which it could be sued for the claims herein, but it stated "the

1  present action could not properly have been brought against QIAGEN N.V. in any jurisdiction

2  in the United States" (Dkt. No. 59).  Nevertheless, Qiagen N.V.'s response to one of Illumina's

3  interrogatories indicated that "QIAGEN" — without specifying which entity — attended four

4  conferences throughout the United States, including the Annual Meeting of the American

5  Society of Clinical Oncology (which appears likely to have targeted healthcare providers, rather

6  than investors).  Illumina's supplemental jurisdictional discovery should also, therefore, address

7  whether Qiagen N.V.'s contacts with the nation as a whole could establish personal jurisdiction

8  for these claims.

9                                          **CONCLUSION**

10          For the reasons stated above, defendants' motion to transfer or stay is **DENIED**, reserving

11  on a final determination on this issue until after jurisdictional discovery has concluded.  Qiagen

12  N.V.'s motion to dismiss is **HELD IN ABEYANCE** pending supplemental jurisdictional discovery.

13          Illumina shall be entitled to two full-day and two half-day depositions, twelve requests

14  for production of documents, and twelve interrogatories.  This discovery is *in addition to* the

15  informal discovery that Qiagen N.V. has already volunteered.  Stonewalling will lead to adverse

16  inferences.  Overbroad discovery requests will lead to striking without replacement.  Counsel

17  shall cooperate to expedite discovery.  All jurisdictional discovery shall be completed by

18  **AUGUST 25**.  Illumina shall supplement the record by **SEPTEMBER 15**, including a brief up to

19  **TWENTY PAGES**, and Qiagen N.V. may likewise respond by **SEPTEMBER 29**.  A further hearing

20  is hereby scheduled for **OCTOBER 13 AT 8:00 A.M.**

21          Meanwhile, general discovery shall proceed as to all other parties, and the briefing and

22  hearing on Qiagen N.V.'s motion for a preliminary injunction shall proceed as scheduled.

23

24          **IT IS SO ORDERED.**

25

26  Dated:  July 18, 2016.

27                                                           WILLIAM ALSUP
                                                             UNITED STATES DISTRICT JUDGE

28

United States District Court
For the Northern District of California