

JOHN L. COOPER
jcooper@fbm.com
D 415.954.4410

September 12, 2016

The Honorable William H. Alsup
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, 19th Floor
San Francisco CA 94102-3490

      Re:    *Illumina, Inc. v. QIAGEN N.V.*, No. 3:16-cv-2788-WHA (N.D. Cal.)

Dear Judge Alsup:

    The QIAGEN defendants intend to seek expedited Federal Circuit review of the Court's September 9, 2016 Preliminary Injunction Order (Dkt.114) (the "Injunction Order"), but first respectfully submit this précis to request leave to file a Motion (i) to clarify that the Order does not bar actions that cannot infringe the '537 patent, and (ii) to stay the Injunction Order in whole or in part to prevent unnecessary injury to QIAGEN and others while QIAGEN seeks expedited appellate review of the Court's rulings.

    *First*, QIAGEN requests that the Injunction Order be clarified so that it is clear that it does not bar the manufacture of the GeneReader in the United States *for sales to customers **outside the U.S.*** QIAGEN makes the GeneReader instrument (via a contract manufacturer) only in Illinois, for both its US *and* foreign customers. Making the GeneReader in the U.S. and exporting it for foreign use cannot infringe the '537 patent, as its claims are *method* claims that only can be infringed via **the use** of the GeneReader, not the manufacture of it. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993)("[A] method or process claim is directly infringed only when the process is performed."). Because *foreign* use of the GeneReader cannot infringe, the manufacture of a device in the U.S. for foreign use cannot contribute to or induce

The Honorable William H. Alsup
September 12, 2016
Page 2



infringement. *Standard Havens Prods, Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991). It is settled law that 35 U.S.C. § 271(f), which prohibits the export of components of a patented invention to be combined in an infringing manner outside the U.S., "does not apply to method patents," and therefore "does not encompass devices that may be used to practice a patented method." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1365-66 (Fed. Cir. 2009).

QIAGEN's *manufacture* of GeneReader in the U.S. for sale and use abroad cannot infringe the '537 Patent. Injunctions do not ban non-infringing conduct unless necessary <u>to prevent infringement in the U.S.</u>, thus QIAGEN asks that the Court clarify or allow it to move to clarify the Injunction Order to make clear that QIAGEN may make the GeneReader for foreign sales only. *See, e.g., Spine Solutions v. Medtronic Sofamor Danek USA*, 620 F.3d 1305, 1320 (Fed. Cir. 2010) (vacating portion of injunction barring sales outside U.S.). **In the alternative**, QIAGEN asks that the Court *stay* the Injunction Order as it relates to manufacture of product in the U.S. for sale abroad, for the foregoing reasons, and to avoid unnecessary prejudice to QIAGEN, its foreign customers, and its contract manufacturer and employees. The QIAGEN defendants wish to file their notice of appeal as soon as possible (and to seek emergency review by the Federal Circuit). To avoid any argument that QIAGEN is not acting quickly or that this requested clarification is beyond the "modification" of Rule 62(c), QIAGEN respectfully requests that the Court address this issue through the précis letter submissions only, or with an abbreviated motion practice that allows the issue to be resolved within 7 calendar days of this submission.

*Second*, QIAGEN requests that it be granted leave to file a motion to stay the Injunction Order as a whole while its seeks expedited review by the Federal Circuit. The Injunction Order was based on

33250\5598739.1

The Honorable William H. Alsup
September 12, 2016
Page 3



novel and difficult issues of irreparable harm and validity. The Injunction Order did not address QIAGEN's argument that the alleged harm was easy to quantify. The Injunction Order was based on a claim construction regarding "nucleoside" contrary to what Illumina set forth both in its motion for preliminary injunction [Dkt. 14], and as QIAGEN defined the term in the '537 patent. (*Compare* Injunction Order at 14 *and* '537 patent, Col. 4, ll. 48-63.) Illumina also provided no rebuttal to QIAGEN's "'2 prime" enablement argument. Finally, in concluding non-obviousness on the ground that a skilled artisan would not have believed azidomethyl could be cleaved with "high-efficiency removal," Injunction Order at 11, the Injunction Order did not address either the Federal Circuit's observation that highly efficient cleaving of the protecting group was "of no moment" to the '537 patent , *Intelligent Bio-Systems v. Illumina Cambridge*, 821 F.3d 1359, 1367 (Fed. Cir. 2016), or QIAGEN's unrebutted expert testimony that a skilled artisan would combine the prior art references for use in a method of *labeling* that did not require high-efficiency cleaving.

**At a minimum**, QIAGEN asks for leave to move to stay the Injunction Order <u>solely as it relates to its current U.S. customers</u>. (Dkt. 75, ¶ 7.) Illumina's alleged harm is easy to quantify, and it is very easy to quantify alleged lost profits from the continued sale of reagents to QIAGEN's current customers prior to trial. Barring QIAGEN from selling additional GeneReaders in the U.S. eliminates any chance for "irreparable" harm. This stay would relieve the short-term interference with QIAGEN's current U.S. customers' work on cancer research.

Respectfully submitted,

John L. Cooper

JLC:jla

33250\5598739.1