| | |
|---|---|
| John L. Cooper (State Bar No. 050324)<br>  jcooper@fbm.com<br>Jeffrey M. Fisher (State Bar No. 155284)<br>  jfisher@fbm.com<br>Winston Liaw (State Bar No. 273899)<br>  wliaw@fbm.com<br>Farella Braun + Martel LLP<br>235 Montgomery Street, 17th Floor<br>San Francisco, CA  94104<br>Telephone:  (415) 954-4400<br>Facsimile:  (415) 954-4480<br><br>*Attorneys for Defendants QIAGEN N.V., QIAGEN GmbH, QIAGEN Gaithersburg, Inc., QIAGEN Sciences, LLC, QIAGEN Inc. (USA),QIAGEN Redwood City, Inc., and Intelligent Bio-Systems, Inc.* | Robert R. Baron, Jr. (PA SBN 67084)<br>(appearance *pro hac vice*)<br>  baron@ballardspahr.com<br>Marc S. Segal (PA SBN 84474)<br>(appearance *pro hac vice*)<br>  segalm@ballardspahr.com<br>Tyler R. Marandola (PA SBN 313585)<br>(appearance *pro hac vice*)<br>  marandolat@ballardspahr.com<br>BALLARD SPAHR LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103-7599<br>Telephone: (215) 665-8500<br>Facsimile:   (215) 864-8999<br><br>*Attorneys for Defendants QIAGEN N.V., QIAGEN GmbH, QIAGEN Gaithersburg, Inc., QIAGEN Sciences, LLC, QIAGEN Inc. (USA), QIAGEN Redwood City, Inc., and Intelligent Bio-Systems, Inc.* |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ILLUMINA, INC., and ILLUMINA CAMBRIDGE LTD.,<br><br>                Plaintiffs,<br><br>  v.<br><br>QIAGEN, N.V., QIAGEN GmbH, QIAGEN GAITHERSBURG, INC., QIAGEN SCIENCES, LLC, QIAGEN INC. (USA), QIAGEN REDWOOD CITY, INC., and INTELLIGENT BIO-SYSTEMS, INC.,<br><br>                Defendants. | Case No. 3:16-cv-02788-WHA<br><br>**NOTICE OF MOTION TO STAY INJUNCTION PENDING APPEAL OR, ALTERNATIVELY, PENDING DECISION BY THE FEDERAL CIRCUIT ON STAY PENDING APPEAL**<br><br>**FILED UNDER SEAL**<br>**CONFIDENTIAL–ATTORNEYS' EYES ONLY**<br><br>Judge: Hon. William H. Alsup<br>Date:  September 22, 2016<br>Time:  8:00 a.m. |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that defendants QIAGEN, N.V., QIAGEN GmbH, QIAGEN Gaithersburg, Inc., QIAGEN Sciences, LLC, QIAGEN Inc. (USA), QIAGEN Redwood City, Inc., and Intelligent Bio-Systems, Inc. (collectively "QIAGEN") move the Court, pursuant to Federal Rule of Civil Procedure 62(c), to modify and stay its Order pending appeal, or, alternatively, pending a decision by the United States Court of Appeals for the Federal Circuit on an emergency motion for stay pending appeal, which QIAGEN will file if this Court denies this Motion. QIAGEN's Motion is based on this notice of motion and supporting memorandum, the evidence cited therein, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

**RELIEF REQUESTED**

QIAGEN respectfully seeks an order modifying and staying the Court's Order enjoining QIAGEN from making, using, or selling GeneReader in the U.S. pending appeal, or, in the alternative, pending a decision by the United States Court of Appeals for the Federal Circuit on an emergency motion for stay pending appeal.

Dated: September 15, 2016

Respectfully submitted,

FARELLA BRAUN + MARTEL LLP

By: */s/ John L. Cooper*
John L. Cooper
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone:(415) 954-4400
Facsimile: (415) 954-4480
jcooper@fbm.com

Robert R. Baron, Jr.
  (appearance *pro hac vice*)
Marc S. Segal
  (appearance *pro hac vice*)
Tyler R. Marandola
  (appearance *pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor

1 | Philadelphia, PA 19103-7599
2 | Telephone:(215) 665-8500
  | Facsimile: (215) 864-8999
3 | baron@ballardspahr.com
  | segalm@ballardspahr.com
4 | *Attorneys for Defendants*
5 | *QIAGEN, N.V.*
  | *QIAGEN GmbH*
6 | *QIAGEN Gaithersburg, Inc.*
  | *QIAGEN Sciences, LLC*
7 | *QIAGEN Inc. (USA)*
  | *QIAGEN Redwood City, Inc.*
  | *Intelligent Bio-Systems, Inc.*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTON ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.  The Court Should Modify The Injunction Order to Permit QIAGEN to Manufacture GeneReader in the United States for Sale and Use Outside the United States. ...................3

II. The Court Should Stay The Injunction Order Pending Appeal. ..........................................4

   A.  QIAGEN's Appeal Raises Novel Legal Questions That Create a Substantial Likelihood that the Grant of a Preliminary Injunction in This Case Will Be Reversed. ...................................................................................................................5

   B.  The Equities Tip Sharply In Favor Of Granting QIAGEN's Requested Relief. .........................................................................................................................9

III. Alternatively, the Court Should at Least Stay the Preliminary Injunction While the Federal Circuit Considers QIAGEN's Emergency Motion for a Stay Pending Appeal. ...................................................................................................................................10

CONCLUSION ....................................................................................................................11

i

Memorandum in Support of Motion to Stay Injunction Pending Appeal or, Alternatively Pending Decision by the Federal Circuit on Stay Pending Appeal: Case No. 3:16-cv-02788-WHA

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbot Labs. v. Andrx Pharm.*,
    452 F.3d 1331 (Fed. Cir. 2006) ................................................................................................ 9

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
    132 F.3d 701 (Fed. Cir. 1997) .................................................................................................. 6

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
    576 F.3d 1348 (Fed. Cir. 2009) ................................................................................................ 3

*Conceptus, Inc. v. Hologic, Inc.*,
    No. 09-2280, 2009 WL 3740713 (N.D. Cal. Nov. 6, 2009) (Alsup, J.) .................................... 9

*Costco Wholesale Corp. v. Hoen*,
    2006 WL 2645183 (W.D. Wash. Sept. 14, 2006) .................................................................... 5

*County of Sonoma v. Fed. Housing Fin. Agency*,
    2011 WL 4536894 (N.D. Cal. Sept. 30, 2011) ......................................................................... 5

*Davila v. Cty of San Joaquin*,
    2008 WL 4426669 (E.D. Cal. Sept. 26, 2008) ......................................................................... 5

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum*,
    835 F.2d 277 (Fed. Cir. 1987) .................................................................................................. 4

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) ................................................................................................................. 4

*i4i Lts P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ................................................................................................ 10

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*,
    361 F.3d 1355 (Fed. Cir. 2004) ................................................................................................ 4

*Intelligent Bio-Systems v. Illumina Cambridge*,
    821 F.3d 1359 (Fed. Cir. 2016) ................................................................................................ 8

*Jack Gutman, Inc. v. Kopykake Enters., Inc.*,
    302 F3d 1352 (Fed. Cir. 2002) ................................................................................................. 6

*Johns Hopkins Univ. v. CellPro*,
    152 F.3d 1342 (Fed. Cir. 1998) ................................................................................................ 4

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) ...................................................................................................... 3

ii

Memorandum in Support of Motion to Stay Injunction Pending Appeal or, Alternatively Pending Decision by the Federal Circuit on Stay Pending Appeal: Case No. 3:16-cv-02788-WHA

*Silvester v. Harris*,
  2014 WL 6611592 (E.D. Cal. Nov. 20, 2014) ........................................................................ 5, 7

*Spine Solutions v. Medtronic Sofamor Danek USA*,
  620 F.3d 1305 (Fed. Cir. 2010) ................................................................................................ 4

*Standard Havens Prods, Inc. v. Gencor Indus., Inc.*,
  953 F.2d 1360 (Fed. Cir. 1991) ................................................................................................ 3

*Standard Havens Prods. v. Gencor Indus.*,
  897 F.2d 511 (Fed. Cir. 1990) .............................................................................................. 4, 9

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*,
  988 F.2d 1165 (Fed. Cir. 1993) ................................................................................................ 6

**STATUTES**

35 U.S.C. § 112 ............................................................................................................................ 2, 7

35 U.S.C. § 271 ................................................................................................................................ 3

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 62 ............................................................................................. 2, 3

iii

Memorandum in Support of Motion to Stay Injunction Pending Appeal or, Alternatively Pending Decision by the Federal Circuit on Stay Pending Appeal: Case No. 3:16-cv-02788-WHA

# INTRODUCTION

The Court's September 9, 2016 Order Granting Preliminary Injunction [Dkt. No. 114] (the "Injunction Order") enjoins QIAGEN "from making, using, offering to sell, or selling within the United States, or importing into the United States, or marketing, promoting, or distributing the QIAGEN GeneReader NGS System[.]" Injunction Order, at 18-19. QIAGEN requests that the Court modify or stay the Injunction Order in whole or in part for several reasons. Although the Court's formulation of "making, using, offering to sell, or selling" is familiar as to patents covering machines, articles of manufacture, and compositions, the patent at issue in this case— Illumina's U.S. Patent No. 7,566,537 (the "'537 Patent")—is a method patent. Thus, QIAGEN's GeneReader Next Generation Sequencing ("NGS") instrument is not itself infringing, nor is "making" GeneReader an act of infringement; it is only when one *uses* GeneReader with one of QIAGEN's sequencing kits to sequence a DNA sample that Illumina alleges infringement of the '537 method patent. Based on this distinction, QIAGEN requests that the Court modify (or in the alternative stay)[1] the portion of the Injunction Order addressed to "making" GeneReader in the United States so that QIAGEN may continue to manufacture the GeneReader sequencing instrument in the U.S., **<u>solely for sales to customers outside the U.S.</u>**

QIAGEN also requests that the Injunction Order be stayed in its entirety because QIAGEN's appeal of the Injunction Order presents significant questions of law to be considered by the United States Court of Appeals for the Federal Circuit, QIAGEN has strong arguments for appeal, and the equities tip sharply in QIAGEN's favor. The following arguments are not offered to re-argue the Injunction Motion, but, rather, to address the elements of a stay request, including whether QIAGEN is likely to succeed on the merits of an appeal. *First*, the Court's finding that the "nucleoside" limitation in the '537 Patent is enabled, and its finding that the "nucleoside" limitation does not exist in claim 4, involved difficult questions of law, including a claim

---

[1] QIAGEN understood the Court's order granting leave to file this motion as including QIAGEN's request to modify the Preliminary Injunction Order regarding the manufacture of GeneReaders in the United States. (Dkt. No. 116; Dkt. No. 115 at 1.) If the Court intended to only grant QIAGEN leave to seek a stay, QIAGEN requests that the Court confirm this so QIAGEN can proceed with its notice of appeal, and issue a stay as to the manufacture of GeneReader in the United States.

construction that QIAGEN submits is at odds with both 35 U.S.C. § 112(d) and how Illumina itself construed nucleoside in both its motion and in the '537 patent.  ***Second***, the Court rejected QIAGEN's "azido" and "2'" enablement arguments, despite QIAGEN having presented the only evidence—expert testimony from a person of skill in the art—that the claims were not enabled. ***Third***, the Court found that Greene & Wuts taught away from "high-efficiency removal of the 3′-OH protecting group," but in so finding did not address QIAGEN's arguments regarding a "method of labeling" motivation in the prior art, which QIAGEN argued (and the Federal Circuit recognized), would ***not*** require high cleaving efficiency.  The Court likewise did not address QIAGEN's argument that a person of ordinary skill in the art would have modified or optimized the cleavage conditions of Greene & Wuts to work with Ju's or Tsien's methods—an issue the Federal Circuit did not address for procedural reasons.  ***Fourth***, and finally, the Court did not address the undisputed evidence that any harm Illumina might suffer before trial in this case would be quantifiable based on the number of GeneReaders QIAGEN expects to sell in the U.S. through 2017, and the parties' knowledge of the average sales prices for sequencing instruments and of the quantities of consumable sequencing reagents customers buy.  Such quantifiable harm is not, as a matter of law, "irreparable."

And even if the Court does not stay the entirety of its Order, QIAGEN requests that the Court stay the Injunction Order as it relates to QIAGEN's current U.S. customers and partners, to preserve the status quo without threat of further harm, and because any alleged damages to Illumina from such a stay will be minimal and easy to quantify.

Finally, any doubt regarding the propriety of the Injunction Order should be resolved in favor of staying the Injunction Order long enough for the Federal Circuit to rule on an emergency motion to stay the injunction pending appeal, which QIAGEN will file immediately if the Court denies this Motion to stay.

## ARGUMENT

Federal Rule of Civil Procedure 62 authorizes the Court to suspend an order granting a preliminary injunction pending appeal:  "While an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend . . . an injunction[.]"  FED. R. CIV. P.

2

62(c). QIAGEN requests that the Court modify or stay the Injunction Order in whole or in part pending QIAGEN's appeal to the Federal Circuit.

## I. THE COURT SHOULD MODIFY THE INJUNCTION ORDER TO PERMIT QIAGEN TO MANUFACTURE GENEREADER IN THE UNITED STATES FOR SALE AND USE OUTSIDE THE UNITED STATES.

The Injunction Order enjoining QIAGEN from "making" GeneReader in the U.S. solely for sale and use outside the U.S. encompasses conduct that cannot infringe a method patent and is not necessary to prevent infringement of the '537 patent. QIAGEN makes the GeneReader instrument (via a contract manufacturer) in Illinois, for both its U.S. and foreign customers. Declaration of Andreas Schaefer ("Schaefer Decl."), at ¶ 3. Making the GeneReader in the U.S. and exporting it for foreign use cannot infringe the '537 Patent, as the Patent's claims are *method* claims that only can be infringed via *the use* of GeneReader, not the existence or manufacture of it. *See*, *e.g.*, Complaint [Dkt. No. 1] at ¶ 55 (alleging "customers will use the GeneReader to infringe [the '537 Patent] *by performing the claimed method* of labeling a nucleic acid molecule" (emphasis added); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("a method or process claim is directly infringed only when the process is performed"); Schaefer Decl. ¶ 6 (stating that manufacture of GeneReader does not involve performing any DNA sequencing).[2] Because foreign use of GeneReader cannot infringe—which the Injunction Order recognizes—the manufacture of a device in the U.S. for foreign use cannot contribute to or induce infringement. *See Standard Havens Prods, Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991). Finally, it is settled law that 35 U.S.C. § 271(f), which prohibits the export of components of a patented invention to be combined in an infringing manner outside the U.S., "does not apply to method patents," and therefore "does not encompass devices that may be used to practice a patented method." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1365-66 (Fed. Cir. 2009).

Here, QIAGEN's manufacture of GeneReader in the U.S. for sale and use abroad cannot

---

[2] For customers located outside the U.S., QIAGEN's contract manufacturer will ship the GeneReader to a QIAGEN warehouse in Roermond, The Netherlands, and from there the GeneReader will be delivered to QIAGEN's non-U.S. customers. Schaefer Decl. at ¶ 7.

infringe the '537 Patent. QIAGEN therefore seeks clarification or modification of the Injunction Order so that it extends only to conduct reachable under U.S. law. *See Spine Solutions v. Medtronic Sofamor Danek USA*, 620 F.3d 1305, 1320 (Fed. Cir. 2010) (vacating portion of injunction barring sales outside U.S.); *Johns Hopkins Univ. v. CellPro*, 152 F.3d 1342, 1366-67 (Fed. Cir. 1998) (reversing injunction requiring destruction of infringing products sold abroad). Alternatively, based on the strength of this argument on appeal, QIAGEN asks the Court to stay this portion of the Injunction Order.

## II. THE COURT SHOULD STAY THE INJUNCTION ORDER PENDING APPEAL.

The Court should stay the Injunction Order pending appeal to allow the parties and the Federal Circuit to address the substantial issues for appeal in this case. The factors to be considered for a stay pending appeal are: (1) whether the movant is likely to succeed on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum*, 835 F.2d 277, 278 (Fed. Cir. 1987).[3] "When harm to applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.'" *Standard Havens Prods.*, 897 F.2d, at 513 (quoting *Hilton*, 481 U.S. 770). Rather, a stay is appropriate where the movant establishes a "'strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a **substantial case** on the merits,' **provided** the other factors militate in the movant's favor." *Id.* (quoting *Hilton*, 481 U.S. 770) (emphasis in original). "Thus, the four stay factors can effectively merge," such that the Court evaluates the "movant's chances for success on appeal and weighs the equities as they affect the parties and the public." *Id.* (quoting *E.I. DuPont de Nemours & Co.*, 835 F.2d 277).

Importantly, "the moving party need not persuade the court that it is *likely* to be reversed on appeal." *Costco Wholesale Corp. v. Hoen*, 2006 WL 2645183, at *2 (W.D. Wash. Sept. 14,

---

[3] Federal Circuit law applies to "a district court's decision granting, denying, or modifying an injunction, in a patent case." *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1359 (Fed. Cir. 2004).

4

2006) (emphasis added).  If serious legal questions exist on the appeal, the Court may grant a stay even if it "believes [its] ruling was correct." *Davila v. Cty of San Joaquin*, 2008 WL 4426669, at *2 (E.D. Cal. Sept. 26, 2008).  "Serious questions are substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Silvester v. Harris*, No. 11-cv-2137, 2014 WL 6611592, *7 (E.D. Cal. Nov. 20, 2014) (quoting *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991)).  Finally, should the Court have any doubt regarding whether to stay a preliminary injunction, the Court may also stay enforcement of the injunction only long enough for the Federal Circuit to rule on a motion to stay.  *See County of Sonoma v. Fed. Housing Fin. Agency*, 2011 WL4536894, at *2 (N.D. Cal. Sept. 30, 2011).

    **A.**     **QIAGEN's Appeal Raises Novel Legal Questions That Create a Substantial Likelihood that the Grant of a Preliminary Injunction in This Case Will Be Reversed.**

Understanding that this Court has considered QIAGEN's arguments as to why a preliminary injunction should not be granted, QIAGEN will not belabor those arguments here, and instead respectfully incorporates them by reference.  *See* Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction [Dkt. No. 74] ("Opposition"); Surreply in Opposition to Plaintiffs' Motion for Preliminary Injunction [Dkt. No. 99-2] ("Surreply"); Letter from R. Baron, dated Aug. 25, 2016 [Dkt. No. 108].  Briefly, the merits of QIAGEN's arguments justify a stay for several reasons.

*First*, QIAGEN has a strong argument that the '537 Patent claims are invalid.  The Court's rulings on enablement and claim construction involved difficult questions of law that raise substantial issues for appeal.  With respect to QIAGEN's argument that the "nucleoside" alternative in Illumina's claims is inoperative, the Court concluded that a nucleoside should be read to include "nucleoside triphosphates (or some other nucleosides combined with phosphate groups)."  Order at 13-14.  But, as the Court recognized (Order at 13), this construction—while saving Illumina's patent—conflicts with Illumina's own definition of nucleoside as "missing phosphate moieties."  Injunction Order at 13; '537 patent, col. 4, l. 59-60.  Moreover, Illumina did not request this construction, and both parties' experts agreed that nucleosides do not include phosphate moieties.  Metzker Decl., Dkt. No. 76, at ¶ 49; Burgess Decl., Dkt. No. 15, at ¶ 46.  The

5

'537 patent's specification is clear that the *only* relevant difference between nucleotides and nucleosides is that one has phosphate groups and the other does not. '537 patent, col. 4, l. 59-60 (defining nucleosides as "structurally similar to nucleotides, but . . . missing phosphate moieties"). Thus, reading "nucleoside" to encompass nucleosides with phosphate moieties strips the word "nucleoside" of any meaning with respect to the claims of the '537 patent. *See Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) (rejecting claim construction that would "read an express limitation out of the claims").  In addition, because Illumina has chosen to define nucleoside specifically, it may not point to extrinsic evidence—here patent applications by others—to achieve a more favorable construction for litigation. *See Jack Gutman, Inc. v. Kopykake Enters., Inc.*, 302 F3d 1352, 1361-62 (Fed. Cir. 2002) ("Our precedent supports the proposition that grounding a decision on a preliminary injunction on a claim construction at odds with an unambiguous definition in the intrinsic evidence constitutes an abuse of discretion."); *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701 (Fed. Cir. 1997) ("Once a dispute over claim construction arises, 'experts' should also not be heard to inject a new meaning into terms that is inconsistent with what the inventor set forth in his or her patent and communicated, first to the patent examiner and ultimately to the public."); *Texas Instruments*, 988 F.2d at 1171 (noting that "[c]ourts can neither broaden nor narrow claims to give the patentee something different than what he has set forth" (quoting *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 396 (Ct. Cl. 1967))).

In addition, the Court's construction of claim 4 as eliminating the "nucleoside" embodiment likewise raises substantial questions for appeal. As an initial matter, Illumina never argued for this construction in its papers, despite QIAGEN having applied its nucleoside argument to claim 4 in its opposition brief. (Dkt. No. 74, at 15.) Rather, Illumina waited until oral argument to raise this construction. The Court's construction provides a novel and challenging issue on appeal. Specifically, the Court's construction of claim 4 conflicts with 35 U.S.C. § 112(d), which explicitly provides that a dependent claim must be construed to incorporate all the limitations of the independent claim to which it refers. *See* 35 U.S.C. § 112(d). Such a dispute justifies a stay, even though the Court adopted a different construction than that offered by QIAGEN. *See*

6

*Silvester*, 2014 WL 6611592 at *7 (difficult or novel legal issues justify stay).

**Second,** QIAGEN's argument that the 2′ limitation in Illumina's claims—requiring a blocking group at the 2′ position to prevent incorporation of nucleotides at the 3′—is not enabled raises similar issues. Notably, however, Illumina never countered QIAGEN's 2′ argument in its reply brief. Thus, QIAGEN was the only party to submit either evidence or argument that the 2′ limitation in the claims is not enabled. And, neither Illumina nor the Court addressed QIAGEN's expert's unrebutted testimony that the 2′ limitation is not enabled because incorporation of a protecting group at that position would require an RNA polymerase, not DNA polymerase, and no such RNA polymerase is disclosed in the '537 patent. Metzker Decl. ¶ 103. Neither did Illumina challenge QIAGEN's expert evidence that a skilled artisan would have needed to engage in undue experimentation to identify azido groups within the scope of the claims that would work in the claimed method. Metzker Decl., at ¶¶ 97-100. Although the Court asserted that general and vague statements regarding inoperability are insufficient to support a lack of enablement, QIAGEN put forth undisputed expert testimony that a person of ordinary skill in the art would have needed more than routine experimentation to practice the full scope of the claimed invention, and supported such testimony by citing to two references. *See* Metzker Decl. ¶¶ 100, 102-05; Dkt. No. 92.

**Third,** as to QIAGEN's obviousness combination—Ju or Tsien with Greene & Wuts—the Court did not address certain of QIAGEN's arguments for why a person of skill in the art would have combined those references. Specifically, the Order appeared to assume that a skilled artisan, in order to be motivated to combine the references, would have had to believe that azidomethyl would cleave with high efficiency. In doing so, the Court appears to have overlooked QIAGEN's argument that a skilled person would be motivated to combine the references for other reasons, including a method of labeling, which does not require high cleaving efficiency at all. *Intelligent Bio-Systems v. Illumina Cambridge*, 821 F.3d 1359, 1367 (Fed. Cir. 2016) (holding that high cleaving efficiency was of "no moment" to the '537 patent because "removal is simply not required by the claim of the '537 patent"). The Court also did not address QIAGEN's argument that one of ordinary skill in the art would not have been deterred by the cleaving conditions in

7

Greene & Wuts, because he or she knew at the time how to modify or optimize the cleavage conditions of Greene & Wuts for use with Ju's and Tsien's methods.[4]  Metzker Decl., at ¶¶ 83-87.  Rather, a person of skill in the art would have been attracted to azidomethyl as disclosed in Greene & Wuts because it met the structural requirements for a protecting group set forth in Ju and Tsien, namely, it is a small ether group that can be incorporated into a DNA strand.

*Fourth,* QIAGEN also respectfully submits that the Court erred in finding that Illumina established a substantial risk of *irreparable* harm in this case.  As QIAGEN previously argued, Illumina's motion does not provide *evidence* of harm to Illumina as a result of QIAGEN introducing the GeneReader product in November 2015, as Illumina's senior vice president himself repeatedly acknowledged.  See Opposition [Dkt. No. 74] at 20-23.  Moreover, in finding that Illumina will suffer irreparable harm if the sale of GeneReader is not enjoined, the Court did not address QIAGEN's arguments that Illumina's alleged harms are easily quantifiable, and could be compensated through money damages.  See generally Injunction Order [Dkt. No. 114] at 16-18.  The undisputed evidence is that both Illumina and QIAGEN track the average sales price of their respective sequencing instruments, and that Illumina has projections of the revenue it will receive from customers buying consumable reagents for its sequencers.  See Opposition [Dkt. No. 74] at 24.  Illumina's quantifiable damages are not "irreparable" injury as a matter of law.  *See*, *e.g.*, *Abbot Labs. v. Andrx Pharm.*, 452 F.3d 1331, 1347-48 (Fed. Cir. 2006) (lost sales can be compensated through money damages, and do not require a preliminary injunction); *Conceptus, Inc. v. Hologic, Inc.*, No. 09-2280, 2009 WL 3740713, at *7 (N.D. Cal. Nov. 6, 2009) (Alsup, J.) (finding no irreparable injury because "it will be reasonable and practical to estimate the extent of damages, given the track record over the last seven years").

---

[4] In a footnote, the Court stated that the Federal Circuit's opinion in *Intelligent Bio-Systems* supported the conclusion that a person of skill reading Greene & Wuts would not have expected azidomethyl to cleave quantitatively.  Injunction Order at 11 n.2.  The opinion does not bear this reading.  The Federal Circuit did not read Greene & Wuts as indicating a low cleaving efficiency for azidomethyl as a general matter, but merely that cleaving efficiency will generally be better when using a phenol than an aliphatic alcohol (like DNA).  And in reaching even that modest conclusion, the Federal Circuit affirmed the procedural decision of the P.T.A.B. to exclude (and therefore declined to consider) QIAGEN's evidence and argument—presented here—that one would not be deterred by the cleaving conditions in Greene & Wuts, and would have been motivated to combine the references for use in a method of labeling.

8

Memorandum in Support of Motion to Stay Injunction Pending Appeal or, Alternatively Pending Decision by the Federal Circuit on Stay Pending Appeal: Case No. 3:16-cv-02788

Because of the complexity of the legal and factual issues raised by the Court's grant of a preliminary injunction in this case, and because QIAGEN has a strong likelihood of success on appeal, the Court should grant a stay of the Injunction Order during QIAGEN's appeal.

### B.   The Equities Tip Sharply In Favor Of Granting QIAGEN's Requested Relief.

QIAGEN has raised substantial legal questions for its appeal of the Court's grant of a preliminary injunction, and, thus, requests a stay.  *See, e.g.*, *Standard Havens Prods.*, 897 F.2d at 513 (a stay is appropriate where the movant establishes a "strong likelihood of success on appeal").  Setting aside the complex legal issues and merits of QIAGEN's appeal, the equities of this case favor granting a stay.

First, as to the portion of the Injunction Order that enjoins "making" GeneReader in the U.S., that prohibition not only prevents QIAGEN from competing in regions of the world where U.S. law has no reach, ▌   ▌   Schaefer Decl. ¶ 5.  ▌

▌

▌   Schaefer Decl. ¶ 5.  This potential prejudice to QIAGEN and to QIAGEN's foreign customers that are not subject to the Injunction Order, shifts the equities sharply in QIAGEN's favor as to this part of the Injunction Order, particularly as this activity does not infringe the '537 patent.

Second, the equities also favor staying the entirety of the Injunction Order pending appeal. QIAGEN intends to pursue an expedited appeal with the Federal Circuit, thus limiting the potential length of the stay of the Court's Injunction Order.  Nevertheless, even an expedited appeal is likely to take several months to resolve, and GeneReader is a new entrant to the benchtop NGS sequencer market—a market long dominated by Illumina.  *See* Opposition [Dkt. No. 74] at 1. ▌

▌   In contrast, there can be no dispute that Illumina will maintain its dominant position in NGS through trial of this case, whether or not QIAGEN is permitted to compete.  Any GeneReaders and consumables sold during this time can be easily calculated, and any damages to Illumina to such can be quantified.  Schaefer Decl. ¶ 8.  On balance, and in light

9

of the parties' respective positions in the market, any injury to Illumina can be compensated by money damages, but the injury to QIAGEN from an injunction cannot be so compensated. Moreover, since QIAGEN only expects to sell ▮▮▮▮▮▮▮▮ GeneReaders before the appeal is decided, Illumina will be able to quantify any damages should QIAGEN's appeal not succeed. *Id*. at ¶ 8.

As of the date of the Order, ▮▮▮ clinical labs and ▮ partner research organizations are using the GeneReader in the U.S. Schaefer Decl. at ¶ 9. These clinical labs and research organizations have already spent time and resources validating the GeneReader, and are using the GeneReader to conduct important research that will be interrupted if QIAGEN could not continue to service these customers. *Id*. at ¶ 9. Thus, at least with respect to QIAGEN's existing customers the Order should be stayed pending appeal in order to avoid disrupting their current operations. *See i4i Lts P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) (affirming injunction that exempted those customers who had purchased infringing product prior to injunction order because such an exemption "mitigates the negative effects on the public, practically and economically"). Whatever the circumstances with respect to sales QIAGEN has not yet made, Illumina cannot claim that it will be irreparably harmed by a few months of continued consumable sales to labs that have already purchased GeneReader. Any such ongoing consumable sales to existing customers—and thus any money damage to Illumina—would be especially easy to quantify.

### III. ALTERNATIVELY, THE COURT SHOULD AT LEAST STAY THE PRELIMINARY INJUNCTION WHILE THE FEDERAL CIRCUIT CONSIDERS QIAGEN'S EMERGENCY MOTION FOR A STAY PENDING APPEAL.

If the Court denies a stay under these circumstances, it should grant a limited stay to provide QIAGEN with the opportunity to seek a stay with the Federal Circuit. If necessary, QIAGEN will file with the Federal Circuit a motion for stay, along with a motion for expedited consideration of QIAGEN's appeal. These motions should minimize the time necessary for this alternative, limited stay.

### CONCLUSION

For the foregoing reasons, the Court should clarify or modify its Order Granting Plaintiffs' Preliminary Injunction Motion to allow QIAGEN to continue to "make" GeneReader in the U.S.

10

Memorandum in Support of Motion to Stay Injunction Pending Appeal or, Alternatively Pending Decision by the Federal Circuit on Stay Pending Appeal: Case No. 3:16-cv-02788

for sale to customers outside the U.S., and should stay the Order pending Appeal, or, alternatively, pending the Federal Circuit's ruling on an emergency motion for a stay.

Dated: September 15, 2016                                        FARELLA BRAUN + MARTEL LLP

By:  /s/ John L. Cooper
John L. Cooper
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
jcooper@fbm.com

Robert R. Baron, Jr.
  (appearance *pro hac vice*)
Marc S. Segal
  (appearance *pro hac vice*)
Tyler R. Marandola
  (appearance *pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
baron@ballardspahr.com
segalm@ballardspahr.com

*Attorneys for Defendants*
*QIAGEN, N.V.*
*QIAGEN GmbH*
*QIAGEN Gaithersburg, Inc.*
*QIAGEN Sciences, LLC*
*QIAGEN Inc. (USA)*
*QIAGEN Redwood City, Inc.*
*Intelligent Bio-Systems, Inc.*