IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLUMINA, INC, and ILLUMINA CAMBRIDGE LTD., <br><br> Plaintiffs, <br><br> v. <br><br> QIAGEN N.V., QIAGEN GmbH, QIAGEN GAITHERSBURG, INC., QIAGEN SCIENCES, LLC, QIAGEN INC. (USA), QIAGEN REDWOOD CITY, INC., AND INTELLIGENT BIO-SYSTEMS, INC., <br><br> Defendants. | No. C 16-02788 WHA <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STAY PRELIMINARY INJUNCTION** |

An order granted Illumina's motion for a preliminary injunction (Dkt. No. 120). Qiagen moves to stay the preliminary injunction pending its expedited appeal of the order. Alternatively, defendants seek to stay the order in part as to (i) manufacturing the Gene Reader devices in the United States for sales outside the country and (ii) sales of nucleotides to existing customers using the Gene Reader device.

In seeking a stay of the injunction as a whole, Qiagen argues that the order granting the injunction inadequately addressed certain points raised in opposition to Illumina's motion. Although Qiagen's arguments largely revisit arguments already rejected in the order granting Illumina's motion for the preliminary injunction, two points are worth addressing here.

*First*, Qiagen argues that the order granting the preliminary injunction ignored the fact that the Federal Circuit found that it was of "no moment" that the prior art reference to azido

groups challenged therein taught that they would be removed with low efficiency (while the sequencing method taught by Ju and Tsien required high efficiency) because the claimed invention did not require removal. Critically, however, the Federal Circuit found that fact fatal to the claimed motivation to combine those references in the first place. *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016).

Here, Qiagen pointed to the declaration of its expert, Dr. Michael Metzker, in which he asserted that a skilled artisan *would have* been motivated to consult the chapters of Greene & Wuts concerning lower-efficiency protecting groups (including azido groups) when adapting Ju or Tsien for the purpose of labeling. Metzker asserted that "[w]hile efficient removal for the 3'-OH protecting group would always be desirable, a method of labeling would not require the high yield or quantitative (*i.e.* high efficiency) removal discussed in Ju and Tsien in the context of using the labeled nucleotide for sequencing" (Metzker Decl. ¶ 71). Nevertheless, he failed to state that at the time of the '537 patent a skilled artisan would have appreciated that fact, ignored that limitation in Ju or Tsien, and therefore looked beyond the aliphatic alcohols chapter in Green & Wuts to the chapter on phenols. Accordingly, it remains unlikely that Qiagen will succeed in clearly and convincingly showing that the '537 patent is obvious in light of Ju or Tsien and Greene & Wuts.

*Second*, Qiagen continues to assert its inconsistent position that this injunction will cause it irreparable harm while Illumina will suffer no irreparable harm absent the injunction. Although lost sales are possibly quantifiable, the order rested on the fact that Qiagen sought to redefine the market with disruptive pricing models at a crucial inflection point in the market. That risk remains a sufficient basis for denying Qiagen's request to stay the preliminary injunction as a whole.

On the other hand, Qiagen's request to stay the injunction as to its *current* customers does not pose as sharp a risk. Illumina's lost sales to those customers are easily quantifiable, and any irreparable harm in shifting those customers' expectations about pricing models has already been done. Moreover, the public interest and equity in allowing Qiagen's current

2

customers to continue to provide gene sequencing services without purchasing an entirely new system from Illumina favor staying the injunction as to those customers pending Qiagen's appeal.

Separately, Qiagen seeks clarification that the preliminary injunction does not preclude it from manufacturing the Gene Reader for the purpose of sales abroad. Qiagen argues that because the '537 patent claims a method, simply manufacturing the Gene Reader in the United States would not infringe the patent. Illumina agrees, provided that Qiagen does not perform quality control testing in the United States. (Qiagen avers it does not.) Illumina opposes Qiagen's request to clarify the scope of the objection solely because Qiagen did not object to the scope of Illumina's proposed order (which the order granting the preliminary injunction largely adopted).

Neither side briefed the proper scope of the injunction, and the Court will not hold Qiagen responsible for that failure. Thus, this order clarifies that the injunction does *not* extend to the manufacture of Qiagen's Gene Reader products for sale abroad, provided the quality control testing does not occur in the United States.

Accordingly, Qiagen's motion to stay the preliminary injunction in full is **DENIED**, but its motion is **GRANTED** as to supplying nucleotides to its existing customers — including customers that had already begun Qiagen's so-called "try and buy" program — and as to manufacturing in the United States for sales abroad.

**IT IS SO ORDERED.**

Dated: September 22, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

3