1  EDWARD R. REINES (Bar No. 135960)
   edward.reines@weil.com
2  DEREK C. WALTER (Bar No. 246322)
   derek.walter@weil.com
3  WEIL, GOTSHAL & MANGES LLP
   Silicon Valley Office
4  201 Redwood Shores Parkway
   Redwood Shores, CA 94065
5  Telephone: (650) 802-3000
   Facsimile: (650) 802-3100
6
7  Attorneys for Plaintiffs
8  ILLUMINA, INC. and ILLUMINA CAMBRIDGE LTD.

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12

13  ILLUMINA, INC.                          Case No. 3:16-cv-02788-WHA
    ILLUMINA CAMBRIDGE LTD.,
14                                          FIRST SUPPLEMENTAL COMPLAINT FOR
                  Plaintiffs,               PATENT INFRINGEMENT
15
          vs.                               JURY TRIAL DEMANDED
16
    QIAGEN, N.V.
17  QIAGEN GmbH
    QIAGEN Gaithersburg, Inc.
18  QIAGEN Sciences, LLC
    QIAGEN Inc. (USA)
19  QIAGEN Redwood City, Inc.
    Intelligent Bio-Systems, Inc.,
20
                  Defendants.
21

22

23

24

25

26

27

28

1    Plaintiffs Illumina, Inc. and Illumina Cambridge Ltd. (collectively "Illumina") for their

2  First Supplemental Complaint against Defendants QIAGEN N.V., QIAGEN GmbH, QIAGEN

3  Gaithersburg, Inc., QIAGEN Sciences, LLC, QIAGEN Inc. (USA), QIAGEN Redwood City, Inc.,

4  and Intelligent Bio-Systems, Inc. (collectively "Defendants" or "Qiagen"), allege as follows:

5                    **NATURE OF THIS SUPPLEMENTAL COMPLAINT**

6        1.       Illumina supplements its complaint pursuant to Fed. R. Civ. P. 15(d) to add claims

7  for infringement by Qiagen of U.S. Patent No. 9,410,200 ("the '200 patent"), which issued just a

8  few weeks ago on August 9, 2016.  The '200 patent is related to and shares the same specification

9  as U.S. Patent No. 7,566,537 ("the '537 patent"), which is the only other patent-in-suit.  The '200

10  patent has claims that are substantially identical to the claims of the '537 patent.

11                            **INTRODUCTION**

12       2.       Illumina is a leading supplier of DNA sequencing instruments.  Illumina brings this

13  action to halt Qiagen's infringement of the '537 patent and the '200 patent (collectively "the

14  patents-in-suit").  Qiagen recently introduced its infringing GeneReader DNA sequencer in direct

15  competition with Illumina.  In an attempt to clear a path for its products, Qiagen challenged the

16  validity of Illumina's '537 patent in an *inter partes* review proceeding, but failed.  The Patent

17  Trial and Appeal Board rejected Qiagen's invalidity challenge.  *Intelligent Bio-Systems, Inc. v.*

18  *Illumina Cambridge LTD.*, IPR2013-00517 (PTAB, February 11, 2015) (Paper 87).  Likewise, the

19  Federal Circuit rejected Qiagen's appeal.  *Intelligent Bio-Systems, Inc. V. Illumina Cambridge*

20  *LTD.*, No. 2015-1693 (Fed. Cir. May 9, 2016).  Illumina's rights are protected by 28 U.S.C. §§

21  1331 and the Patent Laws of the United States, 35 U.S.C. § 1, et seq.

22       3.       Illumina brings this action in the Northern District of California for the following

23  reasons.  First, Defendant QIAGEN N.V. introduced the GeneReader and has promoted it in this

24  District.   Other Defendants are based in California and have substantial presence in this District.

25  On the other hand, QIAGEN N.V. has denied personal jurisdiction in the District of Delaware as

26  part of a separate litigation involving Illumina and the '537 patent.  In that suit, Illumina asserted

27  the '537 patent against QIAGEN N.V. and a Qiagen subsidiary named defendant Intelligent Bio-

28

1  Systems ("IBS").  After QIAGEN N.V. represented in its motion to dismiss that it did not have

2  adequate contacts with Delaware, Illumina agreed to voluntarily dismiss the suit against QIAGEN

3  N.V.  The two products at issue in the Delaware litigation are not at issue in this case and have

4  been abandoned.  The website for those two products has also been removed from the internet.  To

5  ensure that QIAGEN N.V. is included in the case without plausible jurisdictional complaint and in

6  a District with unquestionable connection to this dispute, Illumina brings suit here.

7       4.     QIAGEN N.V. has had systematic and continuous contact with the Northern

8  District of California, especially with regard to its marketing and promotion of the GeneReader.

9  For instance, QIAGEN N.V. CEO Peer Schatz traveled to San Francisco, California, to promote

10  the GeneReader in January 2016 at the J.P. Morgan Annual Healthcare Conference.  Qiagen N.V.

11  also recently partnered with 10X Genomics, Inc.—a company based in Pleasanton, California—to

12  promote and market the GeneReader.  The attached news article and press release documents this.

13  *See* Ex. 1 (Genome Web article); Ex. 2 (10X Genomics PR).  Moreover, several QIAGEN N.V.

14  employees who are involved with developing, promoting, and marketing the GeneReader purport

15  to reside in the Northern District of California.

16       5.     As a result of Qiagen's infringement and the well-documented threat of its

17  continued infringement, Illumina faces a substantial risk of irreparable harm.

18  **PARTIES**

19       6.     Plaintiff Illumina, Inc. is a Delaware corporation with its principal place of

20  business at 5200 Illumina Way, San Diego, California, 92122.  Plaintiff Illumina Cambridge Ltd.

21  is a foreign corporation with its principal place of business located at Chesterford Research Park,

22  Liitle Chesterford, Nr Saffron Walden, Essex CB10 1XL, United Kingdom.

23       7.     Plaintiff Illumina Cambridge Ltd., a wholly-owned subsidiary of Illumina, Inc., is

24  the owner by assignment of all right, title and interest in and to the '537 and '200 patents.

25  Illumina Inc. is the exclusive licensee of the '537 and '200 patents with the right to sue to enforce

26  its exclusivity.

27

28

8.    Illumina is a leading developer, manufacturer, and marketer of life science tools and integrated systems for large-scale analysis of genetic variation and function. Through its sequencing and array-based solutions, Illumina has revolutionized DNA analysis. Most recently, Illumina achieved a significant milestone in medical progress through the launch of sequencing technology capable of pushing the cost of sequencing the human genome down to $1000.

9.    Defendant QIAGEN N.V. is a Dutch company with its principal place of business in Venlo, Netherlands.  QIAGEN N.V. is the ultimate parent of a number of Qiagen subsidiaries here in the United States.  On information and belief, QIAGEN N.V. has, both directly and through its subsidiaries, marketed and helped sell Qiagen-branded products, including the Qiagen GeneReader, in the United States, including in Northern District of California.  QIAGEN N.V.'s contacts with the Northern District of California are more fully documented in the allegations in paragraphs 29 through 35 below and described throughout this document.

10.   Defendant QIAGEN GmbH is a German corporation and a wholly-owned subsidiary of QIAGEN, N.V.  On information and belief, QIAGEN GmbH has systematic and continuous contact in the United States, including in the Northern District of California.  The following facts and other facts contained this complaint demonstrate that this Court has personal jurisdiction over QIAGEN GmbH.  On information and belief:

a.    QIAGEN GmbH is named as the "legal manufacturer" of the GeneReader in the GeneReader user manual.  Ex. 3 (GR Manual) at 57.

b.    QIAGEN GmbH manufactures the nucleotides related to the GeneReader.

c.    QIAGEN GmbH publishes the user manuals for the GeneReader and the GeneReader reagent kits, including the GeneRead Sequencing Q Kit Handbook. Ex. 4 (GeneRead Sequencing Q Kit (1) Handbook).

d.    According to prior court filings by QIAGEN N.V., QIAGEN GmbH "manufacture[s] and distribute[s] a wide variety of [Qiagen] products relating to sample and assay technologies."  Ex. 5 (*Troll Busters LLC v. Roche Diag.* Case No. 3:11-cv-00056 (S.D. Cal. May 9, 2011) [Doc. 111-2 at 2-3]).

e.   According to the same court filings, QIAGEN GmbH "also develops the printed materials for the products from its offices in Germany" and controls the Qiagen website that markets, offers to sell, and sells Qiagen products worldwide.  *Id*.  This website includes offers to sell the Qiagen GeneReader.

f.   QIAGEN GmbH employs individuals whose primary responsibility is product management related to the GeneReader.  For example, Mr. Andreas Schäfer is QIAGEN GmbH Vice President, Program Management, Molecular Diagnostics.  His LinkedIn page states that he is responsible "and accountable for QIAGEN's key business initiative in Next Generation Sequencing: The GeneReader Sample-to-Insight system…."  Ex. 6 (Schäfer LinkedIn Page).

g.   QIAGEN GmbH employs individuals that reside in California, specifically in support of their NGS technologies.  For example, Mr. Colin Baron's title is Senior Director, Head of Product Management, NGS Life Sciences.  Mr. Baron's LinkedIn page represents that his job title with Qiagen is linked to "Dusseldorf Area, Germany," which is a city less than 20 kilometers outside of Hilden, Germany, which is the business location for QIAGEN GmbH.  The same LinkedIn page states that Mr. Baron resides in Pleasanton, California, which is located in the Northern District.  Ex. 7 (Baron LinkedIn Page).  Notably, Mr. Baron worked on Illumina sequencing products prior to becoming employed with Qiagen.  *Id.*

11.   Defendant QIAGEN Gaithersburg, Inc. is a Delaware corporation and a wholly-owned subsidiary of QIAGEN North American Holdings Inc., which is a subsidiary of parent QIAGEN N.V.   On information and belief, QIAGEN Gaithersburg Inc.'s principal place of business is Germantown, Maryland.   The following facts support jurisdiction over QIAGEN Gaithersburg, Inc.  On information and belief:

a.   QIAGEN Gaithersburg, Inc. has systematic and continuous contact with the Northern District of California on its own and/or through its wholly-owned

1       subsidiaries QIAGEN Sciences, LLC, QIAGEN Inc., and QIAGEN Redwood City,

2       Inc.

3     b. QIAGEN Gaithersburg, Inc. has a role in the research and development,

4       manufacturing, and marketing of Qiagen products, including the GeneReader and

5       consumables related to the GeneReader, in the United States.

6     c. Several senior-level Qiagen employees involved with product manufacturing, sales

7       and marketing purport to live in and around QIAGEN Gaithersburg, Inc facilities.

8       *See*, *e.g.* Ex. 53 (Senior Marketing Specialist LinkedIn).   For example, Chief

9       Commercial Officer Manuel O. Mendez purports to reside in Raleigh-Durham,

10      North Carolina area.  Ex. 23 (Mendez LinkedIn Page).

11   12. Defendant QIAGEN Sciences, LLC is a Delaware corporation and wholly-owned

12 subsidiary of QIAGEN Gaithersburg, Inc. with its principal place of business in Germantown,

13 Maryland.  The following facts support jurisdiction over QIAGEN Sciences, LLC:

14     a. As identified on the Qiagen website, QIAGEN Sciences, LLC is a "Division" of

15       QIAGEN N.V., *see* Ex. 8 (Screenshot), demonstrating a close relationship between

16       the two.

17     b. On information and belief, QIAGEN Sciences, LLC operates as QIAGEN N.V.'s

18       United States arm for research related to and manufacturing of Qiagen products and

19       services.

20     c. On information and belief, QIAGEN Sciences, LLC plays a role in manufacturing

21       GeneReader products.

22     d. Several senior-level Qiagen employees involved with product manufacturing, sales

23       and marketing purport to live in and around QIAGEN Sciences, LLC facilities.

24       *See*, *e.g.* Ex. 53 (Senior Marketing Specialist LinkedIn).   For example, Chief

25       Commercial Officer Manuel O. Mendez purports to reside in Raleigh-Durham,

26       North Carolina area.  Ex. 23 (Mendez LinkedIn Page).

27

28

13.    Defendant QIAGEN Inc. (USA) ("QIAGEN Inc.") is a wholly-owned subsidiary of QIAGEN Gaithersburg, Inc.  QIAGEN Inc. is a Delaware corporation with its principal place of business at 27220 Tumberry Lane, Valencia, California 91355.   The following facts support jurisdiction over QIAGEN Inc.:

a.    QIAGEN Inc. is the only U.S. subsidiary listed on the website under "Global Contacts."  Ex. 9 (Screenshot).

b.    The main Qiagen website lists the Valencia, California address as the only address for QIAGEN Inc.  *Id*.

c.    QIAGEN N.V. has referred to QIAGEN Inc. as a "California corporation" in prior court filings.  Ex. 10 (*Troll Busters LLC v. Roche Diag.* Case No. 3:11-cv-00056 (S.D. Cal. May 9, 2011) [Doc. 111-1 at 11]).

d.    On information and belief, QIAGEN Inc. receives customer orders of the GeneReader.  *See* Ex. 11 (Orders Page from GR Website).

e.    On information and belief, QIAGEN Inc. has at least some manufacturing operations.   See. Ex. 12 (Hall LinkedIn Page, listing that he is responsible for "managing ***Manufacturing Operations*** in the Germantown, Gaithersburg and ***Valencia, CA Sites*.*" ).

f.    On information and belief, QIAGEN Inc. provides technical support, and in doing so likely distributes technical literature, for Qiagen products, including the GeneReader.  *See* Ex. 13 (Shetty LinkedIn Page).

14.    Defendant QIAGEN Redwood City, Inc. is a Delaware corporation and wholly-owned subsidiary of QIAGEN GmbH with its principal place of business at 1700 Seaport Blvd, 3rd Floor, Redwood City, California 94063.   The following facts support jurisdiction over QIAGEN Redwood City, Inc.  On information and belief:

a.    QIAGEN Redwood City was formerly Ingenuity Systems ("Ingenuity"), a company that specialized in development of bioinformatics software for use on medical devices like sequencers.

1        b.    QIAGEN Redwood City is involved with the development, manufacturing, and

2             supply of the bioinformatics software that is sold as part of or in conjunction with

3             the GeneReader system. *See* Ex. 14 (Becquet LinkedIn Page).

4        c.    QIAGEN Redwood City employees, formerly Ingenuity employees, are involved in

5             GeneReader product management.  Mr. Rupert Yip, Director Product Management,

6             stated that he participated in the "QIAGEN post merger integration team ***with a***

7             ***focus on GeneReader NGS platform***."  Ex. 15 (Yip LinkedIn Page).  He also

8             purports to be a member "of GeneReader Core Team leading the platform's

9             development and go to market strategy." *Id*.

10      d.    QIAGEN Redwood City employees are heavily involved in launching the

11            GeneReader.  For example, Mr. Kumar Bala, Associate Director at QIAGEN,

12            Molecular Diagnostics-NextGen Sequencing, resides and/or works in and around

13            Hercules, California, which is located closest to Qiagen Redwood City in the

14            Northern District of California.  *See* Ex. 16 (Bala LinkedIn Page).  Per Mr. Bala's

15            LinkedIn page, he was integrally involved in coordinating "the launch of the

16            GeneReader NGS system" and he "executed product development and commercial

17            launch activities" related to the GeneReader.  *Id.*.  He also "[c]reated the 2016

18            Marketing Plan including the go-to-market and pricing strategies." *Id.*  Mr. Bala

19            also states that he led "the team in developing the training plan and organizing the

20            training for the technical sales team" and was the person who created "the demand

21            generation strategy, marketing collaterals, e-Marketing tools and social media

22            strategy" related to GeneReader.  *Id.*

23      e.    QIAGEN Redwood City, through the aforementioned activities, plays some role in

24            disseminating promotional and marketing documents and/or technical literature

25            related to the GeneReader especially through its support for the GeneReader's

26            bioinformatics platform.

27

28

15.     Defendant Intelligent Bio-Systems, Inc. ("IBS") is a Delaware corporation and wholly-owned subsidiary of Qiagen North America Holdings, Inc., with its principal place of business at 34 Bear Hill Road, Waltham, Massachusetts 02451.   The following facts support jurisdiction over IBS.  On information and belief:

    a.   IBS is involved with the development of Qiagen sequencing products, including the GeneReader.

    b.   IBS owns the GeneReader trademark.  Ex. 17 (Excerpt, "GeneReader Trademark File History).

    c.   Qiagen employees purportedly residing in Waltham, Massachusetts, the site of its IBS subsidiary, work on the GeneReader:

        i.   QIAGEN Scientist Visalakshi Meyyappan, who previously worked for IBS and since June 2013 has worked for QIAGEN, represented on his LinkedIn page that he played "an integral role in the launch of the Qiagen GeneReader 1.0."  Ex. 18 (Meyyappan LinkedIn Page).  Mr. Meyyapan states on the same page that he lives and works in the Greater Boston Area.  *Id.*

        ii.   QIAGEN Senior Scientist Agus Darwanto stated on his LinkedIn profile that he has "[e]xperience preparing and writing document for NGS product launch (GeneReader)," and he has worked on various aspects of development, design and validation of the GeneReader platform at QIAGEN in Waltham, Massachusetts since July 2014.  Ex. 19 (Darwanto LinkedIn Page).

        iii.   Several other employees that work on NGS research and development for QIAGEN represent that they work out of Waltham, Massachusetts, where IBS is located.  *See, e.g.* Ex. 20 (Zhou LinkedIn Page).

16.     As alleged throughout this complaint, the defendants listed in paragraphs 9 through 15 are alter egos and/or agents of QIAGEN N.V. and/or each other, and in performing the acts

1  below, were therefore acting within the course and scope of agency and with permission and

2  consent of all co-defendants.

3      17.    Each and all of the defendants named in paragraphs 9 through 15 had and have

4  actual or constructive knowledge of the events, transactions, and occurrences alleged herein, and

5  either knew or should have known of the conduct of their co-defendants and cooperated in,

6  benefited from and/or ratified such conduct.

7                              **JURISDICTION AND VENUE**

8      18.    This action arises under the Patent Laws of the United States of America, 35 U.S.C.

9  § 1 et seq.  This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §

10  1338(a) because this is a civil action arising under the Patent Act.

11      19.    This Court has general and/or specific jurisdiction over each and every Defendant

12  as follows.

13      20.    This Court has general jurisdiction over QIAGEN Inc., which is a Delaware

14  corporation with its principal place of business in Valencia, California.

15      21.    This Court has general jurisdiction over QIAGEN Redwood City, Inc., which is a

16  Delaware corporation with its principal place of business in Redwood City, California.

17      22.    This Court has specific jurisdiction over QIAGEN N.V., QIAGEN GmbH, Qiagen

18  Gaithersburg, Qiagen Sciences LLC, and Intelligent Bio-Systems, Inc. for the reasons listed in

19  paragraphs 9 through 15 above and the General Allegations section below and throughout this

20  complaint.

21      23.    Alternatively, this Court has general and/or specific jurisdiction over all named

22  defendants, because pursuant to the facts below, the named defendants are alter-egos of one

23  another and/or agents of QIAGEN N.V. and, as such, have conducted and continue to conduct

24  substantial business in this District, have committed and continue to commit acts of patent

25  infringement in this District, and/or have harmed and continue to harm Plaintiffs in this District

26  by, among other things, using, selling, offering for sale and/or importing infringing products and

27  services in this District.  These defendants have purposefully availed themselves of the benefits of

28

1   California's laws and of the privilege of conducting business in California by directing into

2   California Qiagen products that embody the patents-in-suit, including but not limited to the

3   Qiagen GeneReader.   On information and belief, the named Qiagen entities are continuing to

4   import into, market within, and sell within California and elsewhere the GeneReader.  As a result

5   of Defendants' intentional conduct directed towards California, Plaintiffs have suffered injury in

6   California and elsewhere in the United States.

7        24.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because a

8   substantial part of the events giving rise to Illumina's claim occurred in this District and

9   Defendants, having previously marketed and selling the accused products within the District, are

10  subject to personal jurisdiction in this District.

11                       **INTRA-DISTRICT ASSIGNMENT**

12       25.    Pursuant to Civil Local Rules 3-5(b) and 3-2(c), because this action is an

13  intellectual property action, it is properly assigned to any of the divisions in this District.

14                              **BACKGROUND**

15  **Qiagen N.V. Denied Personal Jurisdiction In The District Of Delaware.**

16       26.    As noted above, QIAGEN N.V. is the parent corporation to several holdings

17  companies and subsidiaries across the United States.  On April 11, 2012, Intelligent Bio-Systems

18  (IBS), an indirect subsidiary of QIAGEN N.V., sued Illumina in the District of Delaware.

19  *Trustees of Columbia Univ. v. Illumina, Inc.*, Case No. 1:12-cv-376-GMS (D. Del. April 11, 2012)

20  [D.I. 5].   IBS asserted five patents, relevant claims of three of which have already been

21  invalidated.  *Intelligent Bio-Systems, Inc. V. Illumina Cambridge LTD.*, IPR2013-00517 (PTAB,

22  February 11, 2015) (Paper 87).   Illumina counterclaimed against IBS and QIAGEN N.V.,

23  asserting the '537 patent, among others.  *Trustees of Columbia Univ.*, Case No. 1:12-cv-376-GMS

24  at [D.I. 24].

25       27.    In the Delaware litigation, Illumina identified two IBS products, the MAX-Seq and

26  the MINI-20 DNA Sequencers, neither of which are identified by this complaint.  *Id*.  In moving

27  to dismiss Illumina's counterclaims for lack of personal jurisdiction, QIAGEN N.V. represented

28

that both those products were marketed, manufactured, distributed, shipped, sold, and offered to sell by IBS—not QIAGEN N.V.  *Id.* [D.I. 45].  QIAGEN N.V. also represented that QIAGEN N.V. did "not control IBS's day-to-day operations."  *Id.*  QIAGEN N.V. also represented that it had minimal contacts with Delaware including very few customer visits and few emails.  It cannot make those same allegations regarding California.  Indeed, as alleged in this complaint, Qiagen N.V. and its representatives have extensive contacts with California, using it as a base for much of its operations.  Reciting these representations, and given QIAGEN N.V.'s steadfast denial of personal jurisdiction in Delaware, Illumina voluntarily dismissed its counterclaims against QIAGEN N.V. on December 3, 2012, leaving IBS as the only named defendant. *Id.* [D.I. 57]. Anticipating the potential for a similar denial in this case, Illumina brings this case in this Court.

28.     Fact discovery had started but was essentially halted when, on April 1, 2013, the District of Delaware stayed the action with minor exception pending the resolution of several *inter partes* review proceedings, including the IPR on the '537 patent which is described below.  *Id.* [D.I. 89].

**Qiagen N.V.'s Contacts**

29.     On information and belief, foreign parent QIAGEN N.V. has continuous and systematic contact with the United States that gives rise to its infringement.  On information and belief:

a.     QIAGEN N.V. is associated with numerous press releases regarding the GeneReader, including those announcing the launch of the GeneReader and that the GeneReader won an international design award in April 2016.  *See*, *e.g.* Ex. 54 (Press Release Re Red Dot Award).

b.     QIAGEN N.V. plays a role in distributing GeneReader User Manual(s), reagent kit manuals, technical handbooks, product detail sheets, and technical specification sheets, all of which are available on the general Qiagen website.

c.     Mr. Peer Schatz, QIAGEN N.V. Chief Executive Officer, represents that he works in and around the Washington, D.C. Metro Area, i.e. **within the United States**, on

his LinkedIn page.  Ex. 21 (Schatz LinkedIn Page).  Mr. Schatz has been in several videos promoting the GeneReader and was present at the launch of the GeneReader in Austin, Texas. Ex. 22 (Screenshot).

    d.    Manuel O. Mendez is a Chief Commercial Officer/ Corporate Senior Vice President Global Commercial at Qiagen.  Ex. 23 (Mendez LinkedIn Page).  His LinkedIn page does not reference a particular entity but does state that he resides in Raleigh-Durham, North Carolina, i.e. **within the United States**.  *Id.*

30.    On information and belief, Qiagen N.V. has continuous and systematic contact with California that gives rise to its infringement liability.  Specifically, QIAGEN N.V. continuously and systematically conducts business in California by way of marketing, promoting, and selling the accused product in this case, the GeneReader.

31.    On information and belief, the promotion and marketing done by QIAGEN N.V. gave rise to a sale, installation, and use of a GeneReader to a laboratory called DiaCarta, Inc. in Richmond, California.

32.    On information and belief, QIAGEN N.V. has partnered with 10X Genomics, Inc., a company based in Pleasanton, California, to promote the GeneReader.  The attached press release documents that this "co-marketing and co-development collaboration" is aimed at the "co-promotion and co-development" of integrated sequencing technologies, with a specific focus on "investigating the implementation of 10X Genomics' GemCode technology with QIAGEN's **proprietary GeneReader NGS System."**  Ex. 24 (02/09/16 Business Wire Article).

33.    On information and belief, QIAGEN N.V. CEO Peer Schatz traveled to the Northern District of California, specifically San Francisco, to market and promote the GeneReader in January 2016.  The slides below demonstrate the content of his presentation focused on the GeneReader and the attached press release confirms that the presentation took place in San Francisco:





Ex. 46 (10x Genomics Slides); *see also* Ex. 1 (Genome Web article).

34.     On information and belief, individuals on the team that launched the GeneReader—a conglomerate of employees at various Qiagen entities—reside and work in the Northern District of California.   For example, on information and belief, Associate Director for Molecular Diagnostics-NextGen Sequencing Mr. Kumar Bala was a member of the launch team and was present at the AMP Conference soft launch.  Ex. 16 (Bala LinkedIn Page); *see also* Ex. 25 (Photo from Launch).   Mr. Bala's LinkedIn page reflects that he resides in Hercules, California, a city located in the Northern District of California.   Ex. 16 (Bala LinkedIn Page).   No other employment location is listed on Mr. Bala's LinkedIn page. *Id.*

**All Defendants Have Committed Acts Of Infringement Within California.**

35.     QIAGEN N.V. and its named defendant subsidiaries have continuous and systematic contact with California specifically related to the GeneReader, the product accused in this case, in the Northern District of California.  The following is a an exemplary list of various employees associated with "Qiagen"—the amorphous label used by many of Qiagen's employees—that are involved with development and marketing of the GeneReader and also purport to be employed in the Northern District of California:

a.     On information and belief, Qiagen Senior Vice President and Executive Management Committee member Dr.  Laura Furmanski resides in California.  Ex. 55 (Furmanski LinkedIn Page).

1      b.     Senior Vice President Brad Crutchfield also resides in the San Francisco Bay Area,

2             California.  Ex. 56 (Crutchfield LinkedIn Page).

3      c.     Ms. Yi Kong, Director of Commercial Management and Head of Outbound

4             Marketing for Qiagen's Oncology Franchise, states on her LinkedIn page that she

5             resides in and, under her job description, works in the San Francisco Bay Area.  Ex.

6             26 (Kong LinkedIn Page).  Ms. Kong posted on her LinkedIn page an

7             announcement about the launch of the GeneReader entitled "Just Launched: The

8             GeneReader NGS System."  *Id*.  The relevant portions from Ms. Kong's LinkedIn

9             page appear below.



*Id*.

d.     According to an article about the launch of the GeneReader, Ms. Kong also

       attended the GeneReader launch and held herself out as a Director of Marketing at

       the Qiagen booth.  Ms. Kong confirmed to journalists at the booth that, for the

GeneReader, "the target customers are medium to low-throughput labs new to sequencing." Ex. 27 (11/06/15 DeciBio article).

    e.    Mr. Rupert Yip, based in Redwood City, California, holds the title "Director VA Product Line" at Ingenuity Systems. Ex. 15 (Yip LinkedIn Page). As he reflects on his LinkedIn Page, Ingenuity was acquired by Qiagen, and he is therefore a Qiagen employee. Mr. Yip states that he participated "in the QIAGEN post merger integration team **with a focus on the GeneReader NGS platform**" and was a member of the "GeneReader Core Team leading the platform's development and go to market strategy":



    *Id.*

    f.    To provide another example, Ms. Xi Hau Decker is a Director for Product Management, Next Generation Sequencing at QIAGEN. Ex. 28 (Decker LinkedIn Page). Mr. Decker also represents that she is based out of the San Francisco Bay Area. *Id.*

### Qiagen N.V. And Its Named Defendant Subsidiaries Are Alter Egos

36.    In the event the named defendant subsidiaries and sub-subsidiaries fail to establish independent personal jurisdiction, or even if they do, the named defendant subsidiaries are alter egos of QIAGEN N.V. The named defendant subsidiaries and QIAGEN N.V. share a unified interest and ownership and to treat them as separate entities would promote injustice.

37.     On information and belief, the following facts, in addition to those contained in the rest of this complaint, demonstrate that the Qiagen subsidiaries and QIAGEN N.V. share a unified interest and ownership:

a.     On information and belief, QIAGEN N.V. and its subsidiaries share a single Executive Committee, comprised of CEO Mr. Peer M. Schatz, Chief Financial Officer Mr. Roland Sackers, and several Senior Vice Presidents, including Mr. Thierry Bernard, Mr. Brad Crutchfield, Dr. Laura Furmanski, Mr. Douglas Liu, Mr. Manual O. Mendez, and Dr. Thomas Schweins.   Ex. 51 (Qiagen Executive Committee screenshot).   According to the Qiagen website, "the members of the Executive Committee *share* powers and responsibilities for the management of the Company, the deployment of its strategy and policies, and the achievement of its objectives and results." *Id*.   These individuals are also associated with various Qiagen subsidiaries.   For example, on information and belief, Mr. Liu is a managing director of QIAGEN GmbH.   Ex. 52 at 5 (German Trade Register excerpt).

b.     QIAGEN N.V. and its subsidiaries share numerous key officers.

i.     For example, on information and belief, Mr. Schatz is the CEO of QIAGEN N.V. and an officer to various Qiagen subsidiaries, including at least QIAGEN Gaithersburg, Inc., QIAGEN Redwood City, Inc., and Intelligent Bio-Systems, Inc.  *See* Exs. 29, 47, 48 (State of Delaware Annual Franchise Tax Reports).

ii.     On information and belief, Dr. Thomas Theuringer is also a director at QIAGEN GmbH and at least one Qiagen U.S. subsidiary.   The "Media Contact" page of the shared Qiagen website lists Dr. Thomas Theuringer as "Director, Public Relations" next to a German phone number and lists him with the same title under the sub-heading "U.S. Media Contact" with a U.S. telephone number.  Ex. 30 (Screenshot).

iii.   On information and belief, Dr. Hans Peter Fatscher is an officer of QIAGEN Inc. and QIAGEN GmbH.  According to other court filings by Qiagen entities, Dr. Fatscher "a senior executive officer of Qiagen Inc [] in charge of the ***daily affairs*** of Qiagen Inc.," which is a U.S. subsidiary, but Dr. Fatscher resides in Germany.  *See* Ex. 5 (*Troll Busters LLC v. Roche Diagnostics GmbH et al.*, Case No. 3:11-cv-00056 (S.D. Cal. May 9, 2011) [Doc. 111-2 at 1])[1]; *see also* Ex. 31 (Fatscher LinkedIn Page).

c.   QIAGEN N.V. and each of its subsidiary locations share facially identical websites (available in different languages).  The only facial distinction is that, depending on the location a user selects, the URL shows "/us" (for United States) or "/nl" (for Netherlands) at the end of the web address.  The first hit that results from searching "Qiagen" on Google.com directs the user to this single, unified website.  On the website itself, the organization refers generally to the entity "QIAGEN" without any indication as to any particular entity.  On information and belief, none of the named U.S. subsidiaries has its own separate website.

d.   QIAGEN N.V. leases real estate for operations of its U.S. subsidiaries.  As stated in its 2015 Securities and Exchange Committee ("SEC") 20-F filing, QIAGEN N.V. leases facilities in at least Maryland, Massachusetts, and two sites in California.  Ex. 32 (Excerpt, QIAGEN N.V. 2015 20-F SEC filing).

e.   QIAGEN N.V. and its subsidiaries share legal counsel.  *See*, *e.g. Oxford Immunotec Ltd. v. Qiagen N.V. et al*, Case No. 1:15-cv-13124-NMG [Docket Rpt.] (D. Mass. Aug. 10, 2015).  For example, Dr. Jürgen M. Schneider oversaw the IBS IPR proceedings for Qiagen and attended some oral arguments in person.  He has also interfaced with Illumina as part of the Delaware litigation.

f.   Qiagen N.V. controls hiring of personnel within its U.S. subsidiaries.  The shared Qiagen web site hosts job postings for all of their various subsidiary locations.  An

---

[1] Emphasis added unless otherwise noted.

1   image of this job posting portal is attached hereto as Exhibit 33 (Qiagen Job

2   Portal).   The first three hits that result from searching for "Apply and Qiagen

3   Sciences LLC" on Google.com direct a user to the "Careers" page of the single,

4   amorphous Qiagen website.

5   38.   On information and belief, the following facts, in addition to the facts contained in

6   the rest of this complaint, demonstrate that the Qiagen subsidiaries and QIAGEN N.V. share a

7   unified interest and ownership, specifically with respect to the Qiagen GeneReader:

8   g.   QIAGEN N.V. and its subsidiaries named as defendants all participate in the

9   marketing and sales of the Qiagen GeneReader.  For example, a November 4, 2015

10   press release announcing "the start of commercialization activities" for the

11   GeneReader is attributed to QIAGEN N.V.  This press release is attached hereto as

12   Exhibit 34 (Qiagen GeneReader Press Release).   The press release also names

13   QIAGEN N.V. in a section appearing at the end that is entitled "About QIAGEN."

14   Contact information within the press release lists two corporate directors from

15   QIAGEN N.V., Director for Public Relations Dr. Thomas Theuringer and Vice

16   President Corporate Communications and Investor Relations Mr. John Gilardi.

17   h.   QIAGEN N.V. subsidiaries named as defendants also participate in the marketing

18   and sales of the GeneReader.  For example, on information and belief, a Qiagen

19   subsidiary in the United States sold a Qiagen GeneReader to a customer located in

20   the Northern District of California.  As another example, on information and belief,

21   QIAGEN GmbH controls and operates the QIAGEN N.V. website, from which the

22   GeneReader is marketed.  *See* Ex. 35 (Screenshot).  On information and belief, the

23   promotional materials related to the GeneReader originate from QIAGEN GmbH,

24   which, per previous court filings by QIAGEN N.V., produces marketing and

25   promotional materials for all Qiagen products.

26   i.   QIAGEN N.V. and its subsidiaries named as defendants jointly launched the

27   GeneReader in November 2015. For instance, QIAGEN N.V. CEO Peer M. Schatz

28

promoted and presented the GeneReader at the Association for Medical Pathology (AMP) conference in Austin, Texas, in November 2015.  A still clip from the video, showing Mr. Schatz, is attached as Exhibit 36 (Screenshot).   Other individuals involved with promoting the GeneReader at the 2015 conference include QIAGEN N.V. Chief Medical Officer Dr. Tadd Lazarus, who on information and belief, works at a Qiagen subsidiary in California, Qiagen Senior Global Product Manager Mr. Salim Essakali, who on information and belief, works at a Qiagen subsidiary in Germany, and Senior VP Head of QIAGEN Molecular Diagnostics Mr. Thierry Bernard, who on information and belief works at a Qiagen subsidiary in Massachusetts.  Documentation supporting these facts is attached as Exhibit 37 (Screenshot).

j.   QIAGEN N.V. and its subsidiaries jointly market the product through promotional videos.  In another video from November 2015, QIAGEN N.V.  Senior Director Head of Marketing Mr. Marc Meienberger introduces the Qiagen GeneReader Assistant App, a mobile device application to support the GeneReader.  A still from that video is attached as Exhibit 38 (Screenshot).  Dr. Tadd Lazarus, who again, on information and belief works out of a Qiagen facility in California, promoted the advances behind the Qiagen GeneReader in another video.  A still from that video is attached as Exhibit 39 (Screenshot).  By such promotion, Qiagen has held out the GeneReader as being marketed, offered for sale, and sold by both QIAGEN N.V. and its various subsidiaries, including those named as defendants here.

39.   On information and belief, the following facts, in addition to the facts contained in the rest of this complaint, demonstrate that characterizing the defendant subsidiaries and QIAGEN N.V. as separate entities would promote injustice:

a.   On information and belief, QIAGEN N.V. has set up several holdings companies, including  for  instance  QIAGEN  US  Financial  Holdings  (Luxembourg)  and QIAGEN North American Holdings Inc., in an attempt to distance the corporate

1         relationship between QIAGEN N.V. and its U.S. subsidiaries and shelter lawsuits

2         against the foreign parent and/or the U.S. subsidiaries.  To bar a plaintiff from

3         pursuing claims against one or the other would condone this and promote injustice.

4      b.    QIAGEN N.V. claims it is a "holding company" with no products of its own, yet

5         QIAGEN N.V. is heavily involved with marketing and promotion of the Qiagen

6         GeneReader NGS System. It would promote injustice to ignore the reality that

7         Qiagen N.V. controls and markets the accused products.

8  **The Named Qiagen Subsidiaries Are At Least Agents Of QIAGEN N.V.**

9      40.    The named defendant subsidiaries are also agents of QIAGEN N.V., because they

10  function as QIAGEN N.V.'s representatives in that they perform services that are sufficiently

11  important to QIAGEN N.V. that, if QIAGEN N.V. did not have a representative to perform them,

12  QIAGEN N.V.'s own officials would undertake to perform substantially similar services.

13      41.    On information and belief, the following facts, in addition to those contained in the

14  rest of this complaint, support the legal conclusion that the named defendant subsidiaries are

15  agents of QIAGEN N.V.:

16      a.    In the event QIAGEN N.V. and its subsidiaries are not alter egos of one another,

17         and even if they are, U.S. subsidiaries help market Qiagen products to third persons

18         in the United States.  If QIAGEN N.V. did not have the assistance of the named

19         subsidiaries, QIAGEN N.V. would itself have to perform substantially similar

20         services to successfully sell products in the United States.

21      b.    In the event QIAGEN N.V. and its subsidiaries are not alter egos of one another, or

22         even if they are, U.S. subsidiaries sell Qiagen products to third persons in the

23         United States.  If QIAGEN N.V. did not have the assistance of the named

24         subsidiaries, QIAGEN N.V. would itself have to perform substantially similar

25         services in order to sell products in the United States.

26

27

28

1   c. U.S. subsidiaries house facilities for software development, manufacturing,

2     distribution and research operations in conjunction with QIAGEN N.V.  Ex. 32

3     (Excerpt, QIAGEN N.V. 2015 20-F SEC filing).

4   d. U.S. subsidiaries process customer orders and invoices. *See* Ex. 10 (*Troll Busters*

5     *LLC v. Roche Diagnostics GmbH et al.*, Case No. 3:11-cv-00056 (S.D. Cal. May 9,

6     2011) [Doc. 111-1 at 11]).

7   e. U.S. subsidiaries, including but not limited to those in Maryland, manufacture

8     products.  *Id.*

9   f. U.S. subsidiaries carry out development and commercialization of the GeneReader

10     NGS System. Ex. 32 (Excerpt, QIAGEN N.V. 2015 20-F SEC filing) at 38

11     (describing various leased facilities within the United States as "for GeneReader

12     NGS system development," "Bioinformatics," and "Customer Care, Sales and

13     Marketing services.").

14  **The GeneReader System Infringes the '537 and '200 Patents**

15   42. On July 28, 2009, the United States Patent and Trademark Office duly and legally

16 issued the '537 patent, entitled "Labelled Nucleotides."  The named inventors of the '537 patent

17 are Shankar Balasubramanian, Collin Barnes, Xioahai Liu, John Milton, Harold Swerdlow, and

18 Xioalin Wu.  By operation of law and as a result of written assignment agreements, Illumina,

19 specifically plaintiff Illumina Cambridge Ltd., obtained the entire right, title, and interest to and in

20 the '537 patent.  The '537 patent is attached hereto as Exhibit 40 (U.S. Patent No. 7,566,537).

21   43. On August 9, 2016, the United States Patent and Trademark Office duly and legally

22 issued the '200 patent, entitled "Labelled Nucleotides."  The named inventors of the '200 patent

23 are Shankar Balasubramanian, Collin Barnes, Xioahai Liu, John Milton, Harold Swerdlow, and

24 Xioalin Wu.  By operation of law and as a result of written assignment agreements, Illumina,

25 specifically plaintiff Illumina Cambridge Ltd., obtained the entire right, title, and interest to and in

26 the '200 patent.  The '200 patent is attached hereto as Exhibit 41 (U.S. Patent No. 9,410,200).

27

28

44.     On information and belief, in and around November 2015, Defendants announced a commercial DNA sequencing instrument, the Qiagen GeneReader system.   The technology underlying the GeneReader is summarized in the GeneReader product brochure, the GeneReader "Product Details" section on Qiagen's website, and the GeneReader user manual, which are all publically accessible on Qiagen's website.   A copy of the brochure is attached as Exhibit 42, relevant screenshots of the website itself are attached as Exhibit 43, and the user manual is attached as Exhibit 3.   Patent publications filed in 2015 also provide details about the technology and underlying chemistry behind the GeneReader.   A copy of one of Qiagen's relevant patent filings is attached as Exhibit 44 (U.S. Patent Application No. 2015/0284788A1).

45.     The brochure summarizes that the GeneReader relies on a particular Sequencing-By-Synthesis (SBS) technology, which "involves a 3 step process: extend, measure, and cleave." ("the GeneReader SBS method").   Ex. 42 (GeneReader Brochure) at 8.   The GeneReader webpage "Product Details" section and the user manual provide greater detail.   Under the heading "Principle," both of these publications confirm that the GeneReader uses sequencing-by-synthesis and further detail the sequencing method carried out by the GeneReader:

> The GeneReader sequencing chemistry consists of a unique terminator-dNTP *sequencing-by-synthesis paradigm* that ensures highly accurate and cost-effective NGS runs . . . To read out the sequence of each of the beads, the array of fragments is first subjected to reagents containing uniquely engineered DNA bases that include a removable fluorescent dye and an end cap. These bases attach themselves to the end of the growing strand of DNA in accordance with the base on the complementary strand. The array is scanned by a high-resolution electronic camera and the fluorescent output of each of the four dye colors at each array position is measured and recorded. The color indicates which base (A, C, G or T) was incorporated onto the DNA fragment from the previous step. Finally, the array is exposed to cleavage chemistry to break off the fluorescent dye and end cap that will then allow additional bases to be added. This cycle is then repeated on the GeneReader.

Ex. 45 (GeneReader website); Ex. 3 (GeneReader user manual) at 20.

46.     The description of the GeneReader technology in Qiagen's 2015 patent publication confirms that the GeneReader utilizes this method of labeling nucleotides as part of the sequencing-by-synthesis process:

1
2
3
4
5
6

"sequencing templates are first clonally amplified on a solid surface (such as beads) to generate hundreds of thousands of identical copies for each individual sequencing template…, denaturized to generate single-stranded sequencing templates, hybridized with sequencing primer, and then immobilized on the flow cell. The immobilized sequencing templates are then subjected to a nucleotide incorporation reaction in a reaction mix that includes modified nucleotides with a cleavable 3′ blocking group that enables the incorporation and **specific fluorescent labels that enables detection of only one specific nucleotide onto each sequencing template in each cycle**; a thermostable polymerase that works with such modified nucleotides, and suitable reaction buffer."

7

Ex. 44 ¶ [0011].

8
9
10
11
12
13
14
15

47.     To demonstrate how Qiagen infringes at least claims 1-6 and 8 of the '537 patent with the GeneReader, attached as Exhibit 49 is a preliminary and exemplary claim chart.  This chart is not intended to limit Plaintiffs' right to modify this chart or any other claim chart or allege that other activities of Qiagen infringe the identified claims or any other claims of the '537 patent, '200 patent,  or any other patents.  Exhibit 49 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 49 that is mapped to Qiagen's GeneReader product shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

16
17
18
19
20
21
22
23

48.     To demonstrate how Qiagen infringes at least claims 1-2, 4-12, and 14-19 of the '200 patent with the GeneReader, attached as Exhibit 50 is a preliminary and exemplary claim chart.  This chart is not intended to limit Plaintiffs' right to modify this chart or any other claim chart or allege that other activities of Qiagen infringe the identified claims or any other claims of the '200 patent, '537 patent, or any other patents.  Exhibit 50 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 50 that is mapped to Qiagen's GeneReader product shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

24
25
26
27

49.     On information and belief, Defendants have and continue to directly infringe pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, at least claims 1-6 and 8 of the '537 patent and at least claims 1-2, 4-12, and 14-19 of the '200 patent by using the GeneReader within the United States.  Defendants have used the GeneReader in the United States

28

1   as part of the launch of the GeneReader, specifically in connection with research, development,

2   and testing activities related to the product.  Defendants also use the GeneReader in the United

3   States whenever they install a GeneReader at a United States facility.

4        50.    On information and belief, Defendants have and continue to induce infringement

5   by their customers pursuant to 35 U.S.C. § 271(b).   Defendants' customers directly infringe at

6   least claims 1-6 and 8 of the '537 patent and at least claims 1-2, 4-12, and 14-19 of the '200 patent

7   when they use the GeneReader.  Defendants actively induce infringement by controlling sales of

8   the GeneReader itself, by providing materials or apparatus that comprise the GeneReader system,

9   including for example the sample preparation device GeneRead QIACube, and by providing

10  GeneReader promotional and marketing materials, the GeneReader User Manual, other technical

11  literature, and bioinformatics software platforms.

12       51.    On information and belief, Defendants have and continue to contribute to

13  infringement by their customers pursuant to 35 U.S.C. § 271(c).  Defendants' customers directly

14  infringe at least claims 1-6 and 8 of the '537 patent and at least claims 1-2, 4-12, and 14-19 of the

15  '200 patent when they use the GeneReader.  Defendants contribute to infringement by offering to

16  sell, selling within the United States, or importing into the United States materials and apparatus

17  for use with in practicing claims 1-6 and 8 of the '537 patent and at least claims 1-2, 4-12, and 14-

18  19 of the '200 patent, including for example the GeneReader itself, GeneReader reagent kits, and

19  the GeneReader QIACube.

20  **COUNT I**

21  **Infringement of U.S. Patent No. 7,566,537**

22       52.    Illumina re-alleges and incorporates by this reference the allegations contained in

23  paragraphs 1 through 51 above as relevant to this count.

24       53.    On information and belief, Defendants' customers have and continue to directly

25  infringe, literally or by equivalence, claims 1-6 and 8 the '537 patent by practicing one or more

26  claims of the '537 patent by using the Qiagen GeneReader product.  The following specific

27

28

allegations detail the acts of direct, induced and contributory infringement by each named defendant.

**QIAGEN N.V.'s Infringement of the '537 Patent**

54.     QIAGEN N.V. has had knowledge of the '537 patent since at least December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s sub-subsidiary IBS, Inc. in patent litigation in the United States District Court for the District of Delaware.

55.     QIAGEN N.V. was subsequently a real party in interest in an unsuccessful attempt to invalidate the '537 patent in *inter partes* review.

Direct Infringement By QIAGEN N.V.

56.     On information and belief, QIAGEN N.V. has directly infringed and continues to directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using the GeneReader within the United States.  Specifically, on information and belief, QIAGEN N.V. has used the GeneReader in the United States in connection with research, development, and testing activities related to the launch of the GeneReader.  On information and belief, QIAGEN N.V. also uses the GeneReader in the United States as part of QIAGEN N.V.'s role in installing GeneReaders at locations in the United States.

Induced Infringement by QIAGEN N.V.

57.     On information and belief, QIAGEN N.V. is liable for their induced infringement of the '537 patent pursuant to 35 U.S.C. § 271 (b).  Specifically, QIAGEN N.V. has actively, knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims 1-6 and 8 of the '537 patent through a range of activities related to the NGS GeneReader System, as detailed in paragraphs 58 through 63.

58.     First, on information and belief, QIAGEN N.V. has induced infringement by controlling the design, manufacture and sale of the GeneReader with the knowledge and specific intent that customers will use the GeneReader to infringe by performing the claimed method of labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN N.V. has controlled the design, manufacture, and sale of the GeneReader such that the GeneReader is sold

1   with pre-programmed software protocols that control operation of the GeneReader so that

2   customers are given the sole option of operating the GeneReader in a manner that infringes.

3       59.     Second, on information and belief, QIAGEN N.V. has induced infringement by

4   controlling the design, manufacture and sale and/or selling materials or apparatus to be used with

5   the NGS GeneReader System, including for example the GeneRead QIACube, with the

6   knowledge and specific intent that customers will use these products to infringe by performing the

7   claimed method of labeling a nucleic acid molecule.  For example, on information and belief,

8   QIAGEN N.V. CEO Peer Schatz traveled to the Northern District of California to promote the

9   GeneReader, and during his presentation used a slide to promote the various GeneReader-specific

10   apparatus such as the GeneRead QIACube.  *See supra* ¶¶ 9, 29-35.

11       60.     Third, on information and belief, QIAGEN N.V. has induced infringement by

12   controlling the design, manufacture and sale and/or selling various GeneReader reagent kits

13   (which use specialized labeled nucleotides), including for example the GeneRead Sequencing

14   Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that

15   customers will use these products to infringe by performing the claimed method of labeling a

16   nucleic acid molecule.  *See supra* ¶¶ 9, 29-35.

17       61.     Fourth, on information and belief, QIAGEN N.V. has induced infringement by

18   disseminating promotional and marketing materials relating to the GeneReader with the

19   knowledge and specific intent that customers will use the GeneReader to infringe by performing

20   the claimed method for labeling a nucleic acid molecule.  For example, on information and belief,

21   QIAGEN N.V. is responsible for several press releases related to the GeneReader, including one

22   related to the launch and one announcing that the GeneReader had won a product design award.

23   *See supra* ¶¶ 9, 29-35.   Additionally, on information and belief, QIAGEN N.V. executives

24   traveled from Europe to the United States for the launch of the GeneReader.  *See supra* ¶¶ 9, 29-

25   35.  As another example, on information and belief, QIAGEN N.V. is responsible for proactively

26   marketing the GeneReader through, for instance, a website specifically devoted to the

27   GeneReader.  This website references the brand without reference to a specific Qiagen entity: the

28

1   GeneReader NGS System is "brought to you by a name that's synonymous with expertise and

2   service: **QIAGEN.**   Together we can deliver on the promise of NGS and create value for your

3   clinical research lab." *See supra* ¶¶ 9, 29-35, 36.

4       62.   Fifth, on information and belief, QIAGEN N.V. has induced infringement by

5   creating distribution channels for the aforementioned GeneReader, materials and apparatus for use

6   with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and

7   specific intent that its customers will use these products to infringe by performing the claimed

8   method for labeling a nucleic acid molecule. *See supra* ¶¶ 9, 29-35.

9       63.   Finally, on information and belief, QIAGEN N.V. has induced infringement by

10  distributing other instructional materials, product manuals, technical materials, and bioinformatics

11  software platforms with the knowledge and the specific intent to encourage and facilitate the

12  infringing sale and use of their GeneReader product.   For example, on information and belief,

13  QIAGEN N.V. is responsible for the GeneReader User Manual(s), the various reagent kit manuals,

14  technical handbooks, product detail sheets, and technical specification sheets, all of which are

15  available on the Qiagen website.   *See supra* ¶ 9, 29-35.   On information and belief, these

16  materials direct customers to use the GeneReader and related products in an infringing manner.

17  For example, the GeneReader reagent kit handbooks state that the kits are for preparation of DNA

18  sequencing using the GeneReader, which on information and belief is sold with pre-programmed

19  software protocols that control operation of the GeneReader so that each use of the GeneReader

20  infringes.   By providing reagent kits and directing customers to purchase these reagent kits for use

21  on the GeneReader, QIAGEN N.V. induces infringement.

22      64.   On information and belief, QIAGEN N.V. acted with knowledge that the induced

23  acts constitute infringement.   On information and belief, QIAGEN N.V. acted with knowledge of

24  or willful blindness with regards to its customers' underlying infringement.   On information and

25  belief, employees of QIAGEN N.V. know of or are willfully blind with regards to the structure of

26  the nucleotides used in the GeneReader and GeneReader reagent kits.   Also on information and

27

28

1  belief, employees of QIAGEN N.V. know of or are willfully blind with regards to the method that

2  the GeneReader uses to sequence DNA.

3      Contributory Infringement By QIAGEN N.V.

4      65.    On information and belief, QIAGEN N.V. is liable for contributory infringement of

5  the '537 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and belief, QIAGEN

6  N.V. has contributed to, or has threatened to contribute to, the infringement by its customers of the

7  '537 patent by, without authority, selling and offering to sell within the United States materials

8  and apparatuses for practicing the claimed invention of the '537 patent, including at least the

9  GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized

10  labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the

11  GeneRead Sequencing Q Kits.  *See supra* ¶¶ 9, 29-35.  The aforementioned products, which are at

12  least in part supplied and/or supported by QIAGEN N.V., constitute a material part of the claimed

13  invention of the '537 patent.   The allegations in paragraph 66 also support this allegation of

14  contributory infringement.

15      66.    On information and belief, QIAGEN N.V. knows that the GeneReader, materials

16  and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute

17  material parts of the inventions of the '537 patent and that they are not a staple article or

18  commodity of commerce suitable for substantial non-infringing use.  As documented above, the

19  GeneReader is a specialized sequencing instrument that carries out a specific method for

20  sequencing DNA using specific labeled nucleotides.   As such, neither the GeneReader, the

21  materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader

22  reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN

23  N.V. knows that the GeneReader, the materials or apparatus specifically designed for use with the

24  GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce

25  suitable for substantial non-infringing use because these products have no use apart from

26  infringing the '537 patent.

27

28

1          Other Aspects Of Infringement By QIAGEN N.V.

2          67.     On information and belief, QIAGEN N.V.'s infringement has been willful and

3    deliberate since, at least, December 21, 2012, the date on which QIAGEN N.V. subsidiary IBS

4    was served with a complaint alleging infringement of the '537 patent.

5          68.     On information and belief, QIAGEN N.V. acted despite an objectively high

6    likelihood that its actions constituted infringement of a valid patent and the objectively-defined

7    risk was known or so obvious that it should have been known to QIAGEN N.V.  On information

8    and belief, QIAGEN N.V. has demonstrated knowledge of or willful blindness towards its

9    infringement because QIAGEN N.V. employees know of or are willfully blind with regards to the

10   structure of the nucleotides used in the GeneReader and GeneReader reagent kits.   Also on

11   information and belief, employees of QIAGEN N.V. know of or are willfully blind with regards to

12   the method that the GeneReader uses to sequence DNA.

13         69.     On information and belief, QIAGEN N.V. also lacks an objectively reasonable

14   defense to its infringement.  On information and belief, QIAGEN N.V. is aware that the PTAB

15   and Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen

16   subsidiary IBS. On information and belief, QIAGEN N.V. is aware that the PTAB rejected IBS'

17   invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit

18   on May 9, 2016.

19         70.     QIAGEN N.V.'s infringement of the '537 patent has injured Illumina in its

20   business and property rights. Illumina is entitled to recovery of monetary damages for such

21   injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

22         71.     QIAGEN N.V.'s infringement of the '537 patent has caused irreparable harm to

23   Illumina and will continue to cause such harm unless and until their infringing activities are

24   enjoined by this Court.

25

26

27

28

1       **QIAGEN GmbH's Infringement of the '537 Patent**

2       72.     QIAGEN GmbH has had knowledge of the '537 patent since at least December 21,

3   2012, the date Illumina asserted the '537 patent against Qiagen subsidiary IBS in patent litigation

4   in the United States District Court for the District of Delaware.

5       73.     QIAGEN GmbH is in privy with IBS, which unsuccessfully attempted to invalidate

6   the '537 patent in *inter partes* review.

7       Direct Infringement By QIAGEN GmbH

8       74.     On information and belief, QIAGEN GmbH has directly infringed and continues to

9   directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of

10  equivalents, by using the GeneReader within the United States.  Specifically, on information and

11  belief, QIAGEN GmbH has used the GeneReader in the United States in connection with research,

12  development, and testing activities related to the launch of the GeneReader.  On information and

13  belief, QIAGEN GmbH also uses the GeneReader in the United States as part of QIAGEN

14  GmbH's role in installing GeneReaders at locations in the United States.

15      Induced Infringement By QIAGEN GmbH

16      75.     On information and belief, QIAGEN GmbH is liable for their induced infringement

17  of the '537 patent pursuant to 35 U.S.C. § 271 (b).  Specifically, QIAGEN GmbH has actively,

18  knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims

19  1-6 and 8 of the '537 patent through a range of activities, detailed in paragraphs 76 through 81,

20  related to the GeneReader.

21      76.     First, on information and belief, QIAGEN GmbH has induced infringement by

22  controlling the design, manufacture and sale of the GeneReader with the knowledge and specific

23  intent that customers will use the GeneReader to infringe by performing the claimed method of

24  labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN GmbH is the

25  "legal manufacturer" of the GeneReader.  *See supra* ¶ 10.  On information and belief, QIAGEN

26  GmbH controls the website on which GeneReader is marketed and sold.  *See id.*

27

28

77.     Second, on information and belief, QIAGEN GmbH has induced infringement by controlling the design, manufacture and sale and/or selling materials or apparatus to be used with the NGS GeneReader System, including for example the GeneRead QIACube, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.   For example, on information and belief, QIAGEN GmbH is the "legal manufacturer" of the GeneReader.  *See supra* ¶ 10.  On information and belief, QIAGEN GmbH controls the website on which GeneReader is marketed and sold.  *See id*.

78.     Third, on information and belief, QIAGEN GmbH has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN GmbH is the "legal manufacturer" of the GeneReader.  *See supra* ¶ 10.  On information and belief, QIAGEN GmbH controls the website on which GeneReader is marketed and sold.  *See id*.

79.     Fourth, on information and belief, QIAGEN GmbH has induced infringement by its customers by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  On information and belief, QIAGEN GmbH controls the website that hosts all of Qiagen's GeneReader promotional and marketing materials.  *See supra* ¶ 10.

80.     Fifth, on information and belief, QIAGEN GmbH has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN

1   GmbH has created distribution channels for the GeneReader through its control of the website on

2   which these Qiagen products are sold.  *See supra* ¶ 10.

3        81.   Finally, on information and belief, QIAGEN GmbH has induced infringement by

4   distributing other instructional materials, product manuals, technical materials, and bioinformatics

5   software platforms with the knowledge and the specific intent to encourage and facilitate the

6   infringing sale and use of their GeneReader product.  For example, on information and belief,

7   QIAGEN GmbH controls the website that hosts *inter alia* the GeneReader User Manual(s), the

8   various reagent kit manuals, technical handbooks, product detail sheets, and technical specification

9   sheets.  *See supra* ¶ 10.  On information and belief, QIAGEN GmbH publishes the user manuals

10  and handbooks for the GeneReader and GeneReader reagent kits.  *See supra id.*  On information

11  and belief, these materials direct customers to use the GeneReader and GeneReader reagent kits in

12  an infringing manner.  For example, the handbooks to the GeneReader reagent kits state that the

13  kits are for preparation of DNA sequencing using the GeneReader, which on information and

14  belief is sold with pre-programmed software protocols that control operation of the GeneReader so

15  that each use of the GeneReader infringes.  By providing reagent kits and directing customers to

16  purchase these reagent kits for use on the GeneReader, QIAGEN GmbH induces infringement.

17       82.   On information and belief, QIAGEN GmbH acted with knowledge that the induced

18  acts constitute infringement.  On information and belief, QIAGEN GmbH acted with knowledge

19  of or willful blindness with regards to its customers' underlying infringement.  On information and

20  belief, employees of QIAGEN GmbH know of or are willfully blind with regards to the structure

21  of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and

22  belief, employees of QIAGEN GmbH know of or are willfully blind with regards to the method

23  that the GeneReader uses to sequence DNA.

24      Contributory Infringement By QIAGEN GmbH

25       83.   On information and belief, QIAGEN GmbH is liable for contributory infringement

26  of the '537 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and belief,

27  QIAGEN GmbH has contributed to, or has threatened to contribute to, the infringement by its

28

---

**FIRST SUPPLEMENTAL COMPLAINT FOR PATENT INFRINGEMENT**   33   Case No. 3:16-cv-02788-WHA

customers of the '537 patent by, without authority, selling and offering to sell within the United States materials and apparatuses for practicing the claimed invention of the '537 patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶ 10.  The aforementioned products, which are at least in part supplied and/or supported by QIAGEN GmbH, constitute a material part of the claimed invention of the '537 patent.  The allegations in paragraph 84 also are hereby incorporated by reference and further elaborate on this contributory infringement allegation.

84.     On information and belief, QIAGEN GmbH knows that the GeneReader, materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute material parts of the inventions of the '537 patent and that they are not a staple article or commodity of commerce suitable for substantial non-infringing use.  As documented above, the GeneReader is a specialized sequencing instrument that carries out a specific method for sequencing DNA using specific labeled nucleotides.  As such, neither the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN GmbH knows that the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce suitable for substantial non-infringing use because these products have no use apart from infringing the '537 patent.

Other Aspects Of Infringement By QIAGEN GmbH

85.     On information and belief, QIAGEN GmbH's infringement has been willful and deliberate since, at least, December 21, 2012, the date on which a Qiagen subsidiary was served with a complaint alleging infringement of the '537 patent.

86.     On information and belief, QIAGEN GmbH acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and the objectively-defined risk was known or so obvious that it should have been known to QIAGEN GmbH.   On

1   information and belief, QIAGEN GmbH has demonstrated knowledge of or willful blindness

2   towards its infringement because QIAGEN GmbH employees know of or are willfully blind with

3   regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.

4   Also on information and belief, employees of QIAGEN GmbH know of or are willfully blind with

5   regards to the method that the GeneReader uses to sequence DNA.

6       87.     On information and belief, QIAGEN GmbH also lacks an objectively reasonable

7   defense to its infringement.  On information and belief, QIAGEN GmbH is aware that the PTAB

8   and Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen

9   subsidiary IBS. On information and belief, QIAGEN GmbH is aware that the PTAB rejected IBS'

10  invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit

11  on May 9, 2016.

12      88.     QIAGEN GmbH's infringement of the '537 patent has injured Illumina in its

13  business and property rights. Illumina is entitled to recovery of monetary damages for such

14  injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

15      89.     QIAGEN GmbH's infringement of the '537 patent has caused irreparable harm to

16  Illumina and will continue to cause such harm unless and until their infringing activities are

17  enjoined by this Court.

18      **QIAGEN Gaithersburg, Inc.'s Infringement of the '537 Patent**

19      90.     QIAGEN Gaithersburg, Inc. ("QIAGEN Gaithersburg") has had knowledge of the

20  '537 patent since at least December 21, 2012, the date Illumina asserted the '537 patent against

21  QIAGEN N.V.'s U.S. sub-subsidiary IBS in patent litigation in the United States District Court for

22  the District of Delaware.

23      91.     QIAGEN Gaithersburg is in privy with IBS, which unsuccessfully attempted to

24  invalidate the '537 patent in *inter partes* review.

25      Direct Infringement By QIAGEN Gaithersburg

26      92.     On information and belief, QIAGEN Gaithersburg has directly infringed and

27  continues to directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the

28

1   doctrine of equivalents, by using the GeneReader within the United States.  Specifically, on

2   information and belief, QIAGEN Gaithersburg has used the GeneReader in the United States in

3   connection with research, development, and testing activities related to the launch of the

4   GeneReader.  *See supra* ¶ 10.  On information and belief, QIAGEN Gaithersburg also uses the

5   GeneReader in the United States as part of QIAGEN Gaithersburg's role in installing

6   GeneReaders at locations in the United States.

7                    Induced Infringement By QIAGEN Gaithersburg

8          93.     On information and belief, QIAGEN Gaithersburg is liable for their induced

9   infringement of the '537 patent pursuant to 35 U.S.C. § 271 (b).  Specifically, QIAGEN

10  Gaithersburg, Inc. has actively, knowingly, and intentionally induced, or has threatened to induce,

11  infringement of at least claims 1-6 and 8 of the '537 patent through a range of activities, detailed

12  in paragraphs 94 through 99, related to the GeneReader.

13         94.     First, on information and belief, QIAGEN Gaithersburg has induced infringement

14  by controlling the design, manufacture and sale of the GeneReader with the knowledge and

15  specific intent that customers will use the GeneReader to infringe by performing the claimed

16  method of labeling a nucleic acid molecule.  On information and belief, QIAGEN Gaithersburg is

17  responsible for substantial sales and marketing of Qiagen products, including the GeneReader.

18  *See supra* ¶ 11.   Upon information and belief, several senior-level Qiagen employees involved in

19  sales and marketing purport to reside in and around the QIAGEN Gaithersburg facilities.  *See id*.

20         95.     Second, on information and belief, QIAGEN Gaithersburg has induced

21  infringement by controlling the design, manufacture and sale and/or selling materials or apparatus

22  to be used with the NGS GeneReader System, including for example the GeneRead QIACube,

23  with the knowledge and specific intent that customers will use these products to infringe by

24  performing the claimed method of labeling a nucleic acid molecule.  On information and belief,

25  QIAGEN Gaithersburg is responsible for at least some sales of Qiagen products.  *See supra* ¶ 11.

26  On information and belief, several senior-level Qiagen employees involved in sales and marketing

27  purport to reside in and around the QIAGEN Gaithersburg facilities.  *See id.*

28

96.     Third, on information and belief, QIAGEN Gaithersburg has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  *See supra* ¶ 11.

97.     Fourth, on information and belief, QIAGEN Gaithersburg has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶ 11.

98.     Fifth, on information and belief, QIAGEN Gaithersburg has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶ 11.

99.     Finally, on information and belief, QIAGEN Gaithersburg, through its sales and marketing arms, has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product. *See supra* ¶ 11.   On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner.  For example, the GeneReader reagent kit handbooks state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes.  By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN Gaithersburg induces infringement.

100.    On information and belief, QIAGEN Gaithersburg acted with knowledge that the induced acts constitute infringement.   On information and belief, QIAGEN Gaithersburg acted with knowledge of or willful blindness with regards to its customers' underlying infringement.   On information and belief, employees of QIAGEN Gaithersburg know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits. Also on information and belief, employees of QIAGEN Gaithersburg know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

Contributory Infringement by QIAGEN Gaithersburg

101.    On information and belief, QIAGEN Gaithersburg is liable for contributory infringement of the '537 patent pursuant to 35 U.S.C. § 271(c).   Specifically, on information and belief, QIAGEN Gaithersburg has contributed to, or has threatened to contribute to, the infringement by its customers of the '537 patent by, without authority, selling and offering to sell within the United States materials and apparatuses for practicing the claimed invention of the '537 patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits.   *See supra* ¶ 11.   The aforementioned products, which are at least in part supplied and/or supported by QIAGEN Gaithersburg, constitute a material part of the claimed invention of the '537 patent.   The allegations in paragraph 102 also support this allegation of contributory infringement.

102.    On information and belief, QIAGEN Gaithersburg knows that the GeneReader, materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute material parts of the inventions of the '537 patent and that they are not a staple article or commodity of commerce suitable for substantial non-infringing use.   As documented above, the GeneReader is a specialized sequencing instrument that carries out a specific method for sequencing DNA using specific labeled nucleotides.   As such, neither the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader reagent kits are a staple article of commerce suitable for substantial non-infringing use.   QIAGEN

1   Gaithersburg knows that the GeneReader, the materials or apparatus specifically designed for use

2   with the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of

3   commerce suitable for substantial non-infringing use because these products have no use apart

4   from infringing the '537 patent.

5        Other Aspects Of Infringement By QIAGEN Gaithersburg

6        103.   On information and belief, QIAGEN Gaithersburg's infringement has been willful

7   and deliberate since at least December 21, 2012, the date on which a Qiagen subsidiary was served

8   with a complaint alleging infringement of the '537 patent.

9        104.   On information and belief, QIAGEN Gaithersburg acted despite an objectively high

10   likelihood that its actions constituted infringement of a valid patent and the objectively-defined

11   risk was known or so obvious that it should have been known to QIAGEN Gaithersburg.   On

12   information and belief, QIAGEN Gaithersburg has demonstrated knowledge of or willful

13   blindness towards its infringement because QIAGEN Gaithersburg employees know of or are

14   willfully blind with regards to the structure of the nucleotides used in the GeneReader and

15   GeneReader reagent kits.   Also on information and belief, employees of QIAGEN Gaithersburg

16   know of or are willfully blind with regards to the method that the GeneReader uses to sequence

17   DNA.

18        105.   On information and belief, QIAGEN Gaithersburg also lacks an objectively

19   reasonable defense to its infringement.   On information and belief, QIAGEN Gaithersburg is

20   aware that the PTAB and Federal Circuit both rejected challenges to the validity of the '537 patent

21   put forth by Qiagen subsidiary IBS.   On information and belief, QIAGEN Gaithersburg is aware

22   that the PTAB rejected IBS' invalidity positions on February 11, 2015, and that rejection was

23   confirmed by the Federal Circuit on May 9, 2016.

24        106.   QIAGEN Gaithersburg's infringement of the '537 patent has injured Illumina in its

25   business and property rights. Illumina is entitled to recovery of monetary damages for such

26   injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

27

28

107.    QIAGEN Gaithersburg's infringement of the '537 patent has caused irreparable harm to Illumina and will continue to cause such harm unless and until their infringing activities are enjoined by this Court.

**QIAGEN Sciences, LLC's Infringement of the '537 Patent**

108.    QIAGEN Sciences LLC ("QIAGEN Sciences") has had knowledge of the '537 patent since at least December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s sub-subsidiary IBS in patent litigation in the United States District Court for the District of Delaware.

109.    QIAGEN Sciences is in privy with IBS, which unsuccessfully attempted to invalidate the '537 patent in *inter partes* review.

Direct Infringement By QIAGEN Sciences

110.    On information and belief, QIAGEN Sciences has directly infringed and continues to directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using the GeneReader within the United States.  Specifically, on information and belief, QIAGEN Sciences has used the GeneReader in the United States in connection with research, development, and testing activities related to the launch of the GeneReader.   On information and belief, QIAGEN Sciences also uses the GeneReader in the United States as part of QIAGEN Sciences' role in installing GeneReaders at locations in the United States.

Induced Infringement by QIAGEN Sciences

111.    On information and belief, QIAGEN Sciences is liable for their induced infringement of the '537 patent pursuant to 35 U.S.C. § 271(b).  Specifically, QIAGEN Sciences has actively, knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims 1-6 and 8 of the '537 patent through a range of activities, detailed in paragraphs 112 through 117, related to the GeneReader.

112.    First, on information and belief, QIAGEN Sciences has induced infringement by controlling the design, manufacture and sale of the GeneReader with the knowledge and specific intent that customers will use the GeneReader to infringe by performing the claimed method of

labeling a nucleic acid molecule.  On information and belief, QIAGEN Sciences plays a role in sales and marketing of Qiagen products.  *See supra* ¶ 12.   On information and belief, several senior-level Qiagen employees involved in sales and marketing purport to reside in and around the QIAGEN Sciences facilities.  *See id*.

113.   Second, on information and belief, QIAGEN Sciences has induced infringement by controlling the design, manufacture and sale and/or selling materials or apparatus to be used with the NGS GeneReader System, including for example the GeneRead QIACube, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  *See supra* ¶ 12.  On information and belief, QIAGEN Sciences is responsible for at least some sales of Qiagen products.  *See id*.

114.   Third, on information and belief, QIAGEN Sciencees has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  *See supra* ¶ 12.

115.   Fourth, on information and belief, QIAGEN Sciences has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶ 12.

116.   Fifth, on information and belief, QIAGEN Sciences has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶ 12.

117.   Finally, on information and belief, QIAGEN Sciences has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics

1   software platforms with the knowledge and the specific intent to encourage and facilitate the

2   infringing sale and use of their GeneReader product.  *See supra* ¶ 12.  On information and belief,

3   these materials direct customers to use the GeneReader and related products in an infringing

4   manner.  For example, the GeneReader reagent kit manuals state that the kits are for preparation of

5   DNA sequencing using the GeneReader, which on information and belief is sold with pre-

6   programmed software protocols that control operation of the GeneReader so that each use of the

7   GeneReader infringes.   By providing reagent kits and directing customers to purchase these

8   reagent kits for use on the GeneReader, QIAGEN Sciences induces infringement.

9        118.   On information and belief, QIAGEN Sciences acted with knowledge that the

10   induced acts constitute infringement.  On information and belief, QIAGEN Sciences. acted with

11   knowledge of or willful blindness with regards to its customers' underlying infringement.   On

12   information and belief, employees of QIAGEN Sciences know of or are willfully blind with

13   regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.

14   Also on information and belief, employees of QIAGEN Sciences know of or are willfully blind

15   with regards to the method that the GeneReader uses to sequence DNA.

16        <u>Contributory Infringement by QIAGEN Sciences</u>

17        119.   On information and belief, QIAGEN Sciences is liable for contributory

18   infringement of the '537 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and

19   belief, QIAGEN Sciences has contributed to, or has threatened to contribute to, the infringement

20   by its customers of the '537 patent by, without authority, selling and offering to sell within the

21   United States materials and apparatuses for practicing the claimed invention of the '537 patent,

22   including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits

23   (which use specialized labeled nucleotides), including for example the GeneRead Sequencing

24   Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶ 12.  The aforementioned

25   products, which are at least in part supplied and/or supported by QIAGEN Sciences, constitute a

26   material part of the claimed invention of the '537 patent.  The allegations in paragraph 120 also

27   support this allegation of contributory infringement.

28

1        120.   On information and belief, QIAGEN Sciences knows that the GeneReader,

2   materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits,

3   constitute material parts of the inventions of the '537 patent and that they are not a staple article or

4   commodity of commerce suitable for substantial non-infringing use.  As documented above, the

5   GeneReader is a specialized sequencing instrument that carries out a specific method for

6   sequencing DNA using specific labeled nucleotides.   As such, neither the GeneReader, the

7   materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader

8   reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN

9   Sciences knows that the GeneReader, the materials or apparatus specifically designed for use with

10  the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of

11  commerce suitable for substantial non-infringing use because these products have no use apart

12  from infringing the '537 patent.

13        Other Aspects Of Infringement By QIAGEN Sciences

14        121.   On information and belief, QIAGEN Sciences' infringement has been willful and

15  deliberate since at least December 21, 2012, the date on which a Qiagen subsidiary was served

16  with a complaint alleging infringement of the '537 patent.

17        122.   On information and belief, QIAGEN Sciences acted despite an objectively high

18  likelihood that its actions constituted infringement of a valid patent and the objectively-defined

19  risk was known or so obvious that it should have been known to QIAGEN Sciences.   On

20  information and belief, QIAGEN Sciences has demonstrated knowledge of or willful blindness

21  towards its infringement because QIAGEN Sciences employees know of or are willfully blind

22  with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent

23  kits.  Also on information and belief, employees of QIAGEN Sciences know of or are willfully

24  blind with regards to the method that the GeneReader uses to sequence DNA.

25        123.   On information and belief, QIAGEN Sciences also lacks an objectively reasonable

26  defense to its infringement.  On information and belief, QIAGEN Sciences is aware that the PTAB

27  and Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen

28

1    subsidiary IBS.  On information and belief, QIAGEN Sciences is aware that the PTAB rejected

2    IBS' invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal

3    Circuit on May 9, 2016.

4         124.    QIAGEN Sciences' infringement of the '537 patent has injured Illumina in its

5    business and property rights. Illumina is entitled to recovery of monetary damages for such

6    injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

7         125.    QIAGEN Sciences' infringement of the '537 patent has caused irreparable harm to

8    Illumina and will continue to cause such harm unless and until their infringing activities are

9    enjoined by this Court.

10        **QIAGEN Inc.'s Infringement of the '537 Patent**

11        126.    QIAGEN Inc. (USA) ("QIAGEN Inc.") has had knowledge of the '537 patent since

12   at least December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s

13   sub-subsidiary IBS in patent litigation in the United States District Court for the District of

14   Delaware.

15        127.    QIAGEN Inc. is in privy with IBS, which unsuccessfully attempted to invalidate

16   the '537 patent in *inter partes* review.

17        Direct Infringement By QIAGEN Inc.

18        128.    On information and belief, QIAGEN Inc. has directly infringed and continues to

19   directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of

20   equivalents, by using the GeneReader within the United States.  Specifically, on information and

21   belief, QIAGEN Inc. has used the GeneReader in the United States in connection with research,

22   development, and testing activities related to the launch of the GeneReader.  On information and

23   belief, QIAGEN Inc. also uses the GeneReader in the United States as part of QIAGEN Inc.'s role

24   in installing GeneReaders at locations in the United States.

25        Induced Infringement By QIAGEN Inc.

26        129.    On information and belief, QIAGEN Inc. is liable for their induced infringement of

27   the '537 patent pursuant to 35 U.S.C. § 271 (b).  Specifically, QIAGEN Inc. has actively,

28

1    knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims

2    1-6 and 8 of the '537 patent through a range of activities, detailed in paragraphs 130 through 135,

3    related to the GeneReader.

4         130.   First, on information and belief, QIAGEN Inc. has induced infringement by

5    controlling the design, manufacture and sale of the GeneReader with the knowledge and specific

6    intent that customers will use the GeneReader to infringe by performing the claimed method of

7    labeling a nucleic acid molecule.   On information and belief, QIAGEN Inc. takes orders of the

8    GeneReader through the GeneReader website.   *See supra* ¶ 13.   On information and belief,

9    employees of Qiagen working in and around Valencia, California, the principal place of business

10   of QIAGEN Inc., provide customer support to customers that purchase Qiagen products.   *See id*.

11   For example, Mr. Kiran Shetty, Vice President of Technical Customer Support Americas, purports

12   to have overall "management responsibilities for Technical Service, Dispatch and Service

13   Administration, Field Service" for North America.  *See id*.

14        131.   Second, on information and belief, QIAGEN Inc. has induced infringement by

15   controlling the design, manufacture and sale and/or selling materials or apparatus to be used with

16   the NGS GeneReader System, including for example the GeneRead QIACube, with the

17   knowledge and specific intent that customers will use these products to infringe by performing the

18   claimed method of labeling a nucleic acid molecule.   For example, on information and belief,

19   QIAGEN Inc. takes customer orders for products like the GeneRead QIACube through the

20   GeneReader website.  *See supra* ¶ 13.   On information and belief, employees of Qiagen working

21   in and around Valencia, California, the principal place of business of QIAGEN Inc., provide

22   customer support to customers that purchase Qiagen products.   *See id*.   For example, Mr. Kiran

23   Shetty, Vice President of Technical Customer Support Americas, purports to have overall

24   "management responsibilities for Technical Service, Dispatch and Service Administration, Field

25   Service" for North America.  *See id*.

26        132.   Third, on information and belief, QIAGEN Inc. has induced infringement by

27   controlling the design, manufacture and sale and/or selling various GeneReader reagent kits

28

(which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule. *See supra* ¶ 13. On information and belief, QIAGEN Inc. takes orders of GeneReader reagent kits, including the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, through the GeneReader website. *See id*. On information and belief, employees of Qiagen working in and around Valencia, California, the principal place of business of QIAGEN Inc., provide customer support to customers that purchase Qiagen products. *See id*. For example, Mr. Kiran Shetty, Vice President of Technical Customer Support Americas, purports to have overall "management responsibilities for Technical Service, Dispatch and Service Administration, Field Service" for North America. *See id*.

133. Fourth, on information and belief, QIAGEN Inc. has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule. *See supra* ¶ 13.

134. Fifth, on information and belief, QIAGEN Inc. has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule. *See supra* ¶ 13.

135. Finally, on information and belief, QIAGEN Inc. has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product. On information and belief, QIAGEN Inc. employees provide direct customer support, likely to include the distribution of technical materials, for the use of Qiagen products. *See supra* ¶ 13. On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner.

1 For example, the GeneReader reagent kit manuals state that the kits are for preparation of DNA

2 sequencing using the GeneReader, which on information and belief is sold with pre-programmed

3 software protocols that control operation of the GeneReader so that each use of the GeneReader

4 infringes.  By providing reagent kits and directing customers to purchase these reagent kits for use

5 on the GeneReader, QIAGEN Inc. induces infringement.

6       136.    On information and belief, QIAGEN Inc. acted with knowledge that the induced

7 acts constitute infringement.  On information and belief, QIAGEN Inc. acted with knowledge of or

8 willful blindness with regards to its customers' underlying infringement.  On information and

9 belief, employees of QIAGEN Inc. know of or are willfully blind with regards to the structure of

10 the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and

11 belief, employees of QIAGEN Inc. know of or are willfully blind with regards to the method that

12 the GeneReader uses to sequence DNA.

13       <u>Contributory Infringement by QIAGEN Inc.</u>

14       137.    On information and belief, QIAGEN Inc. is liable for contributory infringement of

15 the '537 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and belief, QIAGEN

16 Inc. has contributed to, or has threatened to contribute to, the infringement by its customers of the

17 '537 patent by, without authority, selling and offering to sell within the United States materials

18 and apparatuses for practicing the claimed invention of the '537 patent, including at least the

19 GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized

20 labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the

21 GeneRead Sequencing Q Kits.  *See supra* ¶ 13.  The aforementioned products, which are at least

22 in part supplied and/or supported by QIAGEN Inc., constitute a material part of the claimed

23 invention of the '537 patent.  The allegations in paragraph 138 also support this allegation of

24 contributory infringement.

25       138.    On information and belief, QIAGEN Inc. knows that the GeneReader, materials

26 and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute

27 material parts of the inventions of the '537 patent and that they are not a staple article or

28

1   commodity of commerce suitable for substantial non-infringing use.  As documented above, the

2   GeneReader is a specialized sequencing instrument that carries out a specific method for

3   sequencing DNA using specific labeled nucleotides.  As such, neither the GeneReader, the

4   materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader

5   reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN

6   Inc. knows that the GeneReader, the materials or apparatus specifically designed for use with the

7   GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce

8   suitable for substantial non-infringing use because these products have no use apart from

9   infringing the '537 patent.

10          Other Aspects Of Infringement By QIAGEN Inc.

11        139.   On information and belief, QIAGEN Inc.'s infringement has been willful and

12   deliberate since at least December 21, 2012, the date on which a Qiagen subsidiary was served

13   with a complaint alleging infringement of the '537 patent.

14        140.   On information and belief, QIAGEN Inc. acted despite an objectively high

15   likelihood that its actions constituted infringement of a valid patent and the objectively-defined

16   risk was known or so obvious that it should have been known to QIAGEN Inc.  On information

17   and belief, QIAGEN Inc. has demonstrated knowledge of or willful blindness towards its

18   infringement because QIAGEN Inc. employees know of or are willfully blind with regards to the

19   structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on

20   information and belief, employees of QIAGEN Inc. know of or are willfully blind with regards to

21   the method that the GeneReader uses to sequence DNA.

22        141.   On information and belief, QIAGEN Inc. also lacks an objectively reasonable

23   defense to its infringement.  On information and belief, QIAGEN Inc. is aware that the PTAB and

24   Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen

25   subsidiary IBS.  On information and belief, QIAGEN Inc. is aware that the PTAB rejected IBS'

26   invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit

27   on May 9, 2016.

28

1     142.    QIAGEN Inc.'s infringement of the '537 patent has injured Illumina in its business
2 and property rights. Illumina is entitled to recovery of monetary damages for such injuries
3 pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

4     143.    QIAGEN Inc.'s infringement of the '537 patent has caused irreparable harm to
5 Illumina and will continue to cause such harm unless and until their infringing activities are
6 enjoined by this Court.

7        **QIAGEN Redwood City Inc.'s Infringement of the '537 Patent**

8     144.    QIAGEN Redwood City Inc. ("QIAGEN Redwood City") has had knowledge of
9 the '537 patent since at least December 21, 2012, the date Illumina asserted the '537 patent against
10 QIAGEN N.V.'s sub-subsidiary IBS in patent litigation in the United States District Court for the
11 District of Delaware.

12     145.    QIAGEN Redwood City is in privy with IBS, which unsuccessfully attempted to
13 invalidate the '537 patent in *inter partes* review.

14     Direct Infringement By QIAGEN Redwood City

15     146.    On information and belief, QIAGEN Redwood City has directly infringed and
16 continues to directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the
17 doctrine of equivalents, by using the GeneReader within the United States.  Specifically, on
18 information and belief, QIAGEN Redwood City has used the GeneReader in the United States in
19 connection with research, development, and testing activities related to the launch of the
20 GeneReader.  On information and belief, QIAGEN Redwood City also uses the GeneReader in the
21 United States as part of QIAGEN Redwood City's role in installing GeneReaders at locations in
22 the United States.

23     Induced Infringement by QIAGEN Redwood City Inc.

24     147.    On information and belief, QIAGEN Redwood City is liable for their induced
25 infringement of the '537 patent pursuant to 35 U.S.C. § 271 (b).  Specifically, QIAGEN Redwood
26 City has actively, knowingly, and intentionally induced, or has threatened to induce, infringement

27

28

1    of at least claims 1-6 and 8 of the '537 patent through a range of activities, detailed in paragraphs

2    148 through 153, related to the GeneReader.

3          148.    First, on information and belief, QIAGEN Redwood City has induced infringement

4    by controlling the design, manufacture and sale of the GeneReader with the knowledge and

5    specific intent that customers will use the GeneReader to infringe by performing the claimed

6    method of labeling a nucleic acid molecule.  On information and belief, QIAGEN Redwood City

7    employees purport to be involved in product development around and launch of the GeneReader.

8    *See supra* ¶¶ 14, 35.  For example and as documented above, Mr. Rupert Yip, Director Product

9    Management at QIAGEN Redwood City, purports that he participated in the "QIAGEN post

10   merger [*sic*] integration team **with a focus on GeneReader NGS platform**."  *See supra* ¶ 14.  Mr.

11   Kip also purports to be a member "of GeneReader Core Team **leading the platform's**

12   **development and go to market strategy**."  *Id*.  To provide another example, Mr. Kumar Bala,

13   whose title is Associate Director at QIAGEN, Molecular Diagnostics-NextGenSequencing, works

14   in Hercules, California, less than 50 miles from the QIAGEN Redwood City leased office space.

15   *See supra Id*.  Per Mr. Bala's LinkedIn page, he was integrally involved in coordinating "the

16   launch of the GeneReader NGS System."  *Id*.  On information and belief, QIAGEN Redwood

17   City, through individuals like Mr. Yip and Mr. Bala, executed product development and

18   commercial launch activities related to the GeneReader.

19         149.    Second, on information and belief, QIAGEN Redwood City has induced

20   infringement by controlling the design, manufacture and sale and/or selling materials or apparatus

21   to be used with the NGS GeneReader System, including for example the GeneRead QIACube,

22   with the knowledge and specific intent that customers will use these products to infringe by

23   performing the claimed method of labeling a nucleic acid molecule.  On information and belief,

24   QIAGEN Redwood City employees purport to be heavily involved in product development and

25   launch of the GeneReader NGS ***platform*** or ***system***, which includes the materials or apparatus to

26   be used with the GeneReader.  *See supra* ¶¶ 14, 35.  For example and as documented above, Mr.

27   Rupert Yip, Director Product Management at QIAGEN Redwood City, purported that he

28

participated in the "QIAGEN post merger [*sic*] integration team **with a focus on GeneReader NGS _platform_**." *See supra* ¶ 13.  Mr. Kip also purports to be a member "of GeneReader Core Team **leading the _platform_'s development and go to market strategy**." *Id.*  As another example, on information and belief, Mr. Kumar Bala, whose title is Associate Director at QIAGEN, Molecular Diagnostics-NextGenSequencing, works in Hercules, California, less than 50 miles from the QIAGEN Redwood City leased office space, and was heavily involved in development of the GeneReader system, i.e. the Genereader and the materials or apparatus to be used within the system.  *Id.*  Per Mr. Bala's LinkedIn page, he was integrally involved in coordinating "the launch of the GeneReader NGS **_System_**."  *Id.*  On information and belief, QIAGEN Redwood City, through individuals like Mr. Yip and Mr. Bala, has controlled the design, manufacture and sale of manufacture and apparatus to be used with NGS GeneReader System.

150.   Third, on information and belief, QIAGEN Redwood City has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  On information and belief, QIAGEN Redwood City employees purport to be heavily involved in product development and launch of the GeneReader NGS **_platform_** or **_system_**, which would include reagent kits.  *See supra* ¶¶ 14, 35.  Mr. Rupert Yip, Director Product Management at QIAGEN Redwood City, stated that he participated in the "QIAGEN post merger [*sic*] integration team **with a focus on GeneReader NGS _platform_**."  *See supra* ¶ 13.  Mr. Kip also purports to be a member "of GeneReader Core Team **leading the _platform_'s development and go to market strategy**".  *Id.*  On information and belief, QIAGEN Redwood City, through individuals like Mr. Yip, has been substantially involved in controlling the design, manufacture, and sale of various GeneReader reagent kits as part of its work on the NGS GeneReader System.

151.   Fourth, on information and belief, QIAGEN Redwood City has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶¶ 14, 35.

152.   Fifth, on information and belief, QIAGEN Redwood City has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶¶ 14, 35.

153.   Finally, on information and belief, QIAGEN Redwood City has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product. On information and belief, QIAGEN Redwood City is inextricably involved in distribution of other instructional materials, product manuals, and technical materials related to the GeneReader.  *See supra* ¶¶ 14, 35.  For example, Mr. Bala, who upon information and belief works at QIAGEN Redwood City, stated on his LinkedIn page that he "[l]ed the team in developing the training plan and organizing the training for the technical sales team." *See supra* ¶ 13.  On information and belief, through individuals like Mr. Bala, QIAGEN Redwood City has induced infringement through distributing instructional materials, product manuals, and other technical materials.  On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner.  For example, the GeneReader reagent kit manuals state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes.   By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN Redwood City induces infringement.

154.    On information and belief, QIAGEN Redwood City acted with knowledge that the induced acts constitute infringement.  On information and belief, QIAGEN Redwood City acted with knowledge of or willful blindness with regards to its customers' underlying infringement.  On information and belief, employees of QIAGEN Redwood City know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and belief, employees of QIAGEN Redwood City know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

<u>Contributory Infringement by QIAGEN Redwood City</u>

155.    On information and belief, QIAGEN Redwood City is liable for contributory infringement of the '537 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and belief, QIAGEN Redwood City has contributed to, or has threatened to contribute to, the infringement by its customers of the '537 patent by, without authority, selling and offering to sell within the United States materials and apparatuses for practicing the claimed invention of the '537 patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶¶ 14, 35.  The aforementioned products, which are at least in part supplied and/or supported by QIAGEN Redwood City, constitute a material part of the claimed invention of the '537 patent.  The allegations in paragraph 156 also support this allegation of contributory infringement.

156.    On information and belief, QIAGEN Redwood City knows that the GeneReader, materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute material parts of the inventions of the '537 patent and that they are not a staple article or commodity of commerce suitable for substantial non-infringing use.  As documented above, the GeneReader is a specialized sequencing instrument that carries out a specific method for sequencing DNA using specific labeled nucleotides.  As such, neither the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN

1  Redwood City knows that the GeneReader, the materials or apparatus specifically designed for use

2  with the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of

3  commerce suitable for substantial non-infringing use because these products have no use apart

4  from infringing the '537 patent.

5        Other Aspects Of Infringement By QIAGEN Redwood City

6       157.   On information and belief, QIAGEN Redwood City infringement has been willful

7  and deliberate since at least December 21, 2012, the date on which a Qiagen subsidiary was served

8  with a complaint alleging infringement of the '537 patent.

9       158.   On information and belief, QIAGEN Redwood City acted despite an objectively

10  high likelihood that its actions constituted infringement of a valid patent and the objectively-

11  defined risk was known or so obvious that it should have been known to QIAGEN Redwood City.

12  On information and belief, QIAGEN Redwood City has demonstrated knowledge of or willful

13  blindness towards its infringement because QIAGEN Redwood City employees know of or are

14  willfully blind with regards to the structure of the nucleotides used in the GeneReader and

15  GeneReader reagent kits.  Also on information and belief, QIAGEN Redwood City employees

16  know of or are willfully blind with regards to the method that the GeneReader uses to sequence

17  DNA.

18       159.   On information and belief, QIAGEN Redwood City also lacks an objectively

19  reasonable defense to its infringement.  On information and belief, QIAGEN Redwood City is

20  aware that the PTAB and Federal Circuit both rejected challenges to the validity of the '537 patent

21  put forth by Qiagen subsidiary IBS.  On information and belief, QIAGEN Redwood City is aware

22  that the PTAB rejected IBS' invalidity positions on February 11, 2015, and that rejection was

23  confirmed by the Federal Circuit on May 9, 2016.

24       160.   QIAGEN Redwood City's infringement of the '537 patent has injured Illumina in

25  its business and property rights. Illumina is entitled to recovery of monetary damages for such

26  injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

27

28

1    161.    QIAGEN Redwood City's infringement of the '537 patent has caused irreparable

2    harm to Illumina and will continue to cause such harm unless and until their infringing activities

3    are enjoined by this Court.

4    **Intelligent Bio-Systems, Inc.'s Infringement of the '537 Patent**

5    162.    Intelligent Bio-Systems, Inc. (IBS) has had knowledge of the '537 patent since at

6    least December 21, 2012, the date Illumina asserted the '537 patent against IBS in a patent

7    litigation in the United States District Court for the District of Delaware.   IBS unsuccessfully

8    attempted to invalidate the '537 patent in *inter partes* review.

9    Direct Infringement by IBS

10   163.    On information and belief, IBS has directly infringed and continues to directly

11   infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of

12   equivalents, by using the GeneReader within the United States.   Specifically, on information and

13   belief, IBS has used the GeneReader in the United States in connection with research,

14   development, and testing activities related to the launch of the GeneReader.   On information and

15   belief, IBS also uses the GeneReader in the United States as part of IBS' role in installing

16   GeneReaders at locations in the United States.

17   Induced Infringement by IBS

18   164.    On information and belief, IBS is liable for their induced infringement of the '537

19   patent pursuant to 35 U.S.C. § 271 (b).   Specifically, IBS   has actively, knowingly, and

20   intentionally induced, or has threatened to induce, infringement of at least claims 1-6 and 8 of the

21   '537 patent through a range of activities, detailed in paragraphs 165 through 170, related to the

22   GeneReader.

23   165.    First, on information and belief, IBS has induced infringement by controlling the

24   design, manufacture and sale of the GeneReader with the knowledge and specific intent that

25   customers will use the GeneReader to infringe by performing the claimed method of labeling a

26   nucleic acid molecule.   On information and belief, IBS is substantially involved in research and

27   development of QIAGEN's next-generation sequencing products. *See supra* ¶ 15.   On information

28

1  and belief, IBS owns trademark rights to the word mark "GeneReader."  *Id.*  On information and

2  belief, employees of Qiagen located in Waltham, Massachusetts, IBS' principal place of business,

3  work on projects related to the GeneReader.  *Id.*

4  166.  Second, on information and belief, IBS has induced infringement by controlling the

5  design, manufacture and sale and/or selling materials or apparatus to be used with the NGS

6  GeneReader System, including for example the GeneRead QIACube, with the knowledge and

7  specific intent that customers will use these products to infringe by performing the claimed

8  method of labeling a nucleic acid molecule.  On information and belief, IBS is substantially

9  involved in research and development of QIAGEN's next-generation sequencing products,

10  including materials and/or apparatus to be used with the GeneReader.  *See supra* ¶ 15.

11  167.  Third, on information and belief, IBS has induced infringement by controlling the

12  design, manufacture and sale and/or selling various GeneReader reagent kits (which use

13  specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit

14  and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will

15  use these products to infringe by performing the claimed method of labeling a nucleic acid

16  molecule.  *See supra* ¶ 15.  On information and belief, IBS is substantially involved in research

17  and development of QIAGEN's next-generation sequencing products including GeneReader

18  reagent kits.  *Id.*  On information and belief, IBS owns trademark rights to the word mark

19  "GeneReader," which is integrated into the product names for these reagent kits.  *Id.*

20  168.  Fourth, on information and belief, IBS has induced infringement by disseminating

21  promotional and marketing materials relating to the GeneReader with the knowledge and specific

22  intent that its customers will use the GeneReader to infringe by performing the claimed method for

23  labeling a nucleic acid molecule.  On information and belief, IBS employees, due to their role in

24  research and development of the GeneReader, are substantially involved in promoting the

25  GeneReader.  *See supra* ¶ 15.  Several integral members of the GeneReader launch purport to be

26  living in and around Waltham, Massachusetts, IBS' principal place of business.  *Id.*

27

28

169.    Fifth, on information and belief, IBS has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.   On information and belief, IBS employees have been substantially involved with the launch of, i.e. the creation of distribution channels for, the GeneReader.  *See supra* ¶ 15.

170.    Finally, on information and belief, IBS has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product. On information and belief and due to IBS' substantial role in research and development of Qiagen next-generation sequencing technologies, IBS is involved in the creation and/or distribution of other instructional materials, product manuals, and technical materials related to the GeneReader.  *See supra* ¶ 15.  On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner.   For example, the GeneReader reagent kit manuals state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes.  By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, IBS induces infringement.

171.    On information and belief, IBS acted with knowledge that the induced acts constitute infringement.   On information and belief, IBS acted with knowledge of or willful blindness with regards to its customers' underlying infringement.   On information and belief, employees of IBS know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and belief, employees of IBS know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

1    Contributory Infringement by IBS

2    172.    On information and belief, IBS is liable for contributory infringement of the '537

3    patent pursuant to 35 U.S.C. § 271(c).    Specifically, on information and belief, IBS has

4    contributed to, or has threatened to contribute to, the infringement by its customers of the '537

5    patent by, without authority, selling and offering to sell within the United States materials and

6    apparatuses for practicing the claimed invention of the '537 patent, including at least the

7    GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized

8    labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the

9    GeneRead Sequencing Q Kits.  *See supra* ¶ 15.  The aforementioned products, which are at least

10   in part supplied and/or supported by IBS, constitute a material part of the claimed invention of the

11   '537 patent.    The allegations in paragraph 173 also support this allegation of contributory

12   infringement.

13   173.    On information and belief, IBS knows that the GeneReader, materials and

14   apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute

15   material parts of the inventions of the '537 patent and that they are not a staple article or

16   commodity of commerce suitable for substantial non-infringing use.  As documented above, the

17   GeneReader is a specialized sequencing instrument that carries out a specific method for

18   sequencing DNA using specific labeled nucleotides.    As such, neither the GeneReader, the

19   materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader

20   reagent kits are a staple article of commerce suitable for substantial non-infringing use.    IBS

21   knows that the GeneReader, the materials or apparatus specifically designed for use with the

22   GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce

23   suitable for substantial non-infringing use because these products have no use apart from

24   infringing the '537 patent.

25

26

27

28

Other Aspects Of Infringement By IBS

174.    On information and belief, IBS' infringement has been willful and deliberate since at least December 21, 2012, the date on which IBS was served with a complaint alleging infringement of the '537 patent.

175.    On information and belief, IBS acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and the objectively-defined risk was known or so obvious that it should have been known to IBS.  On information and belief, IBS has demonstrated knowledge of or willful blindness towards its infringement because IBS employees know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and belief, IBS employees know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

176.    On information and belief, IBS also lacks an objectively reasonable defense to its infringement.  On information and belief, IBS is aware that the PTAB and Federal Circuit both rejected its challenges to the validity of the '537 patent that it put forth through IPR proceedings.  On information and belief, IBS is aware that the PTAB rejected its invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit on May 9, 2016.

177.    IBS' infringement of the '537 patent has injured Illumina in its business and property rights. Illumina is entitled to recovery of monetary damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

178.    IBS' infringement of the '537 patent has caused irreparable harm to Illumina and will continue to cause such harm unless and until their infringing activities are enjoined by this Court.

**COUNT II**

**Infringement of U.S. Patent No. 9,410,200**

179.    Illumina re-alleges and incorporates by this reference the allegations contained in paragraphs 1 through 51 above as relevant to this count.

1    180.   On information and belief, Defendants' customers have and continue to directly

2    infringe, literally or by equivalence, at least claims 1-2, 4-12, and 14-19 of the '200 patent by

3    practicing one or more claims of the '200 patent by using the Qiagen GeneReader product.  The

4    following specific allegations detail the acts of direct, induced, and contributory infringement by

5    each named defendant.

6        **QIAGEN N.V.'s Infringement of the '200 Patent**

7        181.   QIAGEN N.V. has had knowledge of the earlier-issued '537 patent since at least

8    December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s sub-

9    subsidiary IBS, Inc. in patent litigation in the United States District Court for the District of

10   Delaware.  The '200 patent is part of the same patent family as the '537 patent.  The '200 patent

11   shares the same specification as the '537 patent, and also like the '537 patent claims its earliest

12   priority to U.S. Patent Appl. No. 10/227,131, which was filed on August 23, 2002, and Great

13   Britain Patent Appl. No. 0129012.1, which was filed on December 4, 2001.  QIAGEN N.V. has

14   been on notice of the claims of the '200 patent at least since they first published as U.S. Patent

15   Publication No. 2016/0002719 on January 7, 2016.  On information and belief, QIAGEN N.V. has

16   had knowledge of the '200 patent at least since its date of issuance on August 9, 2016.

17       Direct Infringement By QIAGEN N.V.

18       182.   On information and belief, QIAGEN N.V. has directly infringed and continues to

19   directly infringe the '200 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of

20   equivalents, by using the GeneReader within the United States.  Specifically, on information and

21   belief, QIAGEN N.V. has used the GeneReader in the United States in connection with research,

22   development, and testing activities related to the launch of the GeneReader.  On information and

23   belief, QIAGEN N.V. also uses the GeneReader in the United States as part of QIAGEN N.V.'s

24   role in installing GeneReaders at locations in the United States.

25       Induced Infringement by QIAGEN N.V.

26       183.   On information and belief, QIAGEN N.V. is liable for their induced infringement

27   of the '200 patent pursuant to 35 U.S.C. § 271(b).  Specifically, QIAGEN N.V. has actively,

28

1    knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims

2    1-2, 4-12, and 14-19 of the '200 patent through a range of activities related to the NGS

3    GeneReader System, as detailed in paragraphs 184 through 189.

4         184.   First, on information and belief, QIAGEN N.V. has induced infringement by

5    controlling the design, manufacture and sale of the GeneReader with the knowledge and specific

6    intent that customers will use the GeneReader to infringe by performing the claimed method of

7    labeling a nucleic acid molecule. For example, on information and belief, QIAGEN N.V. has

8    controlled the design, manufacture, and sale of the GeneReader such that the GeneReader is sold

9    with pre-programmed software protocols that control operation of the GeneReader so that

10   customers are given the sole option of operating the GeneReader in a manner that infringes.

11        185.   Second, on information and belief, QIAGEN N.V. has induced infringement by

12   controlling the design, manufacture and sale and/or selling materials or apparatus to be used with

13   the NGS GeneReader System, including for example the GeneRead QIACube, with the

14   knowledge and specific intent that customers will use these products to infringe by performing the

15   claimed method of labeling a nucleic acid molecule.

16        186.   Third, on information and belief, QIAGEN N.V. has induced infringement by

17   controlling the design, manufacture and sale and/or selling various GeneReader reagent kits

18   (which use specialized labeled nucleotides), including for example the GeneRead Sequencing

19   Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that

20   customers will use these products to infringe by performing the claimed method of labeling a

21   nucleic acid molecule. *See supra* ¶¶ 9, 29-35.

22        187.   Fourth, on information and belief, QIAGEN N.V. has induced infringement by

23   disseminating promotional and marketing materials relating to the GeneReader with the

24   knowledge and specific intent that customers will use the GeneReader to infringe by performing

25   the claimed method for labeling a nucleic acid molecule. For example, on information and belief,

26   QIAGEN N.V. is responsible for several press releases related to the GeneReader, including one

27   related to the launch and one announcing that the GeneReader had won a product design award.

28

1   *See supra* ¶¶ 9, 29-35.  On information and belief, these press releases were made available by

2   QIAGEN N.V. online both on and after the issuance of the '200 Patent.  As another example, on

3   information and belief, QIAGEN N.V. is responsible for proactively marketing the GeneReader

4   through, for instance, a website specifically devoted to the GeneReader.  This website references

5   the brand without reference to a specific Qiagen entity: the GeneReader NGS System is "brought

6   to you by a name that's synonymous with expertise and service: ***QIAGEN.*** Together we can

7   deliver on the promise of NGS and create value for your clinical research lab."  *See supra* ¶¶ 9,

8   29-35, 36.

9        188.    Fifth, on information and belief, QIAGEN N.V. has induced infringement by

10   creating distribution channels for the aforementioned GeneReader, materials and apparatus for use

11   with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and

12   specific intent that its customers will use these products to infringe by performing the claimed

13   method for labeling a nucleic acid molecule.  *See supra* ¶¶ 9, 29-35.

14        189.    Finally, on information and belief, QIAGEN N.V. has induced infringement by

15   distributing other instructional materials, product manuals, technical materials, and bioinformatics

16   software platforms with the knowledge and the specific intent to encourage and facilitate the

17   infringing sale and use of their GeneReader product.  For example, on information and belief,

18   QIAGEN N.V. is responsible for the GeneReader User Manual(s), the various reagent kit manuals,

19   technical handbooks, product detail sheets, and technical specification sheets, all of which are

20   available on the Qiagen website.  *See supra* ¶¶ 9, 29-35.  On information and belief, these

21   materials direct customers to use the GeneReader and related products in an infringing manner.

22   For example, the GeneReader reagent kit handbooks state that the kits are for preparation of DNA

23   sequencing using the GeneReader, which on information and belief is sold with pre-programmed

24   software protocols that control operation of the GeneReader so that each use of the GeneReader

25   infringes.  By providing reagent kits and directing customers to purchase these reagent kits for use

26   on the GeneReader, QIAGEN N.V. induces infringement.

27

28

1    190.    On information and belief, QIAGEN N.V. acted with knowledge that the induced

2   acts constitute infringement.  On information and belief, QIAGEN N.V. acted with knowledge of

3   or willful blindness with regards to its customers' underlying infringement.  On information and

4   belief, employees of QIAGEN N.V. know of or are willfully blind with regards to the structure of

5   the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and

6   belief, employees of QIAGEN N.V. know of or are willfully blind with regards to the method that

7   the GeneReader uses to sequence DNA.

8            Contributory Infringement By QIAGEN N.V.

9    191.    On information and belief, QIAGEN N.V. is liable for contributory infringement of

10   the '200 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and belief, QIAGEN

11   N.V. has contributed to, or has threatened to contribute to, the infringement by its customers of the

12   '200 patent by, without authority, selling and offering to sell within the United States materials

13   and apparatuses for practicing the claimed invention of the '200 patent, including at least the

14   GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized

15   labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the

16   GeneRead Sequencing Q Kits.  *See supra* ¶¶ 9, 29-35.  The aforementioned products, which are at

17   least in part supplied and/or supported by QIAGEN N.V., constitute a material part of the claimed

18   invention of the '200 patent.  The allegations in paragraph 192 also support this allegation of

19   contributory infringement.

20   192.    On information and belief, QIAGEN N.V. knows that the GeneReader, materials

21   and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute

22   material parts of the inventions of the '200 patent and that they are not a staple article or

23   commodity of commerce suitable for substantial non-infringing use.  As documented above, the

24   GeneReader is a specialized sequencing instrument that carries out a specific method for

25   sequencing DNA using specific labeled nucleotides.  As such, neither the GeneReader, the

26   materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader

27   reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN

28

1   N.V. knows that the GeneReader, the materials or apparatus specifically designed for use with the

2   GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce

3   suitable for substantial non-infringing use because these products have no use apart from

4   infringing the '200 patent.

5   Other Aspects Of Infringement By QIAGEN N.V.

6   193.   On information and belief, QIAGEN N.V.'s infringement of the '200 patent has

7   been willful and deliberate.   On information and belief, QIAGEN N.V. acted despite an

8   objectively high likelihood that its actions constituted infringement of a valid patent and the

9   objectively-defined risk was known or so obvious that it should have been known to QIAGEN

10  N.V.   On information and belief, QIAGEN N.V. has demonstrated knowledge of or willful

11  blindness towards its infringement because QIAGEN N.V. employees know of or are willfully

12  blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader

13  reagent kits.   Also on information and belief, employees of QIAGEN N.V. know of or are

14  willfully blind with regards to the method that the GeneReader uses to sequence DNA.

15  194.   On information and belief, QIAGEN N.V. also lacks an objectively reasonable

16  defense to its infringement.   On information and belief, QIAGEN N.V. is aware that the PTAB

17  and Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen

18  subsidiary IBS. On information and belief, QIAGEN N.V. is aware that the PTAB rejected IBS'

19  invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit

20  on May 9, 2016.   The subject matter that is claimed in the '200 patent is substantially similar to

21  the subject matter claimed in the '537 patent.

22  195.   QIAGEN N.V.'s infringement of the '200 patent has injured Illumina in its

23  business and property rights. Illumina is entitled to recovery of monetary damages for such

24  injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

25  196.   QIAGEN N.V.'s infringement of the '200 patent has caused irreparable harm to

26  Illumina and will continue to cause such harm unless and until their infringing activities are

27  enjoined by this Court.

28

1

**QIAGEN GmbH's Infringement of the '200 Patent**

2     197.    QIAGEN GmbH has had knowledge of the earlier-issued '537 patent since at least

3 December 21, 2012, the date Illumina asserted the '537 patent against Qiagen subsidiary IBS in

4 patent litigation in the United States District Court for the District of Delaware.  The '200 patent is

5 part of the same patent family as the '537 patent.  The '200 patent shares the same specification as

6 the '537 patent, and also like the '537 patent claims its earliest priority to U.S. Patent Appl. No.

7 10/227,131, which was filed on August 23, 2002, and Great Britain Patent Appl. No. 0129012.1,

8 which was filed on December 4, 2001.  QIAGEN GmbH has been on notice of the claims of the

9 '200 patent at least since they first published as U.S. Patent Publication No. 2016/0002719 on

10 January 7, 2016.  On information and belief, QIAGEN GmbH has had knowledge of the '200

11 patent at least since its date of issuance on August 9, 2016.

12     Direct Infringement By QIAGEN GmbH

13     198.    On information and belief, QIAGEN GmbH has directly infringed and continues to

14 directly infringe the '200 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of

15 equivalents, by using the GeneReader within the United States.  Specifically, on information and

16 belief, QIAGEN GmbH has used the GeneReader in the United States in connection with research,

17 development, and testing activities related to the launch of the GeneReader.  On information and

18 belief, QIAGEN GmbH also uses the GeneReader in the United States as part of QIAGEN

19 GmbH's role in installing GeneReaders at locations in the United States.

20     Induced Infringement By QIAGEN GmbH

21     199.    On information and belief, QIAGEN GmbH is liable for their induced infringement

22 of the '200 patent pursuant to 35 U.S.C. § 271(b).  Specifically, QIAGEN GmbH has actively,

23 knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims

24 1-2, 4-12, and 14-19 of the '200 patent through a range of activities, detailed in paragraphs 200

25 through 205, related to the GeneReader.

26     200.    First, on information and belief, QIAGEN GmbH has induced infringement by

27 controlling the design, manufacture and sale of the GeneReader with the knowledge and specific

28

intent that customers will use the GeneReader to infringe by performing the claimed method of labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN GmbH is the "legal manufacturer" of the GeneReader.  *See supra* ¶ 10.  On information and belief, QIAGEN GmbH controls the website on which GeneReader is marketed and sold.  *See id*.

201.    Second, on information and belief, QIAGEN GmbH has induced infringement by controlling the design, manufacture and sale and/or selling materials or apparatus to be used with the NGS GeneReader System, including for example the GeneRead QIACube, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.    For example, on information and belief, QIAGEN GmbH is the "legal manufacturer" of the GeneReader.  *See supra* ¶ 10.  On information and belief, QIAGEN GmbH controls the website on which GeneReader is marketed and sold.  *See id*.

202.    Third, on information and belief, QIAGEN GmbH has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN GmbH is the "legal manufacturer" of the GeneReader.  *See supra* ¶ 10.  On information and belief, QIAGEN GmbH controls the website on which GeneReader is marketed and sold.  *See id*.

203.    Fourth, on information and belief, QIAGEN GmbH has induced infringement by its customers by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  On information and belief, QIAGEN GmbH controls the website that hosts all of Qiagen's GeneReader promotional and marketing materials.  *See supra* ¶ 10.

1    204.    Fifth, on information and belief, QIAGEN GmbH has induced infringement by

2    creating distribution channels for the aforementioned GeneReader, materials and apparatus for use

3    with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and

4    specific intent that its customers will use these products to infringe by performing the claimed

5    method for labeling a nucleic acid molecule.  For example, on information and belief, QIAGEN

6    GmbH has created distribution channels for the GeneReader through its control of the website on

7    which these Qiagen products are sold.  *See supra* ¶ 10.

8    205.    Finally, on information and belief, QIAGEN GmbH has induced infringement by

9    distributing other instructional materials, product manuals, technical materials, and bioinformatics

10   software platforms with the knowledge and the specific intent to encourage and facilitate the

11   infringing sale and use of their GeneReader product.  For example, on information and belief,

12   QIAGEN GmbH controls the website that hosts *inter alia* the GeneReader User Manual(s), the

13   various reagent kit manuals, technical handbooks, product detail sheets, and technical specification

14   sheets.  *See supra* ¶ 10.  On information and belief, QIAGEN GmbH publishes the user manuals

15   and handbooks for the GeneReader and GeneReader reagent kits.  *See supra id.*  On information

16   and belief, these materials direct customers to use the GeneReader and GeneReader reagent kits in

17   an infringing manner.  For example, the handbooks to the GeneReader reagent kits state that the

18   kits are for preparation of DNA sequencing using the GeneReader, which on information and

19   belief is sold with pre-programmed software protocols that control operation of the GeneReader so

20   that each use of the GeneReader infringes.  By providing reagent kits and directing customers to

21   purchase these reagent kits for use on the GeneReader, QIAGEN GmbH induces infringement.

22   206.    On information and belief, QIAGEN GmbH acted with knowledge that the induced

23   acts constitute infringement.  On information and belief, QIAGEN GmbH acted with knowledge

24   of or willful blindness with regards to its customers' underlying infringement.  On information and

25   belief, employees of QIAGEN GmbH know of or are willfully blind with regards to the structure

26   of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and

27

28

1  belief, employees of QIAGEN GmbH know of or are willfully blind with regards to the method

2  that the GeneReader uses to sequence DNA.

3      <u>Contributory Infringement By QIAGEN GmbH</u>

4      207.   On information and belief, QIAGEN GmbH is liable for contributory infringement

5  of the '200 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and belief,

6  QIAGEN GmbH has contributed to, or has threatened to contribute to, the infringement by its

7  customers of the '200 patent by, without authority, selling and offering to sell within the United

8  States materials and apparatuses for practicing the claimed invention of the '200 patent, including

9  at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use

10 specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit

11 and the GeneRead Sequencing Q Kits.  *See supra* ¶ 10.  The aforementioned products, which are

12 at least in part supplied and/or supported by QIAGEN GmbH, constitute a material part of the

13 claimed invention of the '200 patent.  The allegations in paragraph 208 also are hereby

14 incorporated by reference and further elaborate on this contributory infringement allegation.

15     208.   On information and belief, QIAGEN GmbH knows that the GeneReader, materials

16 and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute

17 material parts of the inventions of the '200 patent and that they are not a staple article or

18 commodity of commerce suitable for substantial non-infringing use.  As documented above, the

19 GeneReader is a specialized sequencing instrument that carries out a specific method for

20 sequencing DNA using specific labeled nucleotides.  As such, neither the GeneReader, the

21 materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader

22 reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN

23 GmbH knows that the GeneReader, the materials or apparatus specifically designed for use with

24 the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of

25 commerce suitable for substantial non-infringing use because these products have no use apart

26 from infringing the '200 patent.

27     <u>Other Aspects Of Infringement By QIAGEN GmbH</u>

28

209.    On information and belief, QIAGEN GmbH's infringement has been willful and deliberate.    On information and belief, QIAGEN GmbH acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and the objectively-defined risk was known or so obvious that it should have been known to QIAGEN GmbH.    On information and belief, QIAGEN GmbH has demonstrated knowledge of or willful blindness towards its infringement because QIAGEN GmbH employees know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits. Also on information and belief, employees of QIAGEN GmbH know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

210.    On information and belief, QIAGEN GmbH also lacks an objectively reasonable defense to its infringement.    On information and belief, QIAGEN GmbH is aware that the PTAB and Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen subsidiary IBS.    On information and belief, QIAGEN GmbH is aware that the PTAB rejected IBS' invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit on May 9, 2016.    The subject matter that is claimed in the '200 patent is substantially similar to the subject matter claimed in the '537 patent.

211.    QIAGEN GmbH's infringement of the '200 patent has injured Illumina in its business and property rights. Illumina is entitled to recovery of monetary damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

212.    QIAGEN GmbH's infringement of the '200 patent has caused irreparable harm to Illumina and will continue to cause such harm unless and until their infringing activities are enjoined by this Court.

**QIAGEN Gaithersburg, Inc.'s Infringement of the '200 Patent**

213.    QIAGEN Gaithersburg has had knowledge of the earlier-issued '537 patent since at least December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s U.S. sub-subsidiary IBS in patent litigation in the United States District Court for the District of Delaware.  The '200 patent is part of the same patent family as the '537 patent.  The '200 patent shares the same specification as the '537 patent, and also like the '537 patent claims its earliest priority to U.S. Patent Appl. No. 10/227,131, which was filed on August 23, 2002, and Great Britain Patent Appl. No. 0129012.1, which was filed on December 4, 2001.    QIAGEN Gaithersburg has been on notice of the claims of the '200 patent at least since they first published as U.S. Patent Publication No. 2016/0002719 on January 7, 2016.  On information and belief, QIAGEN Gaithersburg has had knowledge of the '200 patent at least since its date of issuance on August 9, 2016.

Direct Infringement By QIAGEN Gaithersburg

214.    On information and belief, QIAGEN Gaithersburg has directly infringed and continues to directly infringe the '200 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using the GeneReader within the United States.  Specifically, on information and belief, QIAGEN Gaithersburg has used the GeneReader in the United States in connection with research, development, and testing activities related to the launch of the GeneReader.  *See supra* ¶ 10.  On information and belief, QIAGEN Gaithersburg also uses the GeneReader in the United States as part of QIAGEN Gaithersburg's role in installing GeneReaders at locations in the United States.

Induced Infringement By QIAGEN Gaithersburg

215.    On information and belief, QIAGEN Gaithersburg is liable for their induced infringement of the '200 patent pursuant to 35 U.S.C. § 271(b).    Specifically, QIAGEN Gaithersburg, Inc. has actively, knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims 1-2, 4-12, and 14-19 of the '200 patent through a range of activities, detailed in paragraphs 216 through 221, related to the GeneReader.

216.    First, on information and belief, QIAGEN Gaithersburg has induced infringement by controlling the design, manufacture and sale of the GeneReader with the knowledge and specific intent that customers will use the GeneReader to infringe by performing the claimed method of labeling a nucleic acid molecule.  On information and belief, QIAGEN Gaithersburg is responsible for substantial sales and marketing of Qiagen products, including the GeneReader. *See supra* ¶ 11.   Upon information and belief, several senior-level Qiagen employees involved in sales and marketing purport to reside in and around the QIAGEN Gaithersburg facilities.  *See id.*

217.    Second, on information and belief, QIAGEN Gaithersburg has induced infringement by controlling the design, manufacture and sale and/or selling materials or apparatus to be used with the NGS GeneReader System, including for example the GeneRead QIACube, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  On information and belief, QIAGEN Gaithersburg is responsible for at least some sales of Qiagen products.  *See supra* ¶ 11. On information and belief, several senior-level Qiagen employees involved in sales and marketing purport to reside in and around the QIAGEN Gaithersburg facilities.  *See id.*

218.    Third, on information and belief, QIAGEN Gaithersburg has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  *See supra* ¶ 11.

219.    Fourth, on information and belief, QIAGEN Gaithersburg has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶ 11.

220.    Fifth, on information and belief, QIAGEN Gaithersburg has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for

1    use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and

2    specific intent that its customers will use these products to infringe by performing the claimed

3    method for labeling a nucleic acid molecule.  *See supra* ¶ 11.

4         221.    Finally, on information and belief, QIAGEN Gaithersburg, through its sales and

5    marketing arms, has induced infringement by distributing other instructional materials, product

6    manuals, technical materials, and bioinformatics software platforms with the knowledge and the

7    specific intent to encourage and facilitate the infringing sale and use of their GeneReader product.

8    *See supra* ¶ 11.   On information and belief, these materials direct customers to use the

9    GeneReader and related products in an infringing manner.  For example, the GeneReader reagent

10   kit handbooks state that the kits are for preparation of DNA sequencing using the GeneReader,

11   which on information and belief is sold with pre-programmed software protocols that control

12   operation of the GeneReader so that each use of the GeneReader infringes.  By providing reagent

13   kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN

14   Gaithersburg induces infringement.

15        222.    On information and belief, QIAGEN Gaithersburg acted with knowledge that the

16   induced acts constitute infringement.  On information and belief, QIAGEN Gaithersburg acted

17   with knowledge of or willful blindness with regards to its customers' underlying infringement.  On

18   information and belief, employees of QIAGEN Gaithersburg know of or are willfully blind with

19   regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.

20   Also on information and belief, employees of QIAGEN Gaithersburg know of or are willfully

21   blind with regards to the method that the GeneReader uses to sequence DNA.

22        Contributory Infringement by QIAGEN Gaithersburg

23        223.    On information and belief, QIAGEN Gaithersburg is liable for contributory

24   infringement of the '200 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and

25   belief, QIAGEN Gaithersburg has contributed to, or has threatened to contribute to, the

26   infringement by its customers of the '200 patent by, without authority, selling and offering to sell

27   within the United States materials and apparatuses for practicing the claimed invention of the '200

28

patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶ 11.   The aforementioned products, which are at least in part supplied and/or supported by QIAGEN Gaithersburg, constitute a material part of the claimed invention of the '200 patent.  The allegations in paragraph 224 also support this allegation of contributory infringement.

224.   On information and belief, QIAGEN Gaithersburg knows that the GeneReader, materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute material parts of the inventions of the '200 patent and that they are not a staple article or commodity of commerce suitable for substantial non-infringing use.  As documented above, the GeneReader is a specialized sequencing instrument that carries out a specific method for sequencing DNA using specific labeled nucleotides.   As such, neither the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN Gaithersburg knows that the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce suitable for substantial non-infringing use because these products have no use apart from infringing the '200 patent.

Other Aspects Of Infringement By QIAGEN Gaithersburg

225.   On information and belief, QIAGEN Gaithersburg's infringement has been willful and deliberate.   On information and belief, QIAGEN Gaithersburg acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and the objectively-defined risk was known or so obvious that it should have been known to QIAGEN Gaithersburg.  On information and belief, QIAGEN Gaithersburg has demonstrated knowledge of or willful blindness towards its infringement because QIAGEN Gaithersburg employees know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and belief, employees of QIAGEN Gaithersburg

1   know of or are willfully blind with regards to the method that the GeneReader uses to sequence

2   DNA.

3          226.    On information and belief, QIAGEN Gaithersburg also lacks an objectively

4   reasonable defense to its infringement.   On information and belief, QIAGEN Gaithersburg is

5   aware that the PTAB and Federal Circuit both rejected challenges to the validity of the '537 patent

6   put forth by Qiagen subsidiary IBS.  On information and belief, QIAGEN Gaithersburg is aware

7   that the PTAB rejected IBS' invalidity positions on February 11, 2015, and that rejection was

8   confirmed by the Federal Circuit on May 9, 2016.  The subject matter that is claimed in the '200

9   patent is substantially similar to the subject matter claimed in the '537 patent.

10          227.    QIAGEN Gaithersburg's infringement of the '200 patent has injured Illumina in its

11   business and property rights. Illumina is entitled to recovery of monetary damages for such

12   injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

13          228.    QIAGEN Gaithersburg's infringement of the '200 patent has caused irreparable

14   harm to Illumina and will continue to cause such harm unless and until their infringing activities

15   are enjoined by this Court.

16          **QIAGEN Sciences, LLC's Infringement of the '200 Patent**

17          229.    QIAGEN Sciences has had knowledge of the earlier-issued '537 patent since at

18   least December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s sub-

19   subsidiary IBS in patent litigation in the United States District Court for the District of Delaware.

20   The '200 patent is part of the same patent family as the '537 patent.  The '200 patent shares the

21   same specification as the '537 patent, and also like the '537 patent claims its earliest priority to

22   U.S. Patent Appl. No. 10/227,131, which was filed on August 23, 2002, and Great Britain Patent

23   Appl. No. 0129012.1, which was filed on December 4, 2001.  QIAGEN Sciences has been on

24   notice of the claims of the '200 patent at least since they first published as U.S. Patent Publication

25   No. 2016/0002719 on January 7, 2016.  On information and belief, QIAGEN Sciences has had

26   knowledge of the '200 patent at least since its date of issuance on August 9, 2016.

27

28

1       Direct Infringement By QIAGEN Sciences

2       230.    On information and belief, QIAGEN Sciences has directly infringed and continues

3   to directly infringe the '200 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of

4   equivalents, by using the GeneReader within the United States.  Specifically, on information and

5   belief, QIAGEN Sciences has used the GeneReader in the United States in connection with

6   research, development, and testing activities related to the launch of the GeneReader.   On

7   information and belief, QIAGEN Sciences also uses the GeneReader in the United States as part of

8   QIAGEN Sciences' role in installing GeneReaders at locations in the United States.

9       Induced Infringement by QIAGEN Sciences

10      231.    On information and belief, QIAGEN Sciences is liable for their induced

11  infringement of the '200 patent pursuant to 35 U.S.C. § 271 (b).  Specifically, QIAGEN Sciences

12  has actively, knowingly, and intentionally induced, or has threatened to induce, infringement of at

13  least claims 1-2, 4-12, and 14-19 of the '200 patent through a range of activities, detailed in

14  paragraphs 232 through 237, related to the GeneReader.

15      232.    First, on information and belief, QIAGEN Sciences has induced infringement by

16  controlling the design, manufacture and sale of the GeneReader with the knowledge and specific

17  intent that customers will use the GeneReader to infringe by performing the claimed method of

18  labeling a nucleic acid molecule.  On information and belief, QIAGEN Sciences plays a role in

19  sales and marketing of Qiagen products.  *See supra* ¶ 12.   On information and belief, several

20  senior-level Qiagen employees involved in sales and marketing purport to reside in and around the

21  QIAGEN Sciences facilities.  *See id*.

22      233.    Second, on information and belief, QIAGEN Sciences has induced infringement by

23  controlling the design, manufacture and sale and/or selling materials or apparatus to be used with

24  the NGS GeneReader System, including for example the GeneRead QIACube, with the

25  knowledge and specific intent that customers will use these products to infringe by performing the

26  claimed method of labeling a nucleic acid molecule.  *See supra* ¶ 12.  On information and belief,

27  QIAGEN Sciences is responsible for at least some sales of Qiagen products.  *See id.*

28

234.    Third, on information and belief, QIAGEN Sciencees has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  *See supra* ¶ 12.

235.    Fourth, on information and belief, QIAGEN Sciences has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶ 12.

236.    Fifth, on information and belief, QIAGEN Sciences has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule.  *See supra* ¶ 12.

237.    Finally, on information and belief, QIAGEN Sciences has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product.  *See supra* ¶ 12.  On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner.  For example, the GeneReader reagent kit manuals state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes.  By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN Sciences induces infringement.

238.    On information and belief, QIAGEN Sciences acted with knowledge that the induced acts constitute infringement.  On information and belief, QIAGEN Sciences acted with

1  knowledge of or willful blindness with regards to its customers' underlying infringement.   On

2  information and belief, employees of QIAGEN Sciences know of or are willfully blind with

3  regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.

4  Also on information and belief, employees of QIAGEN Sciences know of or are willfully blind

5  with regards to the method that the GeneReader uses to sequence DNA.

6  <u>Contributory Infringement by QIAGEN Sciences</u>

7  239.   On information and belief, QIAGEN Sciences is liable for contributory

8  infringement of the '200 patent pursuant to 35 U.S.C. § 271(c).   Specifically, on information and

9  belief, QIAGEN Sciences has contributed to, or has threatened to contribute to, the infringement

10  by its customers of the '200 patent by, without authority, selling and offering to sell within the

11  United States materials and apparatuses for practicing the claimed invention of the '200 patent,

12  including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits

13  (which use specialized labeled nucleotides), including for example the GeneRead Sequencing

14  Buffer Q Kit and the GeneRead Sequencing Q Kits.   *See supra* ¶ 12.   The aforementioned

15  products, which are at least in part supplied and/or supported by QIAGEN Sciences, constitute a

16  material part of the claimed invention of the '200 patent.   The allegations in paragraph 240 also

17  support this allegation of contributory infringement.

18  240.   On information and belief, QIAGEN Sciences knows that the GeneReader,

19  materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits,

20  constitute material parts of the inventions of the '200 patent and that they are not a staple article or

21  commodity of commerce suitable for substantial non-infringing use.   As documented above, the

22  GeneReader is a specialized sequencing instrument that carries out a specific method for

23  sequencing DNA using specific labeled nucleotides.   As such, neither the GeneReader, the

24  materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader

25  reagent kits are a staple article of commerce suitable for substantial non-infringing use.   QIAGEN

26  Sciences knows that the GeneReader, the materials or apparatus specifically designed for use with

27  the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of

28

1   commerce suitable for substantial non-infringing use because these products have no use apart

2   from infringing the '200 patent.

3          Other Aspects Of Infringement By QIAGEN Sciences

4          241.   On information and belief, QIAGEN Sciences' infringement has been willful and

5   deliberate.   On information and belief, QIAGEN Sciences acted despite an objectively high

6   likelihood that its actions constituted infringement of a valid patent and the objectively-defined

7   risk was known or so obvious that it should have been known to QIAGEN Sciences.   On

8   information and belief, QIAGEN Sciences has demonstrated knowledge of or willful blindness

9   towards its infringement because QIAGEN Sciences employees know of or are willfully blind

10  with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent

11  kits.   Also on information and belief, employees of QIAGEN Sciences know of or are willfully

12  blind with regards to the method that the GeneReader uses to sequence DNA.

13         242.   On information and belief, QIAGEN Sciences also lacks an objectively reasonable

14  defense to its infringement.   On information and belief, QIAGEN Sciences is aware that the PTAB

15  and Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen

16  subsidiary IBS.   On information and belief, QIAGEN Sciences is aware that the PTAB rejected

17  IBS' invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal

18  Circuit on May 9, 2016.   The subject matter that is claimed in the '200 patent is substantially

19  similar to the subject matter claimed in the '537 patent.

20         243.   QIAGEN Sciences' infringement of the '200 patent has injured Illumina in its

21  business and property rights. Illumina is entitled to recovery of monetary damages for such

22  injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

23         244.   QIAGEN Sciences' infringement of the '200 patent has caused irreparable harm to

24  Illumina and will continue to cause such harm unless and until their infringing activities are

25  enjoined by this Court.

26

27

28

1     **QIAGEN Inc.'s Infringement of the '200 Patent**

2     245.   QIAGEN Inc. has had knowledge of the earlier-issued '537 patent since at least

3 December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s sub-

4 subsidiary IBS in patent litigation in the United States District Court for the District of Delaware.

5 The '200 patent is part of the same patent family as the '537 patent.  The '200 patent shares the

6 same specification as the '537 patent, and also like the '537 patent claims its earliest priority to

7 U.S. Patent Appl. No. 10/227,131, which was filed on August 23, 2002, and Great Britain Patent

8 Appl. No. 0129012.1, which was filed on December 4, 2001.  QIAGEN Inc. has been on notice of

9 the claims of the '200 patent at least since they first published as U.S. Patent Publication No.

10 2016/0002719 on January 7, 2016.  On information and belief, QIAGEN Inc. has had knowledge

11 of the '200 patent at least since its date of issuance on August 9, 2016.

12     Direct Infringement By QIAGEN Inc.

13     246.   On information and belief, QIAGEN Inc. has directly infringed and continues to

14 directly infringe the '537 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of

15 equivalents, by using the GeneReader within the United States.  Specifically, on information and

16 belief, QIAGEN Inc. has used the GeneReader in the United States in connection with research,

17 development, and testing activities related to the launch of the GeneReader.  On information and

18 belief, QIAGEN Inc. also uses the GeneReader in the United States as part of QIAGEN Inc.'s role

19 in installing GeneReaders at locations in the United States.

20     Induced Infringement By QIAGEN Inc.

21     247.   On information and belief, QIAGEN Inc. is liable for their induced infringement of

22 the '537 patent pursuant to 35 U.S.C. § 271(b).  Specifically, QIAGEN Inc. has actively,

23 knowingly, and intentionally induced, or has threatened to induce, infringement of at least claims

24 1-2, 4-12, and 14-19 of the '200 patent through a range of activities, detailed in paragraphs 248

25 through 253, related to the GeneReader.

26     248.   First, on information and belief, QIAGEN Inc. has induced infringement by

27 controlling the design, manufacture and sale of the GeneReader with the knowledge and specific

28

1    intent that customers will use the GeneReader to infringe by performing the claimed method of

2    labeling a nucleic acid molecule.  On information and belief, QIAGEN Inc. takes orders of the

3    GeneReader through the GeneReader website.  *See supra* ¶ 13.  On information and belief,

4    employees of Qiagen working in and around Valencia, California, the principal place of business

5    of QIAGEN Inc., provide customer support to customers that purchase Qiagen products.  *See id*.

6    For example, Mr. Kiran Shetty, Vice President of Technical Customer Support Americas, purports

7    to have overall "management responsibilities for Technical Service, Dispatch and Service

8    Administration, Field Service" for North America.  *See id*.

9           249.    Second, on information and belief, QIAGEN Inc. has induced infringement by

10   controlling the design, manufacture and sale and/or selling materials or apparatus to be used with

11   the NGS GeneReader System, including for example the GeneRead QIACube, with the

12   knowledge and specific intent that customers will use these products to infringe by performing the

13   claimed method of labeling a nucleic acid molecule.  For example, on information and belief,

14   QIAGEN Inc. takes customer orders for products like the GeneRead QIACube through the

15   GeneReader website.  *See supra* ¶ 13.  On information and belief, employees of Qiagen working

16   in and around Valencia, California, the principal place of business of QIAGEN Inc., provide

17   customer support to customers that purchase Qiagen products.  *See id*.  For example, Mr. Kiran

18   Shetty, Vice President of Technical Customer Support Americas, purports to have overall

19   "management responsibilities for Technical Service, Dispatch and Service Administration, Field

20   Service" for North America.  *See id*.

21          250.    Third, on information and belief, QIAGEN Inc. has induced infringement by

22   controlling the design, manufacture and sale and/or selling various GeneReader reagent kits

23   (which use specialized labeled nucleotides), including for example the GeneRead Sequencing

24   Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that

25   customers will use these products to infringe by performing the claimed method of labeling a

26   nucleic acid molecule.  *See supra* ¶ 13.  On information and belief, QIAGEN Inc. takes orders of

27   GeneReader reagent kits, including the GeneRead Sequencing Buffer Q Kit and the GeneRead

28

---

Sequencing Q Kits, through the GeneReader website. *See id.* On information and belief, employees of Qiagen working in and around Valencia, California, the principal place of business of QIAGEN Inc., provide customer support to customers that purchase Qiagen products. *See id.* For example, Mr. Kiran Shetty, Vice President of Technical Customer Support Americas, purports to have overall "management responsibilities for Technical Service, Dispatch and Service Administration, Field Service" for North America. *See id.*

251. Fourth, on information and belief, QIAGEN Inc. has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule. *See supra* ¶ 13.

252. Fifth, on information and belief, QIAGEN Inc. has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule. *See supra* ¶ 13.

253. Finally, on information and belief, QIAGEN Inc. has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product. On information and belief, QIAGEN Inc. employees provide direct customer support, likely to include the distribution of technical materials, for the use of Qiagen products. *See supra* ¶ 13. On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner. For example, the GeneReader reagent kit manuals state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes. By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN Inc. induces infringement.

254.   On information and belief, QIAGEN Inc. acted with knowledge that the induced acts constitute infringement.  On information and belief, QIAGEN Inc. acted with knowledge of or willful blindness with regards to its customers' underlying infringement.  On information and belief, employees of QIAGEN Inc. know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and belief, employees of QIAGEN Inc. know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

Contributory Infringement by QIAGEN Inc.

255.   On information and belief, QIAGEN Inc. is liable for contributory infringement of the '200 patent pursuant to 35 U.S.C. § 271(c).  Specifically, on information and belief, QIAGEN Inc. has contributed to, or has threatened to contribute to, the infringement by its customers of the '200 patent by, without authority, selling and offering to sell within the United States materials and apparatuses for practicing the claimed invention of the '200 patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits.  *See supra* ¶ 13.  The aforementioned products, which are at least in part supplied and/or supported by QIAGEN Inc., constitute a material part of the claimed invention of the '200 patent.  The allegations in paragraph 256 also support this allegation of contributory infringement.

256.   On information and belief, QIAGEN Inc. knows that the GeneReader, materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute material parts of the inventions of the '200 patent and that they are not a staple article or commodity of commerce suitable for substantial non-infringing use.  As documented above, the GeneReader is a specialized sequencing instrument that carries out a specific method for sequencing DNA using specific labeled nucleotides.  As such, neither the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader reagent kits are a staple article of commerce suitable for substantial non-infringing use.  QIAGEN

1    Inc. knows that the GeneReader, the materials or apparatus specifically designed for use with the

2    GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce

3    suitable for substantial non-infringing use because these products have no use apart from

4    infringing the '200 patent.

5          Other Aspects Of Infringement By QIAGEN Inc.

6          257.   On information and belief, QIAGEN Inc.'s infringement has been willful and

7    deliberate since at least December 21, 2012, the date on which a Qiagen subsidiary was served

8    with a complaint alleging infringement of the '537 patent.

9          258.   On information and belief, QIAGEN Inc. acted despite an objectively high

10   likelihood that its actions constituted infringement of a valid patent and the objectively-defined

11   risk was known or so obvious that it should have been known to QIAGEN Inc.  On information

12   and belief, QIAGEN Inc. has demonstrated knowledge of or willful blindness towards its

13   infringement because QIAGEN Inc. employees know of or are willfully blind with regards to the

14   structure of the nucleotides used in the GeneReader and GeneReader reagent kits.   Also on

15   information and belief, employees of QIAGEN Inc. know of or are willfully blind with regards to

16   the method that the GeneReader uses to sequence DNA.

17         259.   On information and belief, QIAGEN Inc. also lacks an objectively reasonable

18   defense to its infringement.  On information and belief, QIAGEN Inc. is aware that the PTAB and

19   Federal Circuit both rejected challenges to the validity of the '537 patent put forth by Qiagen

20   subsidiary IBS.  On information and belief, QIAGEN Inc. is aware that the PTAB rejected IBS'

21   invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit

22   on May 9, 2016.  The subject matter that is claimed in the '200 patent is substantially similar to

23   the subject matter claimed in the '537 patent.

24         260.   QIAGEN Inc.'s infringement of the '200 patent has injured Illumina in its business

25   and property rights. Illumina is entitled to recovery of monetary damages for such injuries

26   pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

27

28

1    261.    QIAGEN Inc.'s infringement of the '200 patent has caused irreparable harm to

2  Illumina and will continue to cause such harm unless and until their infringing activities are

3  enjoined by this Court.

4    **QIAGEN Redwood City Inc.'s Infringement of the '200 Patent**

5    262.    QIAGEN Redwood City has had knowledge of the earlier-issued '537 patent since

6  at least December 21, 2012, the date Illumina asserted the '537 patent against QIAGEN N.V.'s

7  sub-subsidiary IBS in patent litigation in the United States District Court for the District of

8  Delaware.  The '200 patent is part of the same patent family as the '537 patent.  The '200 patent

9  shares the same specification as the '537 patent, and also like the '537 patent claims its earliest

10  priority to U.S. Patent Appl. No. 10/227,131, which was filed on August 23, 2002, and Great

11  Britain Patent Appl. No. 0129012.1, which was filed on December 4, 2001.  QIAGEN Redwood

12  City has been on notice of the claims of the '200 patent at least since they first published as U.S.

13  Patent Publication No. 2016/0002719 on January 7, 2016.  On information and belief, Redwood

14  City has had knowledge of the '200 patent at least since its date of issuance on August 9, 2016.

15    Direct Infringement By QIAGEN Redwood City

16    263.    On information and belief, QIAGEN Redwood City has directly infringed and

17  continues to directly infringe the '200 patent pursuant to 35 U.S.C. § 271(a), literally or under the

18  doctrine of equivalents, by using the GeneReader within the United States.  Specifically, on

19  information and belief, QIAGEN Redwood City has used the GeneReader in the United States in

20  connection with research, development, and testing activities related to the launch of the

21  GeneReader.  On information and belief, QIAGEN Redwood City also uses the GeneReader in the

22  United States as part of QIAGEN Redwood City's role in installing GeneReaders at locations in

23  the United States.

24    Induced Infringement by QIAGEN Redwood City Inc.

25    264.    On information and belief, QIAGEN Redwood City is liable for their induced

26  infringement of the '200 patent pursuant to 35 U.S.C. § 271 (b).  Specifically, QIAGEN Redwood

27  City has actively, knowingly, and intentionally induced, or has threatened to induce, infringement

28

1    of at least claims 1-2, 4-12, and 14-19 of the '200 patent through a range of activities, detailed in

2    paragraphs 265 through 270, related to the GeneReader.

3    265.   First, on information and belief, QIAGEN Redwood City has induced infringement

4    by controlling the design, manufacture and sale of the GeneReader with the knowledge and

5    specific intent that customers will use the GeneReader to infringe by performing the claimed

6    method of labeling a nucleic acid molecule.  On information and belief, QIAGEN Redwood City

7    employees purport to be involved in product development around and launch of the GeneReader.

8    *See supra* ¶¶ 14, 35.  For example and as documented above, Mr. Rupert Yip, Director Product

9    Management at QIAGEN Redwood City, purports that he participated in the "QIAGEN post

10   merger [*sic*] integration team **with a focus on GeneReader NGS platform**."  *See supra* ¶ 14.  Mr.

11   Kip also purports to be a member "of GeneReader Core Team **leading the platform's**

12   **development and go to market strategy**."  *Id*.  To provide another example, Mr. Kumar Bala,

13   whose title is Associate Director at QIAGEN, Molecular Diagnostics-NextGenSequencing, works

14   in Hercules, California, less than 50 miles from the QIAGEN Redwood City leased office space.

15   *See supra Id*.  Per Mr. Bala's LinkedIn page, he was integrally involved in coordinating "the

16   launch of the GeneReader NGS System."  *Id*.  On information and belief, QIAGEN Redwood

17   City, through individuals like Mr. Yip and Mr. Bala, executed product development and

18   commercial launch activities related to the GeneReader.

19   266.   Second, on information and belief, QIAGEN Redwood City has induced

20   infringement by controlling the design, manufacture and sale and/or selling materials or apparatus

21   to be used with the NGS GeneReader System, including for example the GeneRead QIACube,

22   with the knowledge and specific intent that customers will use these products to infringe by

23   performing the claimed method of labeling a nucleic acid molecule.  On information and belief,

24   QIAGEN Redwood City employees purport to be heavily involved in product development and

25   launch of the GeneReader NGS **_platform_** or **_system_**, which includes the materials or apparatus to

26   be used with the GeneReader.  *See supra* ¶¶ 14, 35.  For example and as documented above, Mr.

27   Rupert Yip, Director Product Management at QIAGEN Redwood City, purported that he

28

participated in the "QIAGEN post merger [*sic*] integration team **with a focus on GeneReader NGS <u>platform</u>**."  *See supra* ¶ 13.  Mr. Kip also purports to be a member "of GeneReader Core Team **leading the <u>platform</u>'s development and go to market strategy**."  *Id*.  As another example, on information and belief, Mr. Kumar Bala, whose title is Associate Director at QIAGEN, Molecular Diagnostics-NextGenSequencing, works in Hercules, California, less than 50 miles from the QIAGEN Redwood City leased office space, and was heavily involved in development of the GeneReader system, i.e. the Genereader and the materials or apparatus to be used within the system.  *Id*.  Per Mr. Bala's LinkedIn page, he was integrally involved in coordinating "the launch of the GeneReader NGS <u>*System*</u>."  *Id*.  On information and belief, QIAGEN Redwood City, through individuals like Mr. Yip and Mr. Bala, has controlled the design, manufacture and sale of manufacture and apparatus to be used with NGS GeneReader System.

267.    Third, on information and belief, QIAGEN Redwood City has induced infringement by controlling the design, manufacture and sale and/or selling various GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will use these products to infringe by performing the claimed method of labeling a nucleic acid molecule.  On information and belief, QIAGEN Redwood City employees purport to be heavily involved in product development and launch of the GeneReader NGS <u>**platform**</u> or <u>**system**</u>, which would include reagent kits.  *See supra* ¶¶ 14, 35.  Mr. Rupert Yip, Director Product Management at QIAGEN Redwood City, stated that he participated in the "QIAGEN post merger [*sic*] integration team **with a focus on GeneReader NGS <u>platform</u>**."  *See supra* ¶ 13.  Mr. Kip also purports to be a member "of GeneReader Core Team **leading the <u>platform</u>'s development and go to market strategy**".  *Id*.  On information and belief, QIAGEN Redwood City, through individuals like Mr. Yip, has been substantially involved in controlling the design, manufacture, and sale of various GeneReader reagent kits as part of its work on the NGS GeneReader System.

268. Fourth, on information and belief, QIAGEN Redwood City has induced infringement by disseminating promotional and marketing materials relating to the GeneReader with the knowledge and specific intent that its customers will use the GeneReader to infringe by performing the claimed method for labeling a nucleic acid molecule. *See supra* ¶¶ 14, 35.

269. Fifth, on information and belief, QIAGEN Redwood City has induced infringement by creating distribution channels for the aforementioned GeneReader, materials and apparatus for use with the NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific intent that its customers will use these products to infringe by performing the claimed method for labeling a nucleic acid molecule. *See supra* ¶¶ 14, 35.

270. Finally, on information and belief, QIAGEN Redwood City has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale and use of their GeneReader product. On information and belief, QIAGEN Redwood City is inextricably involved in distribution of other instructional materials, product manuals, and technical materials related to the GeneReader. *See supra* ¶¶ 14, 35. For example, Mr. Bala, who upon information and belief works at QIAGEN Redwood City, stated on his LinkedIn page that he "[l]ed the team in developing the training plan and organizing the training for the technical sales team." *See supra* ¶ 13. On information and belief, through individuals like Mr. Bala, QIAGEN Redwood City has induced infringement through distributing instructional materials, product manuals, and other technical materials. On information and belief, these materials direct customers to use the GeneReader and related products in an infringing manner. For example, the GeneReader reagent kit manuals state that the kits are for preparation of DNA sequencing using the GeneReader, which on information and belief is sold with pre-programmed software protocols that control operation of the GeneReader so that each use of the GeneReader infringes. By providing reagent kits and directing customers to purchase these reagent kits for use on the GeneReader, QIAGEN Redwood City induces infringement.

1    271.    On information and belief, QIAGEN Redwood City acted with knowledge that the

2    induced acts constitute infringement.   On information and belief, QIAGEN Redwood City acted

3    with knowledge of or willful blindness with regards to its customers' underlying infringement.   On

4    information and belief, employees of QIAGEN Redwood City know of or are willfully blind with

5    regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.

6    Also on information and belief, employees of QIAGEN Redwood City know of or are willfully

7    blind with regards to the method that the GeneReader uses to sequence DNA.

8            Contributory Infringement by QIAGEN Redwood City

9    272.    On information and belief, QIAGEN Redwood City is liable for contributory

10    infringement of the '200 patent pursuant to 35 U.S.C. § 271(c).   Specifically, on information and

11    belief, QIAGEN Redwood City has contributed to, or has threatened to contribute to, the

12    infringement by its customers of the '200 patent by, without authority, selling and offering to sell

13    within the United States materials and apparatuses for practicing the claimed invention of the '200

14    patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent

15    kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing

16    Buffer Q Kit and the GeneRead Sequencing Q Kits.   *See supra* ¶¶ 14, 35.   The aforementioned

17    products, which are at least in part supplied and/or supported by QIAGEN Redwood City,

18    constitute a material part of the claimed invention of the '200 patent.   The allegations in paragraph

19    273 also support this allegation of contributory infringement.

20    273.    On information and belief, QIAGEN Redwood City knows that the GeneReader,

21    materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits,

22    constitute material parts of the inventions of the '200 patent and that they are not a staple article or

23    commodity of commerce suitable for substantial non-infringing use.   As documented above, the

24    GeneReader is a specialized sequencing instrument that carries out a specific method for

25    sequencing DNA using specific labeled nucleotides.   As such, neither the GeneReader, the

26    materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader

27    reagent kits are a staple article of commerce suitable for substantial non-infringing use.   QIAGEN

28

1  Redwood City knows that the GeneReader, the materials or apparatus specifically designed for use

2  with the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of

3  commerce suitable for substantial non-infringing use because these products have no use apart

4  from infringing the '200 patent.

5          Other Aspects Of Infringement By QIAGEN Redwood City

6          274.    On information and belief, QIAGEN Redwood City infringement has been willful

7  and deliberate.  On information and belief, QIAGEN Redwood City acted despite an objectively

8  high likelihood that its actions constituted infringement of a valid patent and the objectively-

9  defined risk was known or so obvious that it should have been known to QIAGEN Redwood City.

10 On information and belief, QIAGEN Redwood City has demonstrated knowledge of or willful

11 blindness towards its infringement because QIAGEN Redwood City employees know of or are

12 willfully blind with regards to the structure of the nucleotides used in the GeneReader and

13 GeneReader reagent kits.  Also on information and belief, QIAGEN Redwood City employees

14 know of or are willfully blind with regards to the method that the GeneReader uses to sequence

15 DNA.

16         275.    On information and belief, QIAGEN Redwood City also lacks an objectively

17 reasonable defense to its infringement.  On information and belief, QIAGEN Redwood City is

18 aware that the PTAB and Federal Circuit both rejected challenges to the validity of the '537 patent

19 put forth by Qiagen subsidiary IBS.  On information and belief, QIAGEN Redwood City is aware

20 that the PTAB rejected IBS' invalidity positions on February 11, 2015, and that rejection was

21 confirmed by the Federal Circuit on May 9, 2016.  The subject matter that is claimed in the '200

22 patent is substantially similar to the subject matter claimed in the '537 patent.

23         276.    QIAGEN Redwood City's infringement of the '200 patent has injured Illumina in

24 its business and property rights. Illumina is entitled to recovery of monetary damages for such

25 injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

26

27

28

1    277.   QIAGEN Redwood City's infringement of the '200 patent has caused irreparable

2    harm to Illumina and will continue to cause such harm unless and until their infringing activities

3    are enjoined by this Court.

4              **Intelligent Bio-Systems, Inc.'s Infringement of the '200 Patent**

5    278.   IBS has had knowledge of the earlier-issued '537 patent since at least December

6    21, 2012, the date Illumina asserted the '537 patent against IBS in a patent litigation in the United

7    States District Court for the District of Delaware.  IBS unsuccessfully attempted to invalidate the

8    '537 patent in *inter partes* review.  The '200 patent is part of the same patent family as the '537

9    patent.  The '200 patent shares the same specification as the '537 patent, and also like the '537

10   patent claims its earliest priority to U.S. Patent Appl. No. 10/227,131, which was filed on August

11   23, 2002, and Great Britain Patent Appl. No. 0129012.1, which was filed on December 4, 2001.

12   IBS has been on notice of the claims of the '200 patent at least since they first published as U.S.

13   Patent Publication No. 2016/0002719 on January 7, 2016.  On information and belief, IBS has had

14   knowledge of the '200 patent at least since its date of issuance on August 9, 2016.

15             Direct Infringement by IBS

16   279.   On information and belief, IBS has directly infringed and continues to directly

17   infringe the '200 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of

18   equivalents, by using the GeneReader within the United States.  Specifically, on information and

19   belief, IBS has used the GeneReader in the United States in connection with research,

20   development, and testing activities related to the launch of the GeneReader.  On information and

21   belief, IBS also uses the GeneReader in the United States as part of IBS' role in installing

22   GeneReaders at locations in the United States.

23             Induced Infringement by IBS

24   280.   On information and belief, IBS is liable for their induced infringement of the '200

25   patent pursuant to 35 U.S.C. § 271(b).  Specifically, IBS has actively, knowingly, and

26   intentionally induced, or has threatened to induce, infringement of at least claims 1-2, 4-12, and

27

28

1   14-19 of the '200 patent through a range of activities, detailed in paragraphs 281 through 286,

2   related to the GeneReader.

3          281.    First, on information and belief, IBS has induced infringement by controlling the

4   design, manufacture and sale of the GeneReader with the knowledge and specific intent that

5   customers will use the GeneReader to infringe by performing the claimed method of labeling a

6   nucleic acid molecule.  On information and belief, IBS is substantially involved in research and

7   development of QIAGEN's next-generation sequencing products.  *See supra* ¶ 15.  On information

8   and belief, IBS owns trademark rights to the word mark "GeneReader."  *Id.*  On information and

9   belief, employees of Qiagen located in Waltham, Massachusetts, IBS' principal place of business,

10  work on projects related to the GeneReader.  *Id.*

11         282.    Second, on information and belief, IBS has induced infringement by controlling the

12  design, manufacture and sale and/or selling materials or apparatus to be used with the NGS

13  GeneReader System, including for example the GeneRead QIACube, with the knowledge and

14  specific intent that customers will use these products to infringe by performing the claimed

15  method of labeling a nucleic acid molecule.  On information and belief, IBS is substantially

16  involved in research and development of QIAGEN's next-generation sequencing products,

17  including materials and/or apparatus to be used with the GeneReader.  *See supra* ¶ 15.

18         283.    Third, on information and belief, IBS has induced infringement by controlling the

19  design, manufacture and sale and/or selling various GeneReader reagent kits (which use

20  specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit

21  and the GeneRead Sequencing Q Kits, with the knowledge and specific intent that customers will

22  use these products to infringe by performing the claimed method of labeling a nucleic acid

23  molecule.  *See supra* ¶ 15.  On information and belief, IBS is substantially involved in research

24  and development of QIAGEN's next-generation sequencing products including GeneReader

25  reagent kits.  *Id.*  On information and belief, IBS owns trademark rights to the word mark

26  "GeneReader," which is integrated into the product names for these reagent kits.  *Id.*

27

28

1       284.   Fourth, on information and belief, IBS has induced infringement by disseminating

2   promotional and marketing materials relating to the GeneReader with the knowledge and specific

3   intent that its customers will use the GeneReader to infringe by performing the claimed method for

4   labeling a nucleic acid molecule.   On information and belief, IBS employees, due to their role in

5   research and development of the GeneReader, are substantially involved in promoting the

6   GeneReader.  *See supra* ¶ 15.  Several integral members of the GeneReader launch purport to be

7   living in and around Waltham, Massachusetts, IBS' principal place of business.  *Id*.

8       285.   Fifth, on information and belief, IBS has induced infringement by creating

9   distribution channels for the aforementioned GeneReader, materials and apparatus for use with the

10  NGS GeneReader System, and the GeneReader reagent kits, with the knowledge and specific

11  intent that its customers will use these products to infringe by performing the claimed method for

12  labeling a nucleic acid molecule.   On information and belief, IBS employees have been

13  substantially involved with the launch of, i.e. the creation of distribution channels for, the

14  GeneReader.  *See supra* ¶ 15.

15      286.   Finally, on information and belief, IBS has induced infringement by distributing

16  other instructional materials, product manuals, technical materials, and bioinformatics software

17  platforms with the knowledge and the specific intent to encourage and facilitate the infringing sale

18  and use of their GeneReader product. On information and belief and due to IBS' substantial role in

19  research and development of Qiagen next-generation sequencing technologies, IBS is involved in

20  the creation and/or distribution of other instructional materials, product manuals, and technical

21  materials related to the GeneReader.  *See supra* ¶ 15.  On information and belief, these materials

22  direct customers to use the GeneReader and related products in an infringing manner.   For

23  example, the GeneReader reagent kit manuals state that the kits are for preparation of DNA

24  sequencing using the GeneReader, which on information and belief is sold with pre-programmed

25  software protocols that control operation of the GeneReader so that each use of the GeneReader

26  infringes.  By providing reagent kits and directing customers to purchase these reagent kits for use

27  on the GeneReader, IBS induces infringement.

28

287.   On information and belief, IBS acted with knowledge that the induced acts constitute infringement.   On information and belief, IBS acted with knowledge of or willful blindness with regards to its customers' underlying infringement.   On information and belief, employees of IBS know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.   Also on information and belief, employees of IBS know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

Contributory Infringement by IBS

288.   On information and belief, IBS is liable for contributory infringement of the '200 patent pursuant to 35 U.S.C. § 271(c).   Specifically, on information and belief, IBS has contributed to, or has threatened to contribute to, the infringement by its customers of the '200 patent by, without authority, selling and offering to sell within the United States materials and apparatuses for practicing the claimed invention of the '200 patent, including at least the GeneReader, the GeneRead QIACube, and the GeneReader reagent kits (which use specialized labeled nucleotides), including for example the GeneRead Sequencing Buffer Q Kit and the GeneRead Sequencing Q Kits. *See supra* ¶ 15.  The aforementioned products, which are at least in part supplied and/or supported by IBS, constitute a material part of the claimed invention of the '200 patent.   The allegations in paragraph 289 also support this allegation of contributory infringement.

289.   On information and belief, IBS knows that the GeneReader, materials and apparatus designed for use with the GeneReader, and the GeneReader reagent kits, constitute material parts of the inventions of the '200 patent and that they are not a staple article or commodity of commerce suitable for substantial non-infringing use.   As documented above, the GeneReader is a specialized sequencing instrument that carries out a specific method for sequencing DNA using specific labeled nucleotides.   As such, neither the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, nor the GeneReader reagent kits are a staple article of commerce suitable for substantial non-infringing use.   IBS

knows that the GeneReader, the materials or apparatus specifically designed for use with the GeneReader, and the GeneReader reagents kits are not staple articles or commodities of commerce suitable for substantial non-infringing use because these products have no use apart from infringing the '200 patent.

### Other Aspects Of Infringement By IBS

290.    On information and belief, IBS' infringement has been willful and deliberate.  On information and belief, IBS acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and the objectively-defined risk was known or so obvious that it should have been known to IBS.  On information and belief, IBS has demonstrated knowledge of or willful blindness towards its infringement because IBS employees know of or are willfully blind with regards to the structure of the nucleotides used in the GeneReader and GeneReader reagent kits.  Also on information and belief, IBS employees know of or are willfully blind with regards to the method that the GeneReader uses to sequence DNA.

291.    On information and belief, IBS also lacks an objectively reasonable defense to its infringement.  On information and belief, IBS is aware that the PTAB and Federal Circuit both rejected its challenges to the validity of the '537 patent that it put forth through IPR proceedings. On information and belief, IBS is aware that the PTAB rejected its invalidity positions on February 11, 2015, and that rejection was confirmed by the Federal Circuit on May 9, 2016.  The subject matter that is claimed in the '200 patent is substantially similar to the subject matter claimed in the '537 patent.

292.    IBS' infringement of the '200 patent has injured Illumina in its business and property rights. Illumina is entitled to recovery of monetary damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

293.    IBS' infringement of the '200 patent has caused irreparable harm to Illumina and will continue to cause such harm unless and until their infringing activities are enjoined by this Court.

1

## **PRAYER FOR RELIEF**

2      WHEREFORE, Illumina prays for relief as follows:

3      A.      Judgment that Defendants have infringed the '537 patent;

4      B.      Judgment that Defendants have infringed the '200 patent;

5      C.      An order preliminarily and permanently enjoining Defendants and their officers,

6 directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all

7 others acting in active concert therewith from further infringement of the '537 patent;

8      D.      An order enjoining Defendants and their officers, directors, agents, servants,

9 affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active

10 concert therewith from further infringement of the '200 patent;

11      E.      An award of damages pursuant to 35 U.S.C. § 284;

12      F.      A declaration that Defendants' infringement of the patents-in-suit has been willful

13 and deliberate, and an increase to the award of damages of three times the amount found or

14 assessed by the Court, in accordance with 35 U.S.C. § 284;

15      G.      An order for an accounting of damages from Defendants' infringement;

16      H.      An award to Illumina of their costs and reasonable expenses to the fullest extent

17 permitted by law;

18      I.      A declaration that this case is exceptional pursuant to 35 U.S.C. § 285, and an

19 award of attorneys' fees and costs; and

20      J.      An award of such other and further relief as the Court may deem just and proper.

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2        Pursuant to Federal Rule of Civil Procedure 38(b) and Civil Local Rule 3-6(a), Illumina

3    hereby demands a trial by jury on all issues so triable.

4

5    Dated:  December 15, 2016                    Respectfully Submitted,

6

7

8                                               WEIL, GOTSHAL & MANGES LLP
                                                Edward R. Reines
9                                               Derek C. Walter

10

11

12                                   By:  _____ */s/ Edward R. Reines*_____
                                                     Edward R. Reines
13                                               Attorneys for Plaintiffs
                                                    ILLUMINA, INC.
14                                            ILLUMINA CAMBRIDGE LTD.

15

16

17

18

19

20

21

22

23

24

25

26

27

28